IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADJUSTACAM LLC | |
| v. | NO. 6:10-CV-329-LED |
| AMAZON.COM, INC.; ET AL. | JURY |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION TO SEVER AND STAY**

Plaintiff AdjustaCam LLC ("AdjustaCam") responds to Defendants' Motion to Sever and Stay Claims (the "Motion to Stay"), Dkt. No. 370, as follows:

**I.     INTRODUCTION.**

United States Patent No. 5,855,343 (the "'343 patent) is entitled "Camera Clip." Apparatuses which comprise such camera clips are often referred to as "webcams." The Abstract to the '343 patent discloses in part, "[a] clip for supporting a portable camera either on a surface or on an edge of a housing ... The clip may be rotated to a first position to support the camera on a surface of a table or desk."  Exemplary Figure 2 shows a preferred embodiment webcam on a generally horizontal, substantially planar surface, and exemplary Figure 4 shows a preferred embodiment webcam attached to an object (e.g., a laptop screen), having a first surface and a second surface and an edge intersecting them, as follows:

 

Plaintiff filed this lawsuit on July 2, 2010. Treating affiliated defendants as one, this lawsuit presently includes 31 defendants.[1] Plaintiff's Amended Complaint contends that each of

---

[1] They are Amazon, Auditek, Best Buy, Blue Microphones, CDW, Cobra Digital, CompUSA, Creative, Dell, Digital Innovations, Fry's, Gear Head, HP, J&R, jWIN, Kmart, Kohls, Lifeworks, Macally, Micro Center, Newegg, Office Depot, Overstock, Phoebe, RadioShack, Rosewill, Sakar, Sears, Target, TigerDirect and Wal-Mart.

the Defendants infringes the '343 patent relative to certain webcams. (Dkt. No. 111). Movants seek to stay the claims against 19 defendants referred to as "Resellers."[2]

On December 2, 2010, Plaintiff filed suit against another, smaller group of defendants in Case No. 6:10-CV-644-LED, styled *AdjustaCam LLC v. Atlanta Network Technologies, et al.* ("*AdjustaCam II*"), which is also pending before this court. (Ex. 2) (*AdjustaCam II* Complaint). As noted in the Motion to Stay, the *AdjustaCam II* case comprises Guillemot Corp., S.A. and Guillemot, Inc. (collectively "Guillemot"), KYE International Corp., KYE International Corp., KYE Systems America Corp. and KYE Systems Corp. (collectively "KYE"), and Display Technology Ltd. d/b/a PDT ("PDT"). *Id.* As reflected in plaintiff's complaint in the *AdjustaCam II* case, plaintiff presently understands that Guillemot makes, uses, sells, offers for sale and/or imports certain infringing "Hercules" branded webcams; that KYE infringes relative to certain "Agama" and "Genius" branded webcams, and that PDT infringes relative to "Minoru" branded webcams. Ex. 1, ¶ 1; Ex. 2, ¶33 (Guillemot), ¶ 34 (KYE) and ¶ 36 (PDT).

Plaintiff's infringement contentions in this case are due on February 11, 2011. Plaintiff is still investigating the full scope of each Defendants' infringement based upon present publicly available information; however, Exhibit 3 hereto is a chart that lists infringing webcam by defendant in this case. Ex. 3. *See* Ex. 1, ¶ 2. Many of the "Resellers" in this case are understood to at least sell and offer for sale accused Hercules, Agama, Genius and/or Minoru webcams. *Id.*

The *AdjustaCam II* suit was filed in December 2010, and efforts to serve foreign defendants via international means are underway. Ex. 1, ¶ 3. It remains to be seen whether Guillemot, KYE or PDT will contest personal jurisdiction once they appear in response to international service. As reflected in the *AdjustaCam II* complaint, Plaintiff presently

---

[2] They are Amazon, Best Buy, CDW, CompUSA, Conn's, Dell, Fry's, J&R, jWIN, Kmart, Kohls, Micro Center, Newegg, Office Depot, Overstock, Sears, Target, TigerDirect and Wal-Mart. Although Movants request a stay of Plaintiff's claims against Conn's and J&R, neither Conn's nor J&R joined in the Motion to Stay.

understands that the parent Guillemot entity is located in France, the parent KYE entity is located in Taiwan, and the parent PDT entity is located in the United Kingdom. *Id.;* Ex. 2, ¶9 (Guillemot), ¶ 13 (KYE), and ¶ 15 (PDT). Should the responsible Guillemot, KYE and/or PDT entity successfully contest personal jurisdiction, then plaintiff's only redress relative to infringing Hercules, Agama, Genius and/or Minoru webcams may be against the distribution chain for those webcams in the United States, namely the "Resellers" in this case noted on Exhibit 2.

Movants have the burden of showing why the "Resellers" should be severed and the claims against them stayed. However, the Motion to Stay is based upon multiple assertions of alleged facts which lack any evidentiary support. For example, the Motion to Stay is primarily based upon the vague, unsworn assertion that most of the accused products sold by the "Resellers" are "supplied, *directly or indirectly*, by the other defendants named in Plaintiff's complaints." Motion to Stay, p. 3 (emphasis added). Movants further assert, without evidentiary support, that "[t]he Suppliers here *may* be manufacturers or central distributors, but in either case, the Supplier is the source of the product for the Reseller." *Id.* at p. 5 (emphasis added).

Even if the motion had evidentiary support, movants' asserted customer suit exception is inapplicable to this case, including because it is merely an exception to the first-filed rule when the second filed case involves the manufacturer. The customer suit exception is designed to ensure that patent infringement claims against customers do not proceed prior to the Court addressing pending claims against a product's manufacturer. Other courts faced with similar requests for such unwarranted relief under the customer suit exception have properly rejected them.

Finally, even if the motion had evidentiary support, and even if the customer suit exception was applicable to this case, severance or stay would be unwarranted. The guiding principles in the customer suit exception cases are efficiency and judicial economy. A stay would

3

not promote judicial efficiency, nor would it meaningfully simplify the issues in this case. Further, the requested stay would unfairly prejudice plaintiff.

Under movants' flawed scheme, resellers should be entitled to a lengthy stay of patent litigation and freed from the requirements of party discovery. Although it's understandable that the likes of Amazon, Best Buy, Sears, etc. would favor such a rule, this is not the law, nor should it be. Without the limitation, the Patent Act makes the "sale" of an infringing article actionable. *See* 35 U.S.C. § 271(a). Under the unwarranted scheme advocated by Movants, some of the largest and most profitable sellers of infringing products would essentially be given a pass on their infringement, much to the detriment of plaintiffs and system of justice.

## II.     ARGUMENT.

### A.     **The Motion to Stay lacks evidentiary support.**

Movants have the burden of showing why the "Resellers" should be severed and the claims against them stayed. However, the Motion to Stay is based upon multiple assertions of alleged facts which lack any evidentiary support. It is notable that the Motion to Stay is not supported by any declarations or other sworn evidence.  For example, the Motion to Stay is primarily based upon the unsworn assertion that most of the accused products sold by the so-called "Resellers" are "supplied, *directly or indirectly*, by the other defendants named in Plaintiff's complaints." Motion to Stay, p. 3 (emphasis added). However, movants provide no evidentiary support for this assertion. Moreover, movants provide no explanation of what it means for a product to be "indirectly" supplied by a defendant, and no explanation as to which specific "Supplier" is a "direct or indirect" supplier of webcams vis-a-via a specific "Reseller." Movants further assert that "[t]he Suppliers here *may* be manufacturers or central distributors, but in either case, the Supplier is the source of the product for the Reseller." *Id.* at 5 (emphasis added). However, movants provide no evidentiary support for which "Suppliers" *may* be

4

manufacturers, which "Suppliers" *may* be "central distributors," what constitutes a "central distributor," or which specific "Supplier" is the source of any specific webcam for any specific "Reseller."

Movants assert that "Resellers are customers of the Suppliers and are not in the business of importing, designing or manufacturing the products." However, movants fail to provide any evidentiary support for these assertions. Further, movants are vague as to whether any of the "Resellers" actually import accused webcams; rather, they merely allege that none of the "Resellers" are "in the business of importing." Movants also assert that "adjudication of the claims against Suppliers will also dispose of the claims against the Resellers that relate to the Suppliers' products." However, this assertion is unsupported by any evidence. Patent infringement comprises making, using, selling, offering for sale or importing products which meet the limitations of a patent claim. *See* 35 USC § 271(a). Patent infringement can be direct or indirect, *i.e.,* via inducement or contributory infringement. *See* 35 USC § 271(b). It is notable that movants omit to assert that any "Suppliers" make, use, sell, offer for sale or import any specific accused webcams. Movants merely assert that the "Resellers" are "supplied, directly or indirectly, by the other defendants named in Plaintiff's complaints." Movants provide no explanation for how their verbiage, i.e., "supply[ing], directly or indirectly," equates with making, using, selling or offering for sale (in the United States) or importing (into the United States).

Plaintiff has certainly alleged in its Amended Complaint, upon information and belief, that each of the "Suppliers" make, use, sell, offer for sale and/or import certain infringing webcams, and that each of the "Resellers" use, sell, offer for sale and/or import certain infringing webcams. However, the discovery phase has not yet begun in this case (or the *AdjustaCam II* case). Movants certainly know which accused webcams are made, used, sold, offered for sale (in

Case 6:10-cv-00329-JRG   Document 378   Filed 01/31/11   Page 6 of 16 PageID #: 2682

the United States) and/or imported (into the United States) by specific "Suppliers." Yet they are intentionally vague on this important issue. Again, Movants merely assert that the "Suppliers" "*may* be manufacturers or central distributors," and that unspecified "Suppliers" supply webcams "directly or indirectly" to unspecified "Resellers."

B.     **The customer suit exception is inapplicable to this case.**

The thrust of movants' unsupported motion is that plaintiff's claims against the "Resellers" should be stayed pursuant to the "customer suit exception." Even if the motion had evidentiary support, the customer suit exception is in applicable to this case. The customer suit exception is merely an exception to the general first-filed rule. "In patent infringement cases, the customer-suit exception allows a court to stay a first-filed suit against customers when the manufacturer brings a later-filed declaratory judgment action." *Microsoft Corp. v. Commonwealth Scientific and Indus. Research Organisation*, 2007 WL 4376104, *2, No. 6:06 CV 549-LED (E.D. Tex. Dec. 13, 2007) ("*CSIRO*") (citing *Katz v. Lear Siegler, Inc*., 909 F.2d 1459, 1464 (Fed.Cir.1990). The customer suit exception "is designed to ensure that patent infringement claims against customers do not proceed prior to the Court addressing pending claims against a product's manufacturer." *Lifelink Pharmaceuticals, Inc. v. NDA Consulting, Inc.*, 2007 WL 2459879, *3 (N.D. Ohio Aug. 24, 2007).

Other courts have denied similar unwarranted requests for such relief under the customer suit exception. *See Heinz Kettler GMBH & Co. v. Indian Industries, Inc.,* 575 F.Supp.2d 728, 730-31 (E.D. Va. 2008) ("...the customer suit exception is inapplicable in this case. Because plaintiffs have simultaneously sued both the manufacturer (Escalade) and the customer (Sears) of the allegedly infringing table-tennis tables..."); *Privasys, Inc. v. Visa Intl., Inc.,* 2007 WL 3461761, *3, No. C-07-03257 (N.D. Cal. Nov. 14, 2007) ("Where, as here, plaintiff has brought suit against both the supplier and its customers in the same suit and in the same district, the

'customer suit' exception does not apply."); *Lifelink Pharmaceuticals,* 2007 WL 2459879, *2-3 ("Additionally, the customer exception does not apply in the instant case [wherein] the product source and purported customers are all parties in the same action."); *Alloc, Inc., v. Unilin Decor N.V.*, 2005 WL 3448060 *3 (E.D. Wis. Dec.15, 2005) (where manufacturer and customer "are defending claims of infringement in the same consolidated suit in the same jurisdiction ... the exception to the typical priority rule is inapposite"); *Naxon Telesign Corp. v. GTE Info. Sys.*, 89 F.R.D. 333, 339 (N.D.Ill.1980) ("In this action, where the suit against the manufacturer and customer would take place simultaneously ... the problem addressed in *Codex* and *Gluckin & Co.* is not presented."). In short, the customer suit exception is inapplicable in this case because both customers and manufacturers are part of the same suit. This Court should follow the precedent of *Heinz Kettler, Lifelink Pharmaceuticals, Alloc,* and *Naxon Telesign,* and deny the Motion to Stay.

C.  **The customer suit exception, when applicable, involves suits against manufacturers, not merely "indirect or direct suppliers."**

As noted above, "the customer-suit exception allows a court to stay a first-filed suit against customers when the manufacturer brings a later-filed declaratory judgment action." *CSIRO*, 2007 WL 4376104, *2. *See Katz*, 909 F.2d at 1464 ("litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer"). Aside from the lack of evidentiary support for the motion, Movants merely assert that unspecified "Suppliers" "*may* be manufacturers." Maybe being a manufacturer is not sufficient to qualify for the customer suit exception.

Movants cite *Rhode Gear*, *Kash 'N Gold* and *Ciby-Gigy* for the unwarranted assertion that, "[f]or the purposes of the [customer suit] exception, there is no meaningful distinction between manufacturers and central distributors/importers." *Rhode Gear* involved the stay of a first-filed suit in favor of a later declaratory suit brought by Raleigh, who was the sole source of

7

the allegedly infringing products in this country. *See Rhode Gear U.S.A. v. Frank's Spoke N. Wheel, Inc.*, 225 U.S.P.Q. 1256, 1259, 1985 WL 72065 (D. Mass. 1985). Movants have not alleged, much less proven, that the "Suppliers" are the sole sources of the accused products in this country.

Further, to the extent *Rhode Gear* is deemed to support movants' position, it does not represent any prevailing law. As noted above, cases applying the customer suit exception overwhelmingly revolve around second filed suits by manufacturers taking precedence over first-filed suits involving non-manufacturers. For example, in the *Ciba-Geigy* case, the Court held that a non-manufacturer was not entitled to the customer suit exception to the first filed rule. *See Ciba-Geigy Corp. v. Minnesota Mining & Mfg. Co.*, 439 F.Supp 625, 631 (D.R.I., 1977)

The *Kash 'N Gold* and *Ciba-Geigy* cases cited by movants involved venue transfers, not stays, and are therefore inapposite. *See Kash 'N Gold, Ltd. v. ATSPI, Inc.*, 690 F.Supp. 1160, 1164 (E.D.N.Y.1988); *Ciba-Geigy Corp. v. Minnesota Mining and Manuf. Co.*, 439 F.Supp. 625, 630 (D.R.I.1977). Movants have merely plucked selective dicta from *Kash 'N Gold* and *Ciba-Geigy*, which has nothing to do with the issues at hand.

D.  **The severance stay should be denied based on efficiency and judicial economy.**

"The guiding principles in the customer suit exception cases are efficiency and judicial economy." *CSIRO,* 2007 WL 4376104, *2 (citing *Tegic Commc'ns v. Bd. of Regents of Univ. of Tex.*, 458 F.3d 1335, 1343 (Fed.Cir.2006)). The relief requested by movants does not promote efficiency or judicial economy. Movants request the Court to order that, "... Plaintiff's claims against [the "Resellers"] based on products supplied, directly or indirectly, by other Defendants either in this case or in another action asserting United States Patent No. 5,855,343 ... shall be severed and stayed until the conclusion (including all appeals) of Plaintiff's claims . . ."  In other

words, Movants seek to stay those claims against the "Resellers" which are based on products supplied, "directly or indirectly" from unspecified other defendants.

The proposed stay does not promote efficiency or judicial economy. As stated in *Lifelink Pharmaceuticals*, "granting a stay in such a situation would run counter to the goal of fostering judicial economy without enhancing the product source defendant's ability to litigate the issue of patent infringement." *Lifelink Pharmaceuticals,* 2007 WL 2459879, *2-3. Further, as noted in the *Teleconference Systems* case, "a stay would not simplify the issues. A verdict in California would not be binding on Cisco's customers in this case. Therefore, a stay may lead to a duplicate trial . . ." *Teleconference Systems,* 676 F.Supp.2d at 329.

The proposed stay promotes costly piecemeal and duplicative litigation. Movants assert that "*if* [plaintiff] can recover anything at all, its recovery from the Suppliers will exhaust any claims against downstream customers, including the Resellers." (emphasis added). The Court should note the word "if." This "if" includes unresolved issues about whether (1) the foreign defendants in the *AdjustaCam II* case will successfully contest personal jurisdiction once they are served via international channels; and (2) plaintiff will be able to collect upon any infringement judgments from applicable "Supplier" defendants. Unless plaintiff's claims against the "Resellers" come to be fully exhausted, plaintiff (and this Court) would be forced to re-litigate validity, infringement and damages years in the future, *i.e.*, once the stay against the "Resellers" is lifted after the conclusion of this case and the *AdjustaCam II* case, including all appeals.

Further, the proposed stay would result in a highly inefficient and expensive discovery process involving a hybrid of party discovery and third-party discovery. Irrespective of whether they are active parties to this case, plaintiff should be entitled to take discovery from the "Resellers" regarding their sales, profits and revenues. For example, Georgia-Pacific factor no. 8 is "[t]he established profitability of the product made under the patent; its commercial success;

9

and its current popularity." *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y.1970). Further, to the extent that any "Suppliers" are directly upstream from the "Resellers," the extent of direct infringement (e.g., selling and/or offering for sale) of the "Resellers" would be highly relevant to the "Suppliers" inducing infringement by the "Resellers" by providing infringing products for resale.

The proposed stay would also require Plaintiff to take third-party discovery, via Rule 45 subpoenas, from the "Resellers" in order to discover this relevant information. In accordance with the relief proposed by movants, this would be true even if a "Reseller" was partially stayed as to some webcams. Further, unless the "Resellers" fully complied with such third party subpoenas, plaintiff would be required to file enforcement actions in other courts in order to secure their compliance. It makes no sense to burden other courts with this.

Exemplary of the inefficient and ill-conceived scheme proposed by movants are the situations involving Micro Center, Overstock and TigerDirect. Movants assert that, "[i]n any event, granting the motion would dispose of all claims except one product for the other 3 Resellers (Micro Center, Overstock, and TigerDirect) which would significantly narrow the scope of the case even as to those Resellers." In other words, movants envision a situation in which plaintiff's claims involving some webcams are stayed relative to Micro Center, Overstock and TigerDirect, while Micro Center, Overstock and TigerDirect remain parties to the case as to other webcams. This would be highly inefficient and frankly absurd.

Micro Center has its own brand of WinBook webcams.[3] A noted in plaintiff's Amended Complaint, plaintiff's infringement claim against Micro Center includes the WinBook WB-6185 webcam. *See* Dkt No. 111, ¶ 201. According to the scheme proposed by movants, plaintiff's claims against Micro Center would be stayed relative to all webcams except the WinBook. Thus,

---

[3] MICRO CENTER admits on its website that "WINBOOK" is MICRO CENTER's trademark, *see* Ex. 4, which is confirmed by the U.S. Patent & Trademark Office's website. *See* Ex. 5.

10

under the movants' scheme, although Micro Center would remain active in the case, plaintiff would have to take third-party discovery, via a Rule 45 subpoena, from Micro Center relative to sales, revenues and profits of all webcams except WinBook webcams.

Further, although movants omit to note it, Best Buy is similarly situated to Micro Center in this regard. Best Buy has its own brand of Rocketfish webcams.[4] Plaintiff's infringement claim against Best Buy includes its Rocketfish webcams. *See* Dkt No. 111, ¶ 145. According to the scheme proposed by movants, plaintiff's claims against Best Buy would be stayed relative to all webcams except the Rocketfish webcam.

Turning to Overstock and TigerDirect, Movants correctly point out that plaintiff has dismissed its claims, without prejudice, against Ezonic Corporation and Prolynkz, LLC. The reason that plaintiff dismissed its claims against those entities is that they were understood to be defunct. (Ex. 1, ¶ 4). As movants concede in their Motion to Stay, Plaintiff's complaint accuses Overstock of selling the infringing Ezonic EZCam Plus, and TigerDirect of selling the infringing ProLynkz PWC-010 webcam. Dkt. No. 111, ¶¶ 157 & 189. Movants "assert that the Court should also sever and stay all claims against Resellers Overstock and TigerDirect because [Ezonic and Prolynkz] are absent only as a result of AdjustaCam's unilateral decision to dismiss these Suppliers." This is simply misguided. It would be senseless for plaintiff to proceed against Ezonic and Prolynkz when they are defunct and have no means to pay a judgment. Thus, even if the Court stayed Plaintiff's claims against Overstock and TigerDirect relative to some webcams, such a stay could not possibly encompass Ezonic and Prolynkz webcams; otherwise plaintiff would be left with no redress for Overstock and TigerDirect's infringing sales of such webcams. Consequently, at best any stay against Overstock and TigerDirect would result in piecemeal litigation with costly and inefficient third-party discovery from parties to this case.

---

[4] *See* Ex. 6 (article), which confirmed by the U.S. Patent & Trademark Office's website. *See* Ex. 7.

The main issues in this case (as in just about every patent infringement case), are infringement, validity and damages. The most significant effects of staying claims against the "Resellers" are that (1) the jury would not likely hear about indirect infringement by the "Resellers" that results in direct infringement by customers of the "Resellers"; and (2) the jury would likely only hear about a hypothetical royalty negotiation between plaintiff and each "Supplier," as opposed to hypothetical royalty negations between plaintiff and each defendant.

Movants assert that "granting a stay as to the claims against Resellers would simplify a liability determination by eliminating the duplicative issues with regard to the same products." Actually the opposite is true. There is nothing duplicative about litigating the same webcams against multiple infringers in a single action. In fact, this is a highly efficient way to address such issues in a unified and consistent manner. It would be duplicative, however, if plaintiff could not resolve all issues with the subject webcams in the non-stayed portion of this suit. Such non-resolution could result from (1) "Suppliers" contending that their making or selling of accused webcams occurs outside of the geographical reach of U.S. patent laws; (2) "Suppliers" not being in the distribution chain for all the webcams sold by the "Retailers"; (3) a foreign supplier (in the *AdjustaCam II* case) successfully challenging jurisdiction; and/or (4) a supplier being unable to satisfy a judgment.

The Court should take note that the "Suppliers" have not agreed to be bound by a judgment in this case, even though they request a stay through the appeal of this case. There is nothing efficient or simplifying about this. As noted in *Teleconference Systems*, in such situations a stay "may lead to a duplicate trial." *Teleconference Systems,* 676 F.Supp.2d at 329.

E.  **The requested stay would unfairly prejudice plaintiff.**

The requested stay would unfairly prejudice plaintiff with delay, piecemeal litigation and expensive, inefficient third-party discovery. The stay would result in unfair delay because it

12

would delay plaintiff's claims against the "Resellers" through trial in this case and the *AdjustaCam II* case, including all appeals. This delay could easily extend for five years or more. Further, as noted as subsections D, unless it happens that all of plaintiff's claims against the "Resellers" are exhausted by litigation involving the "Suppliers" – a proposition for which no evidentiary support has been provided -- the requested stay would prejudice plaintiff by requiring expensive and duplicative piecemeal litigation. Finally, as also noted in subsection D above, the requested stay would prejudice plaintiff by requiring it to take expensive, inefficient third-party discovery from the stayed "Resellers," including from "Resellers," for example -- Best Buy, Micro Center, Overstock and TigerDirect --  would remain un-stayed relative to certain webcams even under movants proposed scheme.

F.     **Movants' other legal analysis is flawed as well.**

Defendants cite *Soverain Software* for the proposition that "[i]n determining whether to grant a stay, a court will typically consider three factors." However, *Soverain Software* concerns stays pending patent reexamination. *See Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp. 2d 660, 661, 6:04-CV-014-LED (E.D. Tex. 2005) ("[i]n deciding whether to stay litigation *pending reexamination*, courts typically consider [three factors]").   Even if the *Soverain* factors were applicable to this case, the only one that would favor a stay is factor no. 3, which is whether discovery is complete and whether a trial date has been set.[5] As to *Soverain* factor 1, a stay would unfairly prejudice plaintiff, as noted above. As to *Soverain* factor 2, a stay would not simplify the issues in this case, as noted above.

Movants cite *Refac* as "holding that an appeal of a district court's order to stay claims against customers was frivolous." However, movants missed that the Federal Circuit held the

---

[5] The three *Soverain* factors are: 1) [W]hether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, 2) whether a stay will simplify the issues in question and the trial of the case, and 3) whether discovery is complete and whether a trial date has been set.

appeal to be frivolous because it was taken from a non-final order. *Refac Int'l, Ltd. v. IBM*, 790 F.2d 79, 81 (Fed. Cir. 1986). On the merits, *Refac* involved a patent infringement action brought by a patent holder, Refac, against 37 defendants. *Id*. at 81. Citing "sensible judicial management," the district court stayed further proceedings against 31 customer defendants and allowed the case to continue against six manufacturer defendants. *Id.* The 31 customer defendants had agreed to be bound by the district court's decision and remained parties in the action. *Id.* "Subsequent decisions have held that the stay fashioned in *Refac* was a product of the rare circumstances presented and have limited its application." *Alloc,* 2005 WL 3448060 *4. *See Mitsubishi Elec. Corp. v. IMS Tech., Inc.*, No. 96 C 0499, 1996 U.S. Dist. LEXIS 12239 (N.D.Ill. Aug. 21, 1996); *Rates Tech. Inc. v. New York Tel. Co*., No. 94 Civ. 9297, 1995 U.S. Dist. LEXIS 10254 (S.D.N.Y. July 23, 1995). Moreover, even to the extent that *Refac* constitutes "sensible judicial management," this Court has wide discretion to manage its docket as it deems appropriate, and this Court is not obliged to follow *Refac.*

Movants cite *Shifferaw* for the assertion that plaintiff's claims against the "Resellers" are peripheral to those against the "Suppliers," and thus they should be severed and stayed. However, *Shifferaw* is concerned with severance for purposes of transferring venue. *See Shifferaw v. Emson USA*, 2010 U.S. Dist. LEXIS 25612 at *8 (E.D. Tex. Mar. 18, 2010). *Shifferaw* notes that Courts have found that "severance may be permitted if three factors are met: (1) whether the remaining claims are peripheral to the severed claims; (2) whether adjudication of the severed claims would potentially dispose of the remaining claims; and (3) *whether the § 1404(a) factors warrant transfer of the severed claims*." *Id.* (emphasis added).

The only material similarity between *Shifferaw* and the customer suit exception is that, when properly analyzed, both involve precedence of a suit involving a manufacturer in one jurisdiction vis-a-vis a suit involving manufacturer's customer in another. For the customer suit

14

exception, the suit involving the manufacturer is a second filed suit. For *Shifferaw*, the suit involving the manufacturer is one that is being transferred to a different forum for the "convenience of the parties and witnesses" under 28 U.S.C. § 1404(a).

Moreover, in *Shifferaw,* the "real party in interest," Mishan, "designed, manufactures, and imports the accused product, and it is the only entity that is authorized to sell the accused product to retailers in the U.S." *Shifferaw,* 2010 U.S. Dist. LEXIS 25612 at *8. In the present case, movants merely allege that the "Suppliers" are upstream in the distribution chain from the "Resellers." Including due to the lack of evidentiary support for the Motion to Stay, movants have made no showing that "Suppliers" are the "real parties in interest" in this case.

The *Ultra Products* case cited by movants involved the application of first-filed rule and the customer suit exception as they are consistently applied by courts, *i.e.*, when there is a case pending in a different jurisdiction involving a manufacturer. *See Ultra Products., Inc. v. Best Buy Co.*, 2009 U.S. Dist. LEXIS 78678 at *17-18 (D.N.J. 2009). More specifically, *Ultra Products* involved an infringement suit against CDW, Fry's, Micro Electronics, and Staples filed in New Jersey over a patent which covered certain modular power supplies for computers. *Id.* Prior to the filing of the New Jersey suit, the plaintiff had sued the manufacturers of the subject power supplies in Florida. *Id.* Applying the first filed rule and the customer suit exception, the court stayed the New Jersey action pending resolution of the first filed Florida action involving the manufacturers. *Id.* Thus, *Ultra Products* has lacks any meaningful or precedential value for the instant case.

### III. CONCLUSION.

For the foregoing reasons and the other reasons noted in this Response, the Motion to Sever and Stay should be denied.

| | |
|---|---|
| January 31, 2011 | Respectfully submitted, |
| | ADJUSTACAM LLC |
| | By: /s/ *John J. Edmonds* |
| | John J. Edmonds – LEAD COUNSEL |
| | Texas Bar No. 789758 |
| | Andrew P. Tower |
| | Texas Bar No. 786291 |
| | COLLINS, EDMONDS & POGORZELSKI, PLLC |
| | 1616 S. Voss Road, Suite 125 |
| | Houston, Texas 77057 |
| | Telephone: (281) 501-3425 |
| | Facsimile: (832) 415-2535 |
| | jedmonds@cepiplaw.com |
| | atower@cepiplaw.com |
| | mcollins@cepiplaw.com |
| | hpogorzelski@cepiplaw.com |
| | |
| | Andrew W. Spangler |
| | Texas Bar No. 24041960 |
| | Spangler Law P.C. |
| | 208 N. Green Street, Suite 300 |
| | Longview, Texas 75601 |
| | (903) 753-9300 |
| | (903) 553-0403 (fax) |
| | spangler@spanglerlawpc.com |
| | |
| | ATTORNEYS FOR PLAINTIFF |
| | ADJUSTACAM LLC |

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

| | |
|---|---|
| January 31, 2011 | /s/ *John J. Edmonds* |
| | John J. Edmonds |