# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| ITEX, INC. & MF&H TEXTILES, INC., | ) | |
| | ) | |
| Plaintiffs/Counter-Defendants, | ) | **05 CV 6110** |
| | ) | |
| v. | ) | |
| | ) | |
| WESTEX, INC., et al., | ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |
| | ) | |
| ITEX, INC. & MF&H TEXTILES, INC., | ) | |
| | ) | **08 CV 1224** |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| MOUNT VERNON MILLS, INC., et al., | ) | |
| | ) | **March 9, 2011** |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION and ORDER

In these related patent-infringement suits, Itex, Inc. and MF & H Textiles, Inc. (together, "the plaintiffs") allege that the defendants manufacture and sell fabrics or garments that infringe on their U.S. Patent Number 5,468,545, entitled "Long Wear Life Flame-Retardant Cotton Blend Fabrics"("the '545 patent"). The defendants are comprised of two groups: (1) manufacturers who produce the allegedly patented fabrics; and (2) customers who purchase the fabrics from the manufacturers and incorporate them into flame-retardant garments, which they sell or rent to end users. Currently before the court are the plaintiffs'

motions to compel five defendants from the customer group—Cintas Corporation, Workrite Uniform Company, Inc., G&K Services, Inc., UniFirst Corporation, and VF Imagewear, Inc. (collectively, "the customers")—to produce sales and profit information with respect to their allegedly infringing garments and to identify additional products they sell which may infringe the '545 patent.  For the following reasons, the motions are denied:

## Background

In the fall of 2005 the plaintiffs sued Westex, Inc., and eventually added several other defendants, alleging that they infringed the '545 patent ("the '05 case") by making, selling, or renting flame-retardant products.  Specifically, the plaintiffs alleged that Westex, King America Finishing, Inc., and Western Piece Dyers & Finishers, Inc. manufacture and sell infringing fabrics under the name Ultra-Soft; that Workrite Uniform Company, Inc. and VF Imagewear, Inc. manufacture and sell garments that incorporate infringing products; that Cintas Corporation, Unifirst Corporation, G&K Services, and Aramark rent clothes that incorporate infringing fabrics; and that Greenwood Mills, Inc. makes and sells fabrics especially adapted for use in an infringement.  ('05 Case R. 82 ¶¶ 16-22.)  Two years later the plaintiffs sought to amend their complaint to add several defendants to the '05 case, but the district court denied their request.  In response, the plaintiffs filed a separate lawsuit against several defendants in February 2008 ("the '08 case").  After twice amending their complaint in the '08 case, the remaining allegations are that Mount Vernon Mills, Inc. manufactures and sells infringing fabrics, and that Carhartt, Inc. and VF Imagewear, Inc.

manufacture and sell garments that incorporate infringing fabrics. ('08 Case R. 76 ¶¶ 10-12.)
Because the '05 and '08 cases are related, they have been assigned to the same district judge.
In May 2010 the '05 and '08 cases were referred to this court for discovery supervision.

In October 2010 the parties to both the '05 and '08 cases engaged in written fact
discovery. The plaintiffs now contend that the responses served by the customers are
deficient and have moved to compel the production of two categories of information from
VF Imagewear in the '08 case, and Cintas, VF Imagewear, Workrite , G&K Services, and
UniFirst in the '05 case. First, the plaintiffs seek sales and profit data regarding the
customers' sale or rental of infringing garments. Second, they want the customers to identify
flame-retardant products the customers manufacture for sale or use. The customers object
to the current motions, arguing that the requested data is irrelevant and that complying with
the plaintiffs' requests would impose on them an undue burden.

### Analysis

This court has broad discretion in resolving disputes related to discovery. *See Spiegla
v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004). An analysis of any discovery dispute begins with
the premise that "[p]arties may obtain discovery regarding any nonprivileged matter that is
relevant to any party's claim or defense" or that "appears reasonably calculated to lead to the
discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Although the rules allow liberal
discovery to encourage full disclosure before trial, *see White v. Kenneth Warren & Son, Ltd.*,
203 F.R.D. 364, 366 (N.D. Ill. 2001), the boundaries of discovery are not without limit. Rule

26 directs the court to restrict discovery where it "can be obtained from some other source that is more convenient, less burdensome, or less expensive," or where the "burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C); *see also Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). It is up to the party seeking to restrict discovery "to show why a particular discovery request is improper." *Meyer v. Southern Pac. Lines*, 199 F.R.D. 610, 611-12 (N.D. Ill. 2001).

## I. Information Regarding the Customers' Sales, Costs, and Profits[1]

The primary dispute presented by the current motions involves the plaintiffs' request for data regarding the customers' sales figures, costs, and profits stemming from their sale or rental of garments incorporating the allegedly infringing fabric. The plaintiffs assert that this information is relevant to their theories of liability and damages. The customers object to the plaintiffs' requests on several grounds. First, they argue that the plaintiffs should be bound by past promises not to ask the customers to provide the kind of detailed information the plaintiffs now seek. But the customers make far too much of statements plaintiffs' counsel made in open court regarding the expected scope of discovery. The customers point to a status hearing held on August 25, 2010, where plaintiffs' counsel stated that "it is likely that . . . the discovery relating to those customers is going to be very limited in scope. And

---

[1] Because there is a protective order in place in this case, the customers filed a redacted brief with the clerk's office and provided the court with an unredacted version. The court has made every effort to ensure that this opinion does not include any confidential information. The parties should contact the court immediately if the opinion conveys any information that is subject to the protective order.

the lion's share of any sort of liabilities discovery, expert discovery on infringement, validity, that sort of thing, is going to be wound up in – with Westex." ('05 Case, R. 288, Ex. B at 23.)  The customers argue that the plaintiffs should not be allowed to "reverse field" and require them to produce information to which they previously disavowed any need.  (Id. at 4.) But counsel's statements regarding the plaintiffs' discovery expectations are insufficient standing alone to excuse the customers from complying with the discovery requests in question.  Counsel never denied all intent to engage in discovery with the customers or made other statements that would justify rejecting the current motions outright.

The customers fare better, however, on their argument that the detailed financial data the plaintiffs currently seek with respect to garments—as opposed to the data related to the manufacturers' sale of allegedly infringing fabrics—is neither relevant nor likely to lead to relevant information, and that the substantial burden that the customers would have to undertake to produce the information outweighs whatever scant benefit it could contribute to these proceedings.  *See* Fed. R. Civ. P. 26(b)(2)(C)(iii).  The customers assert that complying with the discovery requests would require them to hire outside contractors to extract data from backup storage and expend hundreds of employee hours manually searching tens of thousands of records.  ('05 Case, R. 288 at 14-15.)  They estimate the cost of compliance as $50,000 at the minimum, coupled with likely expenses from lost productivity and hiring temporary employees.  The plaintiffs skirt the question of burden in their reply brief, making no attempt to demonstrate how their interest in the data outweighs

5

the cited burdens.  Especially because the customers have shown, as detailed below, that the information the plaintiffs seek is of questionable relevancy, an order compelling the customers to comply with these discovery requests is unwarranted.  *See Patterson*, 281 F.3d at 681-82.

The plaintiffs respond to the customers' relevancy arguments in part by asserting that data related to the commercial success of the customers' garments is relevant to the question of the patent's non-obviousness.  The plaintiffs correctly point out that in general, the commercial success of an accused product represents secondary objective evidence of non-obviousness.  *See Media Techs. Licensing, LLC v. Upper Deck Co.*, 596 F.3d 1334, 1337 (Fed. Cir. 2010).  But the manufacturers have already provided the plaintiffs with data showing the commercial success of the fabrics that the defendant manufacturers sold to the customers.  And the plaintiffs have not adequately bridged the divide here between the relevancy of the commercial success of the accused fabrics and the relevancy of the commercial success of garments incorporating the accused fabrics.  It is not clear that the requested data would add or lead to any relevant information beyond what the plaintiffs already know about the success of the accused fabric.  Because the commercial success of the garments—which necessarily includes the value of the work done by the customers to convert raw fabric into clothing that meets a market demand—is not commensurate in scope with the patent—which covers only a specific kind of fabric—the requested information is neither relevant to nor likely to lead to evidence relevant to non-obviousness.  *See id.* at 1339.

6

Moreover, if those garments manufactured and sold by the customers gained commercial success because they were made of allegedly infringing fabric, the level of such commercial success would naturally be captured by the fabric sales data already provided by the manufacturer defendants.

As to whether the requested information is relevant to the plaintiffs' potential damages theories, the parties' disagreement boils down to a fundamental difference in their respective views of the customers' role in this litigation.  The customers assert that because they make garments rather than fabrics, their role in this litigation—as compared to that of the manufacturers—is peripheral, reducing the need for the plaintiffs to gather the detailed financial information they now request.  Thus they argue that sales and profit data related to garments, as opposed to fabrics, is not relevant to the issue of damages.  ('05 Case, R. 288 at 2-3.)  The plaintiffs disagree, arguing that because they have sued the customers as infringers alongside the manufacturers, their sales and profit data are relevant to damages just as the fabric manufacturers' sales and profit data are relevant.

The customers' view of their role in this case is better aligned than the plaintiffs' with the concept of joint and several liability under the single recovery rule, which applies in the patent context.  Under that rule, "parties that make and sell an infringing device are joint tort-feasors with parties that purchase an infringing device for use or resale.  Each joint tort-feasor is liable for the full amount of damages (up to a full single recovery) suffered by the patentee." *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1364 (Fed. Cir. 2001) (internal citations

omitted).  As such, the customers are just as liable as the manufacturers are in the event of an infringement finding.  But the single recovery rule goes on to say that once a patentee recovers from an infringing manufacturer for the sale of an infringing product, the patentee has no recourse against the manufacturers' customer, because the patentee has been fully compensated for the harm. *See* Jerry R. Selinger & Jessica W. Young, *Suing an Infringing Competitor's Customers: or, Life under the Single Recovery Rule*, 31. J. Marshall L. Rev. 19, 52 (Fall 1997) ("In the usual course of events, the length of the accused manufacturer's distribution chain should have no impact on the patentee's ability to be made whole by the manufacturer.").  The parties agree that the plaintiffs are not entitled to recover against the manufacturers for their sale of a ream of fabric to the customers, and then again for the customers' sale of garments incorporating that same fabric.  That would be impermissible double-dipping. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 871-72 (Fed. Cir. 2006). Their disagreement turns on the impact that the single-recovery concept has on the relevancy of the customers' sales data in this particular case, where the manufacturers and customers have been sued together and where the manufacturer already has provided its sales data.

Damages in patent litigation can be based on a plaintiff's lost profits, a reasonable royalty, or a combination of the two.  35 U.S.C. § 284; *Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, __ F.3d __, 2011 WL 651790, at * 16 (Fed. Cir. Feb. 24, 2011).  The plaintiffs assert that because they "intend to seek lost profits from [fabric manufacturers] Westex and Mount Vernon for a portion of their sales" to the

customers, the detailed financial data regarding the customers' infringing sales are therefore "relevant to damages issues."  ('05 Case R. 293 at 6.)  To base a lost-profit calculation on lost sales, the patent owner has "to show a reasonable probability that he would have made the asserted sales 'but for' the infringement." *Siemens*, 2011 WL 651790, at *16.  But here, the plaintiffs—who make and produce fabrics, not garments—do not suggest that they would have made sales of garments, rather than fabrics, absent the alleged infringement.  Nor have they explained in what way the downstream sales information regarding finished garments would influence their calculation of lost sales of *fabrics* when the manufacturer defendants have already provided them with fabric sales information.

The plaintiffs also argue that because each of the customers is an accused infringer, data pertaining to their sales of allegedly infringing garments is necessarily relevant to calculating a reasonable royalty.  To calculate a reasonable royalty, the court considers the hypothetical negotiations that would have played out between the patentee and the accused infringer as willing licensor and willing licensee.  *Fujifilm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010).  According to the plaintiffs, the requested data is relevant to an analysis of the hypothetical licensing agreement they would have entered into with the customers for use of the patented fabrics.  But under the facts of this case, a negotiation between the customers and the plaintiffs would have been for the purchase and the sale of plaintiffs' fabric, not for a license.  Accordingly, the entire amount of potential damages would be accounted for in a hypothetical royalty between the plaintiffs and the

manufacturers, rendering the details of the customers' downstream sales irrelevant.  *See, e.g., Mitutoyo Corp. v. Central Purchasing, LLC*, 499 F.3d 1284, 1292 (Fed Cir. 2007); *Stickle v. Heublein, Inc.*, 716 F.2d 1550, 1562 (Fed. Cir. 1983); *see also* Donald S. Chisum, Chisum on Patents § 20.03[7][b][iii][2] (noting that where "a patent owner opts to offer licenses for the manufacture of the patented product . . . recovery of an appropriate royalty-based award against an infringing manufacturer should preclude any further recovery against resellers or users of the products in question").

The plaintiffs argue that the customers' data they seek is nonetheless relevant under the *Georgia-Pacific* framework for assessing royalties, which includes as factors the established profitability, commercial success, and popularity of a product, and the extent to which the infringer has made use of the invention. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).  But their argument ignores the particular circumstances of this case, where they have opted to proceed against the allegedly infringing manufacturer and its customers simultaneously.  The plaintiffs have not articulated any specific potential theory under which they could factor the sales of finished garments, rather than fabrics, into the reasonable royalty base of a hypothetical negotiation with the manufacturers.  Here, their injury can be determined based on the data the plaintiffs already have regarding the sales, cost, and profitability of the allegedly infringing fabrics produced and sold by the manufacturers to the customers.  It is true, as the plaintiffs argue, that if Westex is unable to satisfy a potential judgment the plaintiffs "may have no choice but to

10

recover" from the customers.  But there is a disconnect between the customers' joint and several liability for a theoretical pot of damages and the idea that the customers' sales of garments should factor into calculating the size of the pot in this particular case, where the manufacturers have provided the plaintiffs with their sales data.  The customers have persuasively argued that their downstream sales information is not relevant in this case to any theory of damages.

## II.   Information Identifying Other Potentially Infringing Fabrics

The plaintiffs also seek to compel the customers to identify all flame resistant products they manufactured for sale or use during the last 12 years, admittedly, to investigate whether the customers engaged in other acts of infringement.   Specifically, the plaintiffs' interrogatories ask the customers to:

> [d]escribe in detail any flame resistant products manufactured by Defendants for sale or use within the United States, during the years 1999 to 2010; including, the types of products, the composition of such products, the supplier of the fabrics for such products, the flame resistant qualities of such products, and the quantity of such products manufactured.

('05 Case, R. 278, Ex. A, Int. No. 13.)  The customers persuasively argue that to the extent the plaintiffs want to know whether they are selling garments that are made from potentially infringing fabrics other than Ultra-Soft, that information has been readily available to them. The customers also point out that the plaintiffs have been free all along to purchase their garments to perform whatever testing is necessary to determine whether the products infringe. They assert that their garments identify the fabrics they use right in the label,

meaning that the plaintiffs can simply purchase those fabrics and test them to determine whether they infringe.

In support of their request for this information, the plaintiffs argue that their discovery is not limited to Ultra-Soft fabrics and garments made with Ultra-Soft fabric, and they cite several district cases in support. ('05 Case, R. 293 at 10). But these cases do not support the proposition that a patentee should be entitled to investigate other potential acts of infringement by posing such a broad request as the plaintiffs have made here. In *STMicroelectronics, Inc. v. Motorola, Inc.*, 308 F. Supp. 2d 754, 755-56 (E.D. Tex. 2004), and *American Video Graphics, LP v. Electronic Arts, Inc.*, 259 F. Supp. 2d 558, 560 (E.D. Tex. 2005), the issue was whether the patentees adequately complied with a patent rule requiring the detailing of their preliminary infringement contentions. In *L.G. Philips LCD Co. Ltd. v. Tatung Co.*, Nos. F-07-0009 EFB, S-07-0018 FCD EFB, 2007 WL 869700, at *2 (E.D. Cal. March 21, 207), the contested issue involved the scope of discovery generally rather than a particular request, and the court did not address how the burden of compliance should be weighed. In *IP Innovation LLC v. Sharp Corp.*, 219 F.R.D. 427, 429 (N.D. Ill. 2003), the court ordered the defendant to identify all products containing certain computer chips also identified by the defendant, but that request was much narrower than the one being made by the plaintiffs here. In this case, the plaintiffs have not explained why the customers should bear the burden of responding to such a broad question nor offered any basis for

requiring them to identify potentially infringing fabrics when the identity of the fabrics they

use has been available to the plaintiffs for testing.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

### Conclusion

For the foregoing reasons, the plaintiffs' motions to compel are denied.

**ENTER:**

Young B. Kim
**United States Magistrate Judge**

13