```
                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE EASTERN DISTRICT OF TEXAS
                               TYLER DIVISION

    ADJUSTACAM                        )
                                      )   DOCKET NO. 6:10cv329
                                      )
         -vs-                         )
                                      )   Tyler, Texas
                                      )   2:20 p.m.
    AMAZON.COM, ET AL                 )   February 7, 2011


                     TRANSCRIPT OF STATUS CONFERENCE
                 BEFORE THE HONORABLE LEONARD DAVIS,
                     UNITED STATES DISTRICT JUDGE


                         A P P E A R A N C E S


           (SEE SIGN-IN SHEETS DOCKETED AT DOCKET NO. 386)




    COURT REPORTER:          MS. SHEA SLOAN
                             211 West Ferguson
                             Tyler, Texas  75702
                             903/590-1176


    Proceedings taken by Machine Stenotype; transcript was
    produced by a Computer.
```

```
 1                    P R O C E E D I N G S
 2             THE COURT:  Please be seated.
 3             All right.  Let's start with the AdjustaCam case
 4   first.  Let me -- Mr. Spangler, now are you Lead Counsel or
 5   Local Counsel?
 6             MR. SPANGLER:  Your Honor, I am not sure the
 7   designation, but Mr. Edmonds and I are running this case, yes.
 8             THE COURT:  Let me -- tell me a little bit about the
 9   case, the patent, the technology, that type of thing.
10             MR. EDMONDS:  If I may, Your Honor?
11             THE COURT:  Yes.
12             MR. EDMONDS:  Do you prefer I speak here or the
13   lectern?
14             THE COURT:  The lectern.
15             MR. EDMONDS:  Yes, Your Honor.
16             This case involves a single patent, the '343 patent,
17   Your Honor.  It is entitled Camera Clip.
18             THE COURT:  Entitled what?
19             MR. EDMONDS:  Camera Clip.
20             THE COURT:  Camera Clip, okay.
21             MR. EDMONDS:  The technology it relates to is what
22   people commonly refer to as webcams.  There are some webcams
23   that fit in your computer screen you may see.  They are built
24   in.  This isn't that one.  This is the webcam that clips on
25   top of the screen.
```

1            I should have brought one with me.  Normally, what
2   you would see is it would clip here on the top of the screen
3   and you can adjust it; hence the words AdjustaCam.  And the
4   technology --
5            THE COURT:  Basically, the camera for webcamming,
6   right?
7            MR. EDMONDS:  Right.  It has to support a camera.
8   It is entitled Camera Clip, and a camera is an element of it.
9   The defendants, I think, say it covers a clip.  We say it
10  covers an apparatus that includes the camera and clip.  I
11  would call it a webcam is a good way I would describe it.
12           THE COURT:  Okay.  All right.
13           MR. EDMONDS:  It involves a certain kind of webcam,
14  and this adjustability is one of the key features.  It has one
15  disposition on a flat surface, for example, a table.  It has
16  another disposition on an apparatus like this (indicates) that
17  has edges and parallel surfaces.  And it has hinges on it.
18           And the hinges allow you to have one disposition for
19  the camera when it is on a table, for example; and another
20  disposition for the camera when it is on your laptop computer,
21  for example, on your screen.
22           THE COURT:  All right.  When was the patent filed in
23  issue?
24           MR. EDMONDS:  Oh, the filing date, Your Honor?
25           THE COURT:  Yes.

```
 1                MR. EDMONDS:  The filing date goes back to March of
 2   1997.
 3                THE COURT:  Okay.  And you have sued so far 40 to 56
 4   defendants in this case; is that correct?
 5                MR. EDMONDS:  Allow me to clarify because I wanted
 6   to make sure I gave the Court a full answer.
 7                THE COURT:  Right.
 8                MR. EDMONDS:  I count 31 defendants in this case.
 9   There is some briefing on file with the Court where we counted
10   it, and we said there were 31.  If some of the defendants, for
11   example, you know, BestBuy -- there are a lot of BestBuy
12   entities out there, I'm counting them as one.  But putting
13   affiliates together for a single defendant for purposes of how
14   many defendants do we have, I count 31, Your Honor.
15                THE COURT:  What about settlements?  Have you
16   settled with any of the defendants yet?
17                MR. EDMONDS:  We have had some settlements, Your
18   Honor, yes.
19                THE COURT:  That were named defendants in this case?
20                MR. EDMONDS:  I want to say it is three or four,
21   Your Honor.  I don't have the number firmly in my head.
22                THE COURT:  And they were defendants in this case?
23                MR. EDMONDS:  Yes, Your Honor.
24                THE COURT:  Are they included in that number of
25   defendants that you listed?
```

1             MR. EDMONDS:  No, Your Honor.  That's why I said in
2    the beginning how many were originally sued and how many we
3    have before the Court.  31 is the number, I count, currently
4    before the Court.
5             THE COURT:  Okay.  All right.  And do you -- are you
6    anticipating, as part of your litigation strategy, other
7    defendants out there?  Or is this pretty well the universe of
8    defendants that you intend to sue on this patent?
9             MR. EDMONDS:  There is another pending case before
10   this Court; and between these two cases, I'm not aware of any
11   other defendants out there.
12            THE COURT:  Okay.  What is the status of that other
13   case?
14            MR. EDMONDS:  That case was filed back in December.
15   It involves a number of foreign defendants, including two
16   foreign defendants who were originally in this case.  There is
17   one in France, there is one in Netherlands, there is one in
18   UK, there are two in Asia.  And it is going to take a lengthy
19   period of time to get those foreign defendants served.  There
20   are no foreign defendants in this case anymore.
21            THE COURT:  So your strategy is basically you
22   segregated to this other case your foreign defendants, and
23   then your U.S. defendants are all in this case.
24            MR. EDMONDS:  That is the basic strategy, Your
25   Honor.  There were a few domestic defendants in that case,

```
 1   what I call AdjustaCam II; but the core of that case are the
 2   foreign defendants.
 3              THE COURT:  Okay.  All right.  Who are the domestic
 4   defendants, if you recall, that are in AdjustaCam II?
 5              MR. EDMONDS:  I can certainly name them for the
 6   Court.  There is one that is called ANTOnline.
 7              THE COURT:  What?
 8              MR. EDMONDS:  ANTOline.  It is Atlanta Network
 9   Technologies.
10              THE COURT:  Okay.
11              MR. EDMONDS:  There is one that is called Directron.
12              THE COURT:  Okay.
13              MR. EDMONDS:  One called Comp-U-Plus.
14              THE COURT:  Okay.
15              MR. EDMONDS:  One called eCOST, e-C-O-S-T.
16              THE COURT:  Okay.
17              MR. EDMONDS:  OfficeNation; Provantage, who I
18   believe are about to get dropped; Techonweb.  That's my count
19   of the domestic defendants in that case, Your Honor.
20              THE COURT:  So basically five or six domestic
21   defendants over there.  Then how many foreign defendants do
22   you have?
23              MR. EDMONDS:  I count six.
24              THE COURT:  All right.  Well, let me hear from any
25   of the defendants that would like to -- well, let me ask you
```

1  this first, and then I will ask the defendants to comment:
2  What is basically the products that you are accusing?  Do they
3  fall into groups?  Or does it vary from defendant to
4  defendant?  Or are they all the same, one group?  Or
5  subgroups?  Or what?
6             MR. EDMONDS:  So there are -- by my count, Your
7  Honor, in this case there are 12 defendants who have webcams
8  that are branded under their name.  I wouldn't call them
9  manufacturers because the distribution networks for these
10 webcams is complicated and oftentimes involves -- to my
11 knowledge, all of these are manufactured overseas.
12            I count 12 of them who brand webcams under their
13 names; for example, HP, et cetera.  And I count 19 of them who
14 sell branded webcams, who don't brand them themselves.  Within
15 that there are a couple that overlap.  For example, BestBuy
16 not only sells webcams, but they have their own branded
17 webcams.  Radio Shack not only sells other people's webcams,
18 but they have their own branded webcam.
19            THE COURT:  All right.  Let me hear from any of the
20 defendants that would care to comment about -- or just respond
21 to anything the plaintiff said regarding the patent or the
22 technology or your clients; that type of thing.
23            MR. FINDLAY:  Your Honor, Eric Findlay and Brian
24 Craft for a whole host of defendants that Mr. Craft mentioned.
25            One thing that we would point to the Court's

```
 1   attention is that the defendants have filed a motion to sever
 2   and stay, basically organized and asking the Court to sever
 3   out the customers, if you will, or the resellers and stay them
 4   while the case proceeds against, for lack of a better word,
 5   the manufacturers.
 6             It was filed, there has been a response filed.
 7             Somebody correct me if I say something that is in
 8   error.
 9             I think the defendants' reply is due within several
10   days, and also the plaintiffs have a surreply to that.
11             Anticipating Your Honor's next thought process
12   perhaps or question as to how to structure the case, the
13   defendants strongly believe that is an appropriate way to
14   consider structuring the case and that it would simplify it
15   tremendously to basically push the customers or resellers to
16   one side of the case, stay it as to them, let it proceed
17   forward as to the folks that developed and/or manufactured
18   webcams.
19             I'm thinking that if that case could proceed
20   forward, it would be more manageable, much fewer parties.  And
21   presumably one would think if the case resolves to those
22   folks, the customer defendants would be taken care of as well.
23   That was the one comment that most of the defendants would
24   probably want --
25             THE COURT:  Are you speaking on behalf of your group
```

1   of defendants or all defendants?

2         MR. FINDLAY:  I am definitely speaking on behalf of
3   mine, obviously, and I think I speak for most of the
4   defendants.  But if I am saying something that
5   contradicts what somebody thinks --

6         THE COURT:  Anyone disagree with that approach that
7   was outlined in the defense standpoint?

8         Okay.  All right.  What is plaintiff's response to
9   that?

10        MR. EDMONDS:  Your Honor, the defendants have moved
11  to stay under what they are calling the customer suit
12  exception.  But this doesn't fall under the customer suit
13  exception because they are saying some of us are
14  manufacturers, some of us are kind of like manufacturers, some
15  of us are central resellers; and from the plaintiff's
16  perspective, it would be an unfair prejudice to us to stay
17  these parties that they want to stay, for several reasons.

18        One is they are really -- the profit margins, as we
19  understand it, of the Amazons and BestBuys of the world, are
20  much larger than they are from the webcam manufacturers.  So
21  the suggestion that these retailers, resellers -- whatever
22  they call them -- aren't the real parties in interest, isn't
23  really true.

24        From one perspective they may be the real parties in
25  interest in that they are the ones who profit the most from

1    these.  Certainly from our perspective of a damages model, we
2    need -- they are someone who we need to have in court with us.
3              If the Court were to stay the case against these 19
4    defendants who wished to be stayed, then the plaintiff would
5    have to go take third-party discovery from parties who are
6    parties to this case today.
7              And we would have to chase them around with
8    subpoenas all over the country.  If they resist those
9    subpoenas or if they don't fully comply, we are going to have
10   to have enforcement actions against 19 different parties in
11   various different states.
12             And from our perspective, it doesn't simplify the
13   case at all.  It overly complicates the discovery process.
14             THE COURT:  Okay.  Anyone else care to respond on
15   that issue?
16             I'm not actually taking that up at this time.  I
17   will consider that on the papers.  But I appreciate that
18   input.
19             Any other defendants care to comment?  Any
20   suggestions?
21             Here is what my concern is.  I am becoming
22   increasingly concerned when I see this case with this large a
23   number of defendants just with the overall cost of the
24   litigation that is imposed on so many parties all going
25   forward at one time.

 1          I think in some cases it makes sense, but in others
 2   it may not.  And some type of staging, some type of issue
 3   adjustment might be in order.
 4          What I am probably most concerned about is -- and I
 5   am going to -- I have done this in other cases, and I am going
 6   to do so in this case, and that is to ask plaintiffs to file
 7   an in camera review of their settlements, and I will -- that
 8   they have entered into, and I will put that in an order.
 9          What I am really looking at very closely in this and
10   some other cases is, does there need to be some leveling of
11   the playing field under our Patent Rules which are generated
12   to get a plaintiff and the parties up to speed and to trial
13   very quickly and, hopefully, as efficiently as you can in a
14   patent case.
15          And as long as that is the objective of getting it
16   to trial, I think it works fairly well and does so in
17   multi-party cases as well.
18          But I have some concern that in some cases it may be
19   being used more or less to exact from defendants sort of
20   cost-of-defense type of settlements that aren't really geared
21   toward getting the case to final resolution as to the validity
22   of the technology, the patent, and getting it tried.
23          But the Patent Rules are being used -- and they
24   create a lot of expense for both parties, for all parties very
25   quickly the way that they are set up.  And so I am just

1   concerned there may be a small group of cases that those rules
2   may be being used to exacerbate the cost-of-defense type of
3   settlements.  And to the extent that that is the case in a
4   case, I want to look and encourage the parties to discuss and
5   to present to me some alternatives to help reduce those costs,
6   perhaps level the playing field a little bit where we still
7   get to the issue as quickly and efficiently as possible of
8   whether the patent is valid, is it infringed and the damages
9   and get it to trial.  But maybe not in the manner that is
10  contemplated in the Patent Rules for cases that involve a
11  large number of defendants; that it is almost unmanageable in
12  some instances due to the number of defendant, and where there
13  seems to be a pattern of settling for very few pennies on the
14  dollars from a large number of defendants.
15           So that is what I am looking at.  With this case I
16  would appreciate the parties' comments whether they feel this
17  case falls within that classification of cases or not.
18           MR. EDMONDS:  May I, Your Honor?
19           THE COURT:  Yes, you may.
20           MR. EDMONDS:  No, it does not.  First of all, in
21  terms of the Court's concern about discovery being overly
22  complicated, I invite the Court -- the webcams and the camera
23  clips that at issue here -- this is not a case that we are
24  going to be dwelling on code.  It is not a case we are going
25  to be dwelling on advanced engineering techniques.  You can

 1    hold one of these webcams in your hand and tell whether it
 2    meets the claim limitations or not.  It is a mechanical
 3    patent.
 4              So as far as the expense and scope of discovery,
 5    this case is very manageable compared to a lot of cases the
 6    Court sees; for example, cases that involve Internet
 7    technology or computer hardware that is on the inside that
 8    requires a microprocessor.
 9              THE COURT:  Is it going to require the defendants to
10    do extensive email searches and costly -- that type of costly
11    document production early in the case?
12              MR. EDMONDS:  We try to work with them to come to
13    something reasonable.  My firm has five lawyers.  We can't
14    digest four million emails.  Like I say, from a technology
15    perspective, it is a manageable case.
16              Also, these defendants -- the Court sees some cases
17    where there may be 50 defendants who have been sued, none of
18    whom have any relationship with each other.  And we certainly
19    appreciate the manageability problem with that.  This case is
20    different.
21              Each of these -- for example, Amazon.  Amazon sells
22    webcams from many, many of these other defendants.  So it is
23    not like we just picked on someone and lumped them all
24    together.  They are tied in -- these retailers, BestBuy,
25    Amazon, CDW they sell lots of these webcams that deem to

1    infringe, which differentiates this from a case in which these

2    parties who really have nothing to do with each other have

3    been lumped together.  From our perspective there are some

4    economies of scale of putting them all in the same case.

5              I hope the Court appreciates that in terms of the

6    number of defendants from the plaintiff's perspective, if our

7    client merely sued the manufacturers, there is a very high

8    chance that the Amazons, the CDWs would file declaratory

9    actions against us --

10             THE COURT:  I understand.

11             MR. EDMONDS:  -- because we have accused that

12   webcam.  And those would be far flung out all over the

13   country.  Very inefficient from a judicial perspective.

14             And then, lastly, in terms of pennies on the dollar,

15   we will submit those to the Court.  This isn't a

16   pennies-on-the-dollar case.

17             THE COURT:  If you would submit for in camera

18   review, if you would just do me a spreadsheet that lists all

19   of the defendants, list those that you have settled with, with

20   some notation on the spread sheet.  List those that you have

21   offers outstanding to and the amount of those offers.  And

22   then list your damage model for those defendants as best you

23   can ascertain it at this time.  I know you haven't had

24   discovery, but why those settle -- what I am looking for is

25   how those settlements relate to damages.

```
 1                MR. EDMONDS:  Yes, Your Honor, we will.  And
 2   different people, different defendants make or sell more
 3   webcams than others so --
 4                THE COURT:  I understand.
 5                MR. EDMONDS:  -- it is really the cost per webcam
 6   that is more significant than the dollar amount, at the end of
 7   the day.  Thank you, Your Honor.
 8                THE COURT:  Thank you.
 9                Mr. Smith.
10                MR. SMITH:  Your Honor, I had -- and I am not
11   speaking for my clients in this case, but you brought up some
12   issues that I thought I could respond to and maybe offer a
13   couple of thoughts, and then the last sentence you said just
14   took the idea from me, and that is damage models.
15                What I was going to suggest, perhaps not for some of
16   the defendants in this case but in general, one of the things
17   that would be helpful in determining whether a settlement
18   really is based on what the plaintiff is claiming or whether
19   it is based on defense costs, is if we had a damage model from
20   the plaintiff, if we had something that said this is what we
21   are looking for, and then we can compare that.  Because it is
22   generally pretty easy for some of my smaller clients to come
23   up with sales information.
24                We compare that and say, look, even if the plaintiff
25   is right, we are talking about the difference between 500 and
```

```
 1    $5,000 in terms of the royalties you are asking for.  So if we
 2    had some idea early on what the damages model that the
 3    plaintiff was looking at, that would be useful I think to us
 4    in getting some of these claims against some of the smaller
 5    defendants, especially out of the way; and also to the Court
 6    in evaluating the settlements as you just ordered.
 7              THE COURT:  What about that, Counsel?  What about
 8    the damage -- do you understand what he is saying would be
 9    helpful?
10              MR. EDMONDS:  I think so, Your Honor.  And for
11    those -- many defendants have had discussions with us already,
12    and for those defendants we have given them a number and told
13    them where we are coming from and how that is tied to
14    webcams.  I think maybe Mr. Smith's clients -- we just haven't
15    had that dialogue yet.  So I think that dialogue goes on
16    anyway on an informal basis.  Any defendant when you give them
17    a number, they are going to ask how you came to it.  And if
18    you can't give them an answer, I don't think you are going to
19    get very far with the discussion.
20              MR. SMITH:  That is true when you are dealing with
21    larger defendants.  When you are dealing with smaller
22    defendants a lot times there is not a discussion about the
23    merits of the case or what are your sales.  It is basically an
24    amount that having seen the same numbers tossed back and forth
25    over and over and over again, I don't -- I have my questions
```

1   as to whether they are really based on an evaluation of, well,
2   here is what your sales are, therefore -- because the numbers
3   that is being asked is in some cases multiples of what I think
4   the royalty would be for that number of sales.
5              Obviously, there is a lot of room for give and take
6   here, but what I was thinking is something along the lines of
7   the Court already under Paragraph 1(c) of its discovery order
8   requires disclosure of your damage calculations.  I know we
9   all commonly realize that you can't get that nailed down for
10  certain until you have discovery, until you have expert
11  reports.  But if you are settling claims early in the case, as
12  the Court just noted, you have got a damages model.
13             If that provision were interpreted by the Court to
14  require a real calculation -- tentative obviously -- a real
15  calculation of what the plaintiff thinks their damages model
16  is, that would allow I believe a lot of the smaller cases
17  especially to be resolved because we would know here is what
18  the plaintiff thinks the royalty rate would be, so if we can
19  just nail down what our sales are, we at least have a starting
20  point if we assume infringement.
21             Then with the larger defendants, the Court could
22  evaluate whether a particular settlement really was consonant
23  with the plaintiff's model.  So that was just something -- I'm
24  not saying it applies in this case, but it was something I did
25  want to let the Court know I thought might be a tool the Court

```
 1   might look at in certain cases.
 2             THE COURT:  What is your response to that?
 3             MR. EDMONDS:  I don't know if I am here to speak on
 4   behalf of all plaintiffs before the Court.  I would say,
 5   though, that we are talking about two different things.  There
 6   is a damages model and then we are talking about settlement
 7   discussions.  The numbers that are batted around in settlement
 8   discussions in most cases are lower than the damage model.
 9   There is a discount given for settlement, the certainty of
10   settlement.  So I don't know if those two things really
11   connect.
12             I would suggest -- to me the process generally
13   works.  90 percent of cases settle, patent cases settle.  I
14   don't know whether -- I appreciate there may need to be some
15   adjustments for some of these large cases, but the settlement
16   dynamic to me seems to work.  I am concerned that efforts to
17   overly tweak it or overly mechanize it, wouldn't necessarily
18   advance the ball.
19             THE COURT:  Have you made settlement overtures to
20   all of the defenfants in the case?
21             MR. EDMONDS:  I think for every defendant we have at
22   least offered to have them sign a 408 agreement so we can have
23   those.  Many defendants we have gone so far as exchanging
24   numbers with.  And some defendants just don't want to talk.  I
25   think it is well-known the parent of this -- it is a matter of
```

1   record.  The parent of this entity is a licensing entity.

2   That is what it does.  I think it is well-known that we are

3   interested in licensing this patent to the defendants.

4              THE COURT:  All right.  Anything further, Mr. Smith?

5              MR. SMITH:  No, Your Honor, thank you.

6              THE COURT:  Any other thoughts or suggestions?

7              Okay.  So you have this other case -- I tell you

8   what I think I'm going to do is I'm going to set this case for

9   another status conference, and I will enter an order with

10  specifics of what I would like the parties to be prepared to

11  discuss.

12             I would like to have the settlement chart for in

13  camera review, and then I will set it.  And I will do so

14  within the next few weeks for another status conference to

15  really get into the meat of it.  And I would like for

16  defendants to get together collectively and individually, and

17  I will put in the order I would like for y'all to be prepared

18  to put forward any suggestions you have; you know, if there is

19  something that is a particularly big issue that could be case

20  dispositive.

21             In other words, I want to really do more of an

22  indepth case management in this case in an effort to try to

23  hold down the litigation costs associated with it.  So that is

24  what we will do, and I will get an order out resetting it for

25  another hearing.

1            Now, I won't be giving you a Markman or trial date
2  today, but we will do that at the next hearing.
3       (End of proceedings on AdjustaCam v. Amazon.)
4
5                    C E R T I F I C A T I O N
6
7  I certify that the foregoing is a correct transcript from the
8  record of proceedings in the above-entitled matter.
9
10
11  /s/ Shea Sloan
12  SHEA SLOAN, CSR, RPR
    OFFICIAL COURT REPORTER
13  STATE OF TEXAS NO. 3081
14
15
16
17
18
19
20
21
22
23
24
25