```
1                IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF TEXAS
2                          TYLER DIVISION

3    ADJUSTACAM                   )
                                  )   DOCKET NO. 6:10cv329
4                                 )
          -vs-                    )
5                                 )   Tyler, Texas
                                  )   9:10 a.m.
6    AMAZON.COM, ET AL            )   March 24, 2011

7

8                 TRANSCRIPT OF STATUS CONFERENCE
              BEFORE THE HONORABLE LEONARD DAVIS,
9                 UNITED STATES DISTRICT JUDGE

10

11                    A P P E A R A N C E S

12

13     (SEE SIGN-IN SHEETS DOCKETED IN THE MINUTES OF THIS CASE.)

14

15

16

17

18   COURT REPORTER:        MS. SHEA SLOAN
                            211 West Ferguson
19                          Tyler, Texas  75702

20

21   Proceedings taken by Machine Stenotype; transcript was
     produced by a Computer.
22

23

24

25
```

```
 1                    P R O C E E D I N G S
 2              THE COURT:  Please be seated.
 3              All right.  Ms. Ferguson, if you will call the case,
 4    please.
 5              THE CLERK:  Court calls Case No. 6:10cv329,
 6    AdjustaCam v. Amazon.com, et al.
 7              THE COURT:  Announcements?
 8              MR. SPANGLER:  Your Honor, Andrew Spangler on behalf
 9    of the plaintiff, and John Edmonds, this morning.
10              THE COURT:  Very good.
11              MR. SPANGLER:  We are ready to proceed.
12              MR. CRAFT:  Good morning, Your Honor.  Brian Craft
13    and Steve Daniels here for Amazon.com, Inc., CDW Corporation,
14    CDW, Inc., Creative Labs, Fry's Electronics, Hewlett-Packard
15    Company, Micro Center, Office Depot.  I'm also here announcing
16    for Sakar International.  Mr. Daniels may represent some
17    others that I have missed.
18              MR. DANIELS:  Your Honor, I believe the only one
19    missing from the list was Best Buy.  I didn't hear that one.
20    But, otherwise, that is it.
21              THE COURT:  How many defendants in all do you
22    represent?  Do you know approximately?
23              MR. DANIELS:  I represent eight defendants.
24              THE COURT:  All right.  Very well.
25              MS. DACUS:  Your Honor, Shannon Dacus and Scott
```

1    Partridge here representing Dell.

2             MR. PARTRIDGE:  Good morning, Your Honor.

3             THE COURT:  Who do you represent?

4             MS. DACUS:  Dell.

5             THE COURT:  Dell, okay.

6             MR. BUFE:  Good morning, Your Honor.  John Bufe and

7    Mike Harris for the Blue Microphones Defendants; and also John

8    Bufe for J&R Electronics.  Ready.

9             THE COURT:  Thank you.

10            MR. AYERS:  Your Honor, Robert Ayers here for Kmart,

11   Sears, and Overstock.  All Sears entities, Your Honor.

12            MS. GUNTER:  Debbie Gunter and Chris Cuneo for

13   Newegg and Rosewill.

14            MS. STANDISH:  Good morning, Your Honor.  Allison

15   Standish Miller for Cobra Digital.

16            MR. PHILBIN:  Good morning, Your Honor.  Phillip

17   Philbin for Digital Innovations.

18            MR. DONAHUE:  Good morning, Your Honor.  David

19   Donahue and Michael Smith for Radio Shack.

20            MR. SMITH:  Michael Smith also for Wal-Mart, Your

21   Honor.

22            MR. HILTON:  Your Honor, Zachary Hilton and Jeff Lee

23   for Auditek Corporation.

24            MR. LEE:  Good morning, Your Honor.

25            MR. HAMMOND:  Good morning, Your Honor, Herbert

1  Hammond for Gear Head.

2           MR. AINSWORTH:  I'm just visiting, Your Honor.

3           THE COURT:  Just visiting.  It is good to have you.

4           We are here for the Status Conference.  Let me start

5  by asking plaintiff to go first and just make an opening

6  statement and any suggestions that you have on how this case

7  could be best managed, and then I will hear from defendants if

8  they have anything.

9           MR. EDMONDS:  Yes, Your Honor.  John Edmonds.  I

10  will be speaking on behalf of the plaintiff.

11           THE COURT:  All right, Mr. Edmonds.

12           MR. EDMONDS:  If I can bring a couple of the webcams

13  with me here.

14           THE COURT:  Okay.  I see them all staring at me.

15           MR. EDMONDS:  They are not plugged in, Your Honor.

16           THE COURT:  They are not loaded.  Okay.  That's

17  good.

18           MR. EDMONDS:  In terms of the complexity of this

19  case, I wanted to bring the Court some representative samples

20  of the webcams.  Most of them look a lot like these two

21  (indicating) that I am holding up.  This is from iHome, this

22  is from Creative.

23           The one, the Mi webcam there has kind of a clip,

24  slightly different.  And then the one that is really kind of

25  an outlier but I wanted the Court to see it, is this Minoru

1    that looks kind of like an alien.

2          But I think it is important for the Court to

3    appreciate the devices because in terms of the scope of

4    discovery in this case on the technical side, we can -- the

5    plaintiff can determine infringement from a visual inspection

6    of the device.  So the majority of the discovery in the case

7    is just going to be on damages; profits, costs, revenues,

8    projections, market analysis, things of that sort.

9          So, you know, this is not a case that is going to

10   require source code.  It is not going to require engineering

11   drawings.  It is not going to require a lot of the things that

12   typically burden cases and run up the expenses.

13         So in terms of potentially streamlining it, the

14   plaintiff's suggestion would be that we opt out of the Court's

15   mandatory disclosures and we just do request for production.

16   And the plaintiff is certainly willing to try to narrow the

17   scope of the request to what is reasonably at issue in the

18   case, which is primarily the scope of the infringement and

19   damages.  I think it is going to be very manageable from that

20   perspective.

21         In terms of the number of defendants, we have a few

22   defendants here who are in the process of exiting, either from

23   settlements or some of them have just come and said, look, our

24   sales are so small will you just cut us loose?  If the sales

25   are tiny, then we are not going to burden the court system

1    with that.

2              So I count 25 real parties in interest here, 10 of

3    whom are manufacturers and 15 of whom are retailers.  So --

4              THE COURT:  How many did you sue initially in this

5    case?

6              MR. EDMONDS:  I believe initially we had

7    approximately -- there are some defendants it was confusing

8    who was the real party in interest, so affiliates were sued.

9    But when you filter out the affiliates, I believe we had

10   approximately 35 defendants initially.

11             THE COURT:  And then in the other case, the 644,

12   there are not many defendants in that case, I don't believe.

13             MR. EDMONDS:  In the 644 case -- there are two

14   defendants in that case --

15             THE COURT:  How many?

16             MR. EDMONDS:  -- who overlap with this case because

17   they are foreign affiliates.

18             THE COURT:  Okay.

19             MR. EDMONDS:  And they were holding up this case, so

20   they are in the other case.

21             THE COURT:  Okay.

22             MR. EDMONDS:  In that case we have 15 defendants, 2

23   of whom overlap with the defendants in this case, 7 of whom

24   are manufacturers of webcams, the rest of whom are resellers

25   of webcams.  Many of the manufacturers in the, what I call

1   AdjustaCam 2, which is the 644 case, are foreign

2   manufacturers; and we are still getting things translated for

3   them, as far as I know.  That case is going nowhere fast

4   because of the presence of the foreigners.

5           THE COURT:  How many foreign defendants out of

6   the -- are foreign out of the 15?  Most of them or...

7           MR. EDMONDS:  No, I count 3 of them.  There is Trust

8   International.  There is Sakar.  And there is Creative.

9           THE COURT:  So only three of them are foreign

10  defendants?

11          MR. EDMONDS:  Yeah, actually I think KYE, so I want

12  to say 4.

13          THE COURT:  What is your thought as to maybe

14  consolidating -- would it serve any useful purpose to

15  consolidate the cases but maybe carve out the foreign

16  defendants that will take you more time to get service on?

17          MR. EDMONDS:  That would be fine from the

18  plaintiff's perspective.  If it streamlines, we are all in

19  favor --

20          THE COURT:  Have you got service on the other 12

21  defendants already?

22          MR. EDMONDS:  I believe so.  Some of them -- since

23  the case is going nowhere fast -- were generous with

24  extensions.  Why hold their feet to the fire when the

25  foreigners are still out there in the Hague or what have you?

1    I can check on it.  If they haven't, I'm sure they will be

2    served soon.

3              THE COURT:  All right.

4              MR. EDMONDS:  So from that perspective, I think we

5    can streamline discovery.  The plaintiff is certainly willing

6    to consolidate as the Court sees fit, and we just don't see

7    this as an overly burdensome case.

8              What is different about this case, I think, than

9    many of the large cases the Court sees, is many of these

10   defendants are intertwined in many ways.

11             You have resellers like Amazon and Best Buy, Office

12   Depot who resell a lot of webcams from various manufacturers

13   in the case; Fry's Micro Center.  So trying to unsort those,

14   doesn't make much sense.  It makes a whole lot more sense to

15   have these defendants together because we can take care of all

16   of the common issues all at once.

17             From our perspective since these devices are --

18   infringement is determinable on really a visual inspection of

19   it, it is not an overly complicated case from anyone's

20   perspective; and the presence of this many parties is not

21   going to overly complicate things for the Court.  If anything,

22   it simplifies matters so we can address all this at once.

23             THE COURT:  Okay.  Thank you.

24             All right.  Defendants?

25             MR. DANIELS:  Good morning again, Your Honor.  I'm

1  Steven Daniels.  Yeah, I believe to some extent what Mr.

2  Edmonds says about the infringement issue is correct.  It is

3  not a complex invention.  There, however, are significant

4  differences among the various accused products that are going

5  to require a lot of explication and a lot of discovery.

6           In their preliminary infringement contentions they

7  have kind of lumped a lot of cameras together that are not

8  alike that is going to require a lot of unpacking.

9           But really it is probably correct that the bulk of

10  the discovery here will be related to damages.  That may be

11  streamlinable, but not if the claims against the resellers are

12  not stayed.

13           THE COURT:  Not what?

14           MR. DANIELS:  The claims against the resellers are

15  not stayed.  If they are taking damages discovery from the

16  resellers of all of the same cameras that the manufacturers

17  and distributors are accused on, that is going to drastically

18  increase the cost and complexity of damages discovery in this

19  case.

20           So the defendants' first proposal in terms of

21  streamlining this case, is to grant our motion to stay the

22  claims against the resellers.  And if you are going to

23  consolidate the case, I think it would make sense to extend

24  that stay to the reseller defendants in the second-filed case

25  as well?

```
 1            THE COURT:  Are you making this motion on behalf of
 2    just the resellers or all of the defendants?
 3            MR. DANIELS:  So the motion was primarily from the
 4    perspective of the manufacturers attempting to stay resellers
 5    of their products, but a number of the resellers joined the
 6    motion as well.  And I represent both manufacturers and
 7    resellers.  So on behalf of my clients, I am moving to stay
 8    the claims -- I want to stay all claims with respect to
 9    resellers --
10            THE COURT:  How will the plaintiff then sort out --
11    I take it from the resellers they are seeking to identify
12    whether they have got all of the manufacturers or not.  How
13    will they sort that out?
14            Or let me ask plaintiffs, what is your take on the
15    suggestion he just made?  I don't want to speak for you.
16            MR. EDMONDS:  Thanks, Your Honor.  That is very
17    problematic from our perspective.  What they are calling
18    manufacturers, some of them are manufacturers, some of them
19    are not manufacturers.  They are what are called kind of
20    upstream --
21            THE COURT:  Middlemen.
22            MR. EDMONDS:  -- consolidated -- they have a name
23    for it.
24            From our perspective, some of these webcams the
25    retailers, all their webcams have been sold in the U.S., so we
```

1    know that.  The manufacturers, it is not clear to us that they

2    even know which of their webcams have made it into the U.S.,

3    so we are going to need to get discovery from the retailers

4    just to find out the extent of that.

5              We also -- there have been some dueling papers filed

6    with the Court.  We are going to have to have discovery from

7    the retailers in this case in order to do a proper damages

8    calculation.

9              We provided the Court with a declaration from our

10   damages expert Mr. Bratic.  We provided the Court with legal

11   authorities, including Georgia-Pacific factors that say this

12   is necessary information for us.

13             So what they are proposing is the retail defendants

14   would be stayed, and we would have to take third-party

15   discovery from parties to the case by issuing subpoenas in all

16   these jurisdictions that they are from.

17             And they have already put the Court on notice that

18   they oppose the discovery; that they don't think we need this

19   information.

20             So what that means is the Court would -- we would

21   be -- set out to take opposed discovery by way of Rule 35

22   subpoenas from parties to the case.  We would have to enforce

23   these subpoenas in courts throughout the land.  Each of these

24   courts would now be burdened with determining the relevance of

25   this information and reinventing the same wheel.

1          So from our perspective, this Court should decide

2     what is relevant and what should be produced.  And it makes

3     zero sense from judicial efficiency to carve parties to the

4     case into third parties and force us to take third-party

5     discovery from them.

6          THE COURT:  Who are you going after as far as your

7     settlement strategy, both retailers and the manufacturers?

8     Have you settled with both so far?  And then what is your --

9          MR. EDMONDS:  A good example would be Jasco, who --

10    you may not have heard of Jasco, but they make Kodak-type

11    products, Kodak webcams.  We have settled with Jasco.  That

12    takes the Kodak webcams off the table with respect to the

13    retailers.  So if the manufacturer will settle with us and

14    that makes it that much easier.  If there is a retailer who is

15    only tied to that manufacturer, then they get the benefit from

16    it, they would drop out of the case.

17         But for those manufacturers that don't want to

18    settle with us, then our strategy is both are infringers and

19    both are jointly and severally liable for it.

20         And from our perspective of the market, we

21    understand that the margins from the retailers are

22    significantly higher than those for the manufacturers.  So it

23    is important from the plaintiffs' damages perspective that we

24    are able to have -- capture that as part of our royalty model

25    and have the information as part of our expert to factor it

1    in.

2           THE COURT:  Your Honor, we have submitted authority

3    for the proposition that the discovery from the resellers

4    related to damages is not relevant in an analysis like this.

5           However, it is important to recognize here what we

6    are seeking is a stay as to the resellers.  So they are still

7    subject to the jurisdiction of the Court.  If AdjustaCam is

8    able to make a showing that they require some discovery from

9    the resellers, the stay could be lifted for that limited

10   purpose.  So it is not that they need to take third-party

11   discovery throughout the country to get discovery if they can

12   show they need it.

13          But the fact of the matter is they don't need it.

14   In a traditional reasonable royalty analysis, if you look to

15   the way the licensing would go in a hypothetical negotiation,

16   AdjustaCam wouldn't go to Best Buy, Wal-Mart, Office Depot,

17   CDW, Amazon and try to get licenses from each of them for

18   cameras made by HP or by Creative, for example.

19          So the hypothetical negotiation would be done with

20   the manufacturers.  And it is their profits and their margins

21   that are relevant to that analysis, not those of the

22   resellers.

23          So we don't think it is relevant.  If it is

24   relevant, they can take that discovery here.  The stay

25   wouldn't block that.

1          THE COURT:  What other suggestions do you have?

2          MR. DANIELS:  Well, we don't currently see a claim

3    construction issue that would simplify the case drastically,

4    but we are open to possibly doing an early claim

5    construction.

6          But our primary thing would be to -- for the Court

7    to entertain an early motion for summary judgment on whether

8    the plaintiff is entitled to pre-suit damages in this case.

9          They have two licensees that have been licensed

10   since 2001; Phillips and Logitech.  Logitech is a manufacturer

11   of many, many webcams that are still on sale.  And the

12   Logitech webcams that we have inspected are not marked with

13   the patent number.

14         So we think if they can make the showing that they

15   have been marking continuously and consistently throughout the

16   time period since the licenses were entered, then they could

17   defeat summary judgment.  But we think it is going to be a

18   clear issue for summary judgment where we could knock out the

19   pre-suit damages.

20         There is also a laches issue here because of the

21   extended delay in filing this suit that gives rise to the

22   presumption of laches, which they would have to overcome,

23   which is also an issue ripe for summary judgment.

24         We think that if that motion is successful, it will

25   make the case very ripe for settlement.  It will also, in

1    fact, knock out a lot of the products at issue that have been

2    discontinued; that have not been sold since the suit was

3    filed.  Some of the manufacturers who are now defunct and who

4    have been dismissed from this case, those products would be

5    taken off the table.  So it would greatly simplify the issues.

6    So that is our second proposal.

7              THE COURT:  Could I get a response to that?

8              MR. DANIELS:  I'm sorry --

9              THE COURT:  Excuse me just a moment.  I was going to

10   get a response.

11             MR. DANIELS:  Yes, sir.

12             MR. EDMONDS:  Your Honor, I don't want to speak out

13   of turn without talking to my client.  In terms of the

14   pre-suit damages, I'm not sure we would even oppose that

15   motion from them.  I'm not sure that is an issue that is so

16   hot for the Court to decide.  But if it is something they want

17   to tee up by way of a motion for summary judgment, there is

18   nothing to stop them from doing that today.

19             In terms of singling out laches, I guess my reaction

20   to that is that laches is a very factual affirmative defense

21   that requires an unreasonable delay, it requires prejudice.

22             So, I mean, if they want to file it tomorrow, they

23   are certainly entitled to; but we would also be entitled to

24   discovery from them as to the prejudice they have suffered

25   that would give rise to laches.  So I think it would be

1    followed by a 56(f) motion until we got some discovery on it.

2              But as I understand it, the Court's discovery

3    deadline is the deadline.  There is nothing to preclude the

4    parties from filing a motion beforehand.  We just need to make

5    sure discovery progresses to a point to where they are fairly

6    heard.

7              MR. DANIELS:  Just to clarify that.  The effect of a

8    successful motion on marking will be the same as laches, so if

9    we knock out pre-suit damages on marking, we don't need to

10   address the laches issue at all, so I think I would see them

11   as sort of --

12             THE COURT:  Have y'all discussed this with the

13   plaintiff prior to this, this marking issue?

14             MR. DANIELS:  No, Your Honor, but we did raise it in

15   our papers on the motion to stay.

16             THE COURT:  Okay.  Well, let me just encourage the

17   parties -- I mean, I thought I just heard him say they might

18   not oppose that, so, you know, part of what I am trying to do

19   in these cases is if y'all will talk and try to get it down to

20   where we can get the case resolved, you know, rather than

21   having to come in here and discuss it, you ought to try to

22   discuss it beforehand.

23             MR. DANIELS:  Your point is well-taken, Your Honor.

24   I just would point out that in their papers they said they

25   were seeking damages going back 6 years, so we had no reason

1    to believe that they had given up on pre-suit damages.

2              He just said today for the first time that if the

3    sales of some of the parties are tiny, they will cut them

4    loose from the case, which if we cut our pre-suit damages for

5    a lot of these small parties, that is going to be the case.

6    So I'm surprised to hear this this morning, and I agree we

7    should have spoken about it before.

8              But what we would like to do then --

9              THE COURT:  I do want to say that what Counsel said

10   is -- he couched it.  He would have to discuss it with his

11   client.  And that is one thing I want to do in these

12   conferences is to allow the parties to talk candidly without

13   fear of, "oh, you said."  So, generally, what is said here,

14   I'm not going to be inclined to have somebody try to quote

15   back to somebody during the trial or whatever.

16             MR. DANIELS:  Understood, Your Honor.

17             The other thing we would like to do is following a

18   successful motion on pre-suit damages, if it is successful or

19   actually just following that motion, period, we would like to

20   propose the Court require a mandatory mediation to take place

21   at that point to settle out whatever claims may have been

22   either knocked out or minimized as a result of the motion.

23             THE COURT:  I take it plaintiff would not be opposed

24   to a mandatory mediation?

25             MR. EDMONDS:  Not at all, Your Honor.

1          MR. DANIELS:  Okay.  And then the other point we

2    wanted to make is there are actually two petitions for

3    reexamination of this patent that have been filed with the

4    Patent Office.  One of them has been granted, and the reexam

5    has been initiated.  The other one, it is my understanding,

6    there has not been action on yet.

7          But those two proceedings could act as a proxy, we

8    think, for the validity challenge that the defendants are

9    likely to make or a part, at least, of the validity challenge

10   that the defendants are likely to make in this case.  So we

11   would propose a stay of the case pending the outcome of the

12   reexams.

13         I know typically Your Honor is not open to stays of

14   this sort; but in a case like this where we are trying to

15   streamline issues, that may be a good proxy for judicial

16   process.

17         THE COURT:  Okay.  It is not, but it's okay.

18         MR. DANIELS:  All right.  Fair enough.  Well, that's

19   all I have to say.

20         THE COURT:  Mr. Partridge?

21         MR. PARTRIDGE:  Yes, Your Honor.  If I may?

22         THE COURT:  Certainly.

23         MR. PARTRIDGE:  I just have a couple of points.  I

24   wanted to try to put this in some perspective for the Court.

25   I shutter at the thought of having to deal with discovery,

1    requests for production, and the like, on damages when I hear

2    the plaintiff say, oh, we have got George-Pacific and all of

3    the factors and we have hired Mr. Bratic and we need

4    information about margins; this, that and the other thing.

5           That is among the most burdensome of the kind of

6    discovery one faces.  I represent Dell, Your Honor.  And if we

7    were to agree that there are no pre-suit damages here, and I

8    haven't -- I have gotten this information from one of my

9    associates who knows Dell well, and I have reasonable faith in

10   these numbers; but our post-suit sales units I believe are

11   1,555 units.

12          That is not a lot of units for a product that sells

13   for anywhere between, as I understand it, 7 or 8 bucks a unit

14   up to 30 or so dollars a unit.  I don't want to have my client

15   go through damages discovery of the type that I have seen in

16   cases like this, which would be an extraordinary cost compared

17   to this.

18          So my suggestion would be that instead of being

19   subject to damages discovery from the plaintiff, that if we

20   were to have some sort of an agreed-upon scope of damage

21   discovery like how many units have you sold, what the revenues

22   have been, and who do you buy from; and that is it.  And if

23   they are going to agree that there are no pre-suit damages,

24   let's provide that information and have a mediation and see

25   how many parties we can get rid of, rather than going through

 1    much more than that.

 2              I understand there is a marking issue.  Quite

 3    honestly, I am not into this far enough to know the validity

 4    of that or not because the numbers that are in this case from

 5    the standpoint of my client are not enough for us to engage in

 6    an awful lot of evaluation at this point.

 7              So we would like to -- and I think this is true of

 8    other defendants in the case -- to get past much in the way of

 9    discovery, see if we can get this thing resolved because from

10    our standpoint this is really a cost-of-litigation issue and

11    nothing more.

12              Thank you, Your Honor.

13              THE COURT:  Thank you.

14              Response to that suggestion?

15              MR. EDMONDS:  Yes, Your Honor.  I guess there is a

16    question here of at what point does the Court need to

17    micromanage this or at what point should the process take care

18    of itself?

19              We have given the Court an in-camera submission of

20    settlements to date.  In our conversations at a high level,

21    and without divulging anything I am not supposed to with those

22    defendants, in large part is we asked for their unit

23    royalties, we asked for their revenues, and we have given them

24    numbers that are tied to the unit royalties.

25              So the conversation that Mr. Partridge just

1    described, it is unfortunate we haven't had that conversation

2    yet with Dell; but for those defendants who have been

3    interested in that conversation, we have been able to resolve

4    this case on reasonable terms that are tied to their sales.

5    It is not just some number we picked out of the air.

6            So I think that process works on its own and will

7    work on its own.  Everyone who is in this room, if you have

8    small sales, we should talk.  There is a unit royalty I can

9    give you.  And that can take care of itself.

10           If it doesn't take care of itself, then I guess that

11   is what the discovery process is for.  They have infringed the

12   patent.  I think my client is entitled to the discovery the

13   Federal Rules permit in terms of us having to prove our case

14   if they don't want to pay an agreed-upon royalty.

15           THE COURT:  Any response, Mr. Partridge?

16           MR. PARTRIDGE:  The only thing I would say -- and

17   like so many lawyers in practice in this field today, we are

18   all juggling 10,000 things and so I am not pointing any

19   fingers at Mr. Edmonds when I say this -- but my partner Roger

20   Fulghum has tried to have that conversation multiple times

21   before this hearing today.

22           Now that we have had this hearing and now we know

23   that those with tiny sales are out, and now we know that they

24   are thinking in terms of, perhaps -- and he has not committed

25   to this and we need to talk about it -- that no pre-suit

1    damages would come into play.  If all of that is true, then

2    there are probably a lot of defendants in this case that

3    should go out.

4            In order to have a structured resolution coming out

5    of this hearing, it still seems to me to make sense that for

6    those that can't work this out in the next couple of weeks and

7    get out, that there ought to be a limited disclosure with

8    respect to damages and mediation before a mediator to see if

9    we could get rid of additional parties to narrow this case.

10           THE COURT:  Let me ask plaintiff, is plaintiff

11   opposed to an initial round of disclosures that would

12   basically be number of units, revenue, and who they are bought

13   from?

14           MR. EDMONDS:  Not at all, Your Honor.  We encourage

15   that.

16           THE COURT:  How soon can you make the disclosure,

17   Mr. Partridge?

18           MR. PARTRIDGE:  I would think, Your Honor, we could

19   do this in the next two weeks; probably less than that.  But,

20   you know, I would think it would be a very short period of

21   time.

22           THE COURT:  Can you do it for both -- for the entire

23   period of sales from the issuance of the patent?

24           MR. PARTRIDGE:  Yes, Your Honor.

25           THE COURT:  Okay.  Is there any defendant that

1   cannot do that within two weeks?

2           MR. DANIELS:  Your Honor, I can't agree to that on

3   behalf of my reseller defendants.  I can certainly agree to it

4   on behalf of the manufacturers and distributors.  But, again,

5   we think that the claims against the resellers should be

6   stayed in this case; and that it doesn't make sense to have

7   duplicative discovery --

8           THE COURT:  Your motion for stay is denied.

9           Can the resellers provide that information within

10  two weeks?

11          MR. DANIELS:  I will have to speak with them.  They

12  are accused on a large number of products from different

13  manufacturers, and I'm not sure --

14          THE COURT:  I would think they could just run that

15  out of their computers, couldn't they?

16          MR. DANIELS:  I have been surprised, Your Honor.

17          THE COURT:  Excuse me?

18          MR. DANIELS:  I have been surprised.  That is not

19  necessarily true.  In many cases the -- with my reseller

20  clients they have been accused on cameras that they have, in

21  fact, sold no units of but that are listed on their websites

22  because they are Internet sellers and they don't maintain

23  inventory, they don't get one until they sell them.

24          THE COURT:  Is there anyone other than Mr. Daniels

25  on behalf of his reseller clients that cannot do that within

 1   two weeks?

 2          MR. PHILBIN:  Your Honor, Phillip Philbin on behalf

 3   of Digital Innovations.  I am just going to have to check.  I

 4   may have some of the same issues Mr. Daniels referred to.

 5          THE COURT:  All right.

 6          MR. DONAHUE:  Your Honor?

 7          THE COURT:  Yes.

 8          MR. DONAHUE:  David Donahue on behalf of RadioShack.

 9   Some of my client representatives are out of the office for

10   the next week, so if I could get 3 or 4 weeks, that would make

11   me more confident I could do it fully and properly.

12          THE COURT:  Well, let me do this -- here is where I

13   am on all these issues:  I have expressed my opinion as to

14   staying the resellers.  I think at least at this stage they

15   should provide the discovery requested regarding damages.

16          I'm going to grant leave for defendants to file a

17   marking motion for summary judgment immediately.  I would

18   encourage you to communicate with the plaintiff and see if it

19   is necessary or if an agreed motion can be entered.

20          I am going to -- not going to look at laches at this

21   point.

22          I will -- do you have a mediator in this case yet?

23          MR. DANIELS:  No, Your Honor.

24          THE COURT:  I am going to go ahead and -- do you

25   have a request as far as mediator?  Have y'all discussed that?

1          MR. EDMONDS:  I believe we did.  We submitted all of

2    the papers for a discovery order and for a docket control

3    order in connection with that.

4          THE COURT:  Okay.  That should be --

5          MR. DANIELS:  No.  You are probably right --

6          MR. EDMONDS:  If we didn't, we will.

7          MR. DANIELS:  That's ancient history.  I'm sorry.

8          THE COURT:  All right.  So we need a mediator.  I

9    would like an early mandatory mediation after these

10   disclosures have been made.

11         I am going to deny the motion with regard to the

12   reexam.

13         After this request is done, I want y'all to meet and

14   confer, modify your discovery order and docket control order

15   consistent with what I have just outlined for, hopefully, an

16   early resolution of this case that will be less expensive for

17   both sides to get it down to, really, what is at issue and

18   hopefully get the case settled.

19         If not, then the case will move forward under its

20   normal discovery order and docket control order.  But let's

21   take 60 days, and basically see if we can get this case

22   resolved in that time.  I think it would be to everyone's

23   benefit.

24         Anyone have any strenuous objections to that plan?

25   Everybody live with it?

```
 1              MR. CRAFT:  Your Honor, one thing.  I may be

 2   incorrect, but at the first status conference I'm not sure if

 3   the Court ever issued any dates.

 4              THE COURT:  Yes, let me give you dates.

 5              MR. CRAFT:  I don't know if there has been a

 6   discovery --

 7              THE COURT:  The Markman date, if you don't get it

 8   resolved, will be February 9th, 2012; pretrial on December

 9   18th, 2012; jury selection on January 7th, 2013; and jury

10   trial on January 14th, 2013.

11              Anything further?

12              MR. EDMONDS:  No.  Thank you for your time, Your

13   Honor.

14              THE COURT:  I think this has been productive.  I

15   appreciate both sides' suggestions.  I hope you can get it

16   resolved as quickly and as inexpensively as possible for both

17   sides.

18              Be adjourned.

19         (Hearing concluded.)

20

21

22

23

24

25
```

```
 1                    C E R T I F I C A T I O N

 2

 3     I certify that the foregoing is a correct transcript from the

 4     record of proceedings in the above-entitled matter.

 5

 6

 7     /s/ Shea Sloan

 8     SHEA SLOAN, CSR, RPR
       OFFICIAL COURT REPORTER
 9     STATE OF TEXAS NO. 3081

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```