**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| ADJUSTACAM LLC<br>*Plaintiff*<br><br>v.<br><br>AMAZON.COM, INC. *et al.*,<br>*Defendants* | Case No. 6:10-cv-329-LED<br><br>**JURY TRIAL DEMANDED** |

<u>**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**</u>

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO.  6:10-CV-329-LED**

## <u>TABLE OF CONTENTS</u>

I.   Introduction ......................................................................................................... 1

II.   Technology Background ...................................................................................... 2

III.   Legal Standard .................................................................................................... 4

IV.   Disputed Terms ................................................................................................... 6

   A.   Support Frame ............................................................................................. 6

   B.   Disposition ................................................................................................ 10

   C.   Hinge Member.......................................................................................... 14

   D.   Rotatably attached/Adapted to be rotatably attached/Adapted to rotatably attach ........ 18

     1.   The Intrinsic Evidence Supports Defendants' Construction ..................................... 19

     2.   Plaintiff's Claim Differentiation Argument is Misguided.......................................... 20

     3.   Plaintiff Misapplies Federal Circuit Case Law Concerning Use of the Term "Comprising" ........................................................................................................... 22

V.   Conclusion ........................................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*ACTV, Inc. v. Walt Disney Co.*,
346 F.3d 1082 (Fed. Cir. 2003).........................................................................4, 5

*Aguayo v. Universal Inst. Corp.*,
356 F.Supp.2d 699 (S.D. Tex. 2005) .....................................................................21

*ASM Am., Inc. v. Genus, Inc.*,
401 F.3d 1340 (Fed. Cir. 2005).............................................................................13

*Becton, Dickenson and Co. v. Tyco Healthcare Grp., LP*,
616 F.3d 1249 (Fed. Cir. 2010)..............................................................................10

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006)..............................................1, 5, 7, 11, 15

*CCS Fitness, Inc. v. Brunswick Corp.*,
288 F.3d 1359 (Fed. Cir. 2002)..............................................................................17

*Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005)..............................................................................11

*Demarini Sports v. Worth*,
239 F.3d 1314 (Fed. Cir. 2001)..............................................................................11

*Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*,
508 F.3d 1366 (Fed. Cir. 2007)..............................................................................17

*Hockerson-Halberstadt, Inc. v. Converse Inc.*,
183 F.3d 1369 (Fed. Cir. 1999)................................................................................5

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004).............................................................................15

*Kothmann & Kothmann, Inc. v. Trinity Indus.*,
287 F. Supp. 2d 673 (S.D. Tex. 2003) ....................................................................8

*Laitram Corp. v. Rexnord, Inc.*,
939 F.2d 1533 (Fed. Cir. 1991)................................................................................7

*MIT v. Abacus Software*,
462 F.3d 1344 (Fed. Cir. 2006)................................................................................7

*Nystrom v. TREX Co.*,
 424 F.3d 1136 (Fed. Cir. 2005)..................................................................................19, 21

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005)............................................................................................5

*Power Mosfet Techs., L.L.C. v. Siemens AG,*
 378 F.3d 1396 (Fed. Cir. 2004)..................................................................................16, 23

*Sage Prods. v. Devon Indus.*,
 126 F.3d 1420 (Fed. Cir. 1997)............................................................................................8

*Shanghai Meihao Elec., Inc. v. Leviton Mfrg Co.*,
 212 Fed. Appx. 977 (Fed. Cir. 2007)......................................................................9, 11

*TriMed, Inc. v. Stryker Corp.*,
 514 F.3d 1256 (Fed. Cir. 2008)............................................................................................8

*Utah Med. Prods., Inc. v. Graphic Controls Corp.*,
 350 F.3d 1376 (Fed. Cir. 2003)..........................................................................................13

*Vitronics Corp. v. Conceptronic, Inc.*,
 90 F.3d 1576 (Fed. Cir. 1996).............................................................................................4

### STATUTES

35 USC § 112 ....................................................................................................................................7

### OTHER AUTHORITIES

FABER ON MECHANICS OF PATENT CLAIM DRAFTING § 3:22 (2011) ............................................13

MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS (5th ed. 1994)....................15

MERRIAM WEBSTER DICTIONARY (2004)................................................................................15, 22

Defendants Amazon.com, Inc., Auditek Corporation, Best Buy Co. Inc., Best Buy Stores, LP, Bestbuy.Com, CDW LLC, CompUSA.com, Inc., Digital Innovations, LLC, Fry's Electronics, Inc., Gear Head, LLC, Hewlett-Packard Company, Kohls Corporation, Kohl's Illinois, Inc., Micro Electronics, Inc. d/b/a Micro Center, New Compusa Corporation, Newegg, Inc., Newegg.Com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Systemax, Inc., Target Corporation, Tigerdirect, Inc., and Wal-Mart Stores, Inc., (collectively, "Defendants"), respectfully submit this responsive claim construction brief in accordance with P.R. 4-5(b).

## I.    INTRODUCTION

The plaintiff, AdjustaCam, LLC ("Plaintiff") has asserted U.S. Patent No. 5,855,343, entitled "Camera clip," (the "'343 patent") against 33 defendants, of whom 21 remain in the case (the Defendants).  Plaintiff has accused a multitude of different webcam models associated with the Defendants.  The accused feature, as indicated by the title of the '343 patent, is not the webcam itself, but only the apparatus that supports the webcam.  Such supporting apparatuses are variegated in form and function, and differ drastically between different webcam models.

Nonetheless, in what appears to be an effort to stretch the claims of the '343 patent to read on *all* these drastically different products, Plaintiff has advanced claim constructions that are so vague and overbroad as to read out explicit structural limitations imposed by the claims themselves. Indeed, as shall be demonstrated herein, Plaintiff's proposed "constructions" would effectively place no limits at all on the structure of the claimed apparatus, such that the public can only guess at the scope of the claimed invention. *See Bicon, Inc. v. Straumann Co*., 441 F.3d 945, 950 (Fed. Cir. 2006) ("[a]llowing a patentee to argue that physical structures and

characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous, leaving examiners and the public to guess about which claim language the drafter deems necessary to his claimed invention and which language is merely superfluous, nonlimiting elaboration").  By contrast, Defendants' proposed constructions are derived directly from the structural and functional limitations set out in the claims, and are moreover consistent with how the claimed apparatus is described to operate in the specification.  Therefore, Defendants respectfully urge the Court to reject Plaintiff's constructions, and instead give the claims their proper scope by adopting Defendants' constructions.

## II.     TECHNOLOGY BACKGROUND

The '343 patent is directed toward an apparatus (the titular "clip") that may be used to support a camera upon differently inclined surfaces and objects, such as a table top or a laptop screen.  Plaintiff's Opening Claim Construction Brief, Dkt. No. 575, (hereinafter "Pl. Br.") at 1; '343 patent (Pl. Br. Exhibit 1) at 2:1-4.  The camera is adapted to these different surfaces and objects by rotating its supporting apparatus. *E.g.*, '343 patent at 2:1-4 ("The clip may be rotated to a first position to support the camera on a surface of a table or a desk.  The clip may be rotated to a second position to support the camera on a display screen of a laptop computer").

The claims of the '343 patent set forth the elements and specific structural interrelationships that enable these rotational adjustments.  Specifically, the claims require that the apparatus comprise two elements, a "hinge member" and a "support frame." *E.g.*, claims 1, 19[1].  The "hinge member" is that element to which a camera may be attached, such that the camera can be rotated relative to the "hinge member" about a "first axis of rotation." '343 patent at claim 1(a).  The "hinge member" is in turn "rotatably attached" to the second element, the

---

[1] Defendants will refer to exemplary claim 1 from this point forward for the sake of simplicity.

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NO.  6:10-CV-329-LED**

"support frame," such that the "support frame" may rotate about a "second axis of rotation" relative to the "hinge member."  *Id*. at claim 1(b).  It is this "support frame" that may be "configured to support said hinge member" upon variously inclined surfaces and objects, such that it would have "a first disposition" when positioned on a generally horizontal surface, and "a second disposition" when attached to an inclined object.  *Id.*

The structural relationships between these elements become clearer by reference to the '343's illustrations of the preferred embodiment, shown below.  As shown in Fig. 1 (below), the "support frame" is generally located at 18, and comprised of front and back support elements 40, 42, and 38.  The "hinge member" is located at 16, and is attached to the "support frame" such that the "support frame" may rotate about axis 32, which is also referred to as the "second axis" in the claims.[2]



The different "dispositions" of the "support frame" upon differently inclined surfaces and objects are illustrated as follows:

---

[2] The "first axis" recited in the claims refers to the axis about which an attached camera rotates when connected to the "hinge member."

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NO.  6:10-CV-329-LED**





As shown in Figure 2, the "support frame" has one rotational orientation about the "second axis" of the "hinge member" when it is in "a first disposition," from which it may be rotated about the "second axis" into a different orientation into its "second disposition" in Figure 4.  Thus, rotation about the second axis enables the apparatus to support a camera upon differently inclined surfaces and objects.  *See* above.

In sum, the claimed invention relies on two and only two separate and distinct axes of rotation for camera maneuverability.  The camera rotates about the "first axis" to enable "left to right" movement of the camera, and the "support frame" rotates about the "second axis" to enable "up and down movement."  By manipulating the camera about the "first axis of rotation" and by manipulating the "support frame" about the second axis of rotation, the webcam lens can be positioned sufficiently to focus on the intended object to be viewed by the camera.

## III.    LEGAL STANDARD

Claim construction begins with the words of the claims themselves.  *Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996); *see also ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("the analytical focus of claim construction must begin, and remain centered, on the language of the claims themselves").  Indeed, "it is a 'bedrock

principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc*., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Claim terms are generally given their ordinary customary meaning. *Phillips*, 415 F.3d at 1312-13.

Nonetheless, construction of a term does not take place in a vacuum. *See Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1374 (Fed. Cir. 1999) ("proper claim construction…demands interpretation of the entire claim in context, not a single element in isolation"). Indeed, a claim term "can be defined only in a way that comports with the instrument as a whole." *Phillips*, 415 F.3d at 1316. Moreover, "claims are interpreted with an eye toward giving effect to all terms in the claim." *Bicon, Inc. v. Straumann Co*., 441 F.3d at 950. Thus, "[w]hile certain terms may be at the center of the claim construction debate, ***the context of the surrounding words of the claim also must be considered*** in determining the ordinary and customary meaning of those terms." *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) (emphasis added), citing *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003). In addition, the Court may look to the specification to clarify claim scope. *Phillips*, 415 F.3d at 1315. Indeed, the specification is often "the single best guide to the meaning of a disputed term." *Id.*

## IV.     DISPUTED TERMS

### A.     *Support Frame*

| Claims | Plaintiff's Construction | Defendants' Construction |
|--------|--------------------------|--------------------------|
| 1, 8, 19 | A structural element **that supports** another structure | A physically distinct structural element **whose different dispositions enable support** of said hinge member |

The Court should adopt Defendants' construction of the term "support frame" because it is the only proposed construction that both comports with the structural and functional limitations imposed by the language of the claims and is also helpful to the trier of fact. Plaintiff's construction is wrong because it ignores the context of the claims, and furthermore is unhelpful to the trier of fact because it does not describe *any* structure for what it admits should be a "structural element."

To show why this is so, it may be helpful to begin with the one area of agreement between the parties: Plaintiff's construction agrees with Defendants' in that the *function* of the "support frame," *i.e.*, to provide support, is one of its **defining** characteristics.  *See* Plaintiff's Construction (above, emphasis added); Pl. Br. at 10 ("[t]he specification teaches that the support frame **supports** the hinge element[sic]") (emphasis added).  However, Plaintiff's construction errs in all other respects.  For one, Plaintiff misstates the intended function – the *claim* specifically describes the "support frame" as being "configured *to support said* **hinge member**," rather than merely to support "another structure" in the abstract. '343 patent at claim 1(b); Pl. Br. at 10.  More significantly, despite Plaintiff's acknowledgement that both "***[t]he structure*** and function of a support frame *is taught by the specification and the claims*," its construction does not provide *any* structural description *at all*, either from the claims or the specification.  Instead,

Plaintiff's construction would define "support frame" *solely* in functional terms – a support frame "supports."

Plaintiff's attempt to broadly define "support frame" only in terms of its function is improper for multiple reasons.  Firstly, this construction is inconsistent with Plaintiff's position in its Patent Rule 4-2 Disclosure (Exhibit A), wherein it *did not* identify "support frame" as a term defined exclusively in functional terms pursuant to 35 USC § 112, paragraph 6.[3]  *Accord* Defendants' P.R. 4-2 Disclosure (Exhibit B).  Secondly, merely specifying that a "support frame" is a "structural element" for performing a particular function cannot rescue an improper functional definition.  *See, e.g., MIT v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006) ("[t]he generic terms 'mechanism,' 'means, **'element,'** and 'device' typically do not connote sufficiently definite structure" for purposes of § 112(6)) (emphasis added); *see also Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991) (absent compliance with §112(6) or sufficient structure in the claims, "claim language which requires only a means for performing a function might be indefinite").  Finally, despite sourcing the *functional* aspect of its construction from the claim language, Plaintiff completely ignores the claims' description of the *structural* aspects of a "support frame."  *See Bicon, Inc. v. Straumann Co*., 441 F.3d 945, 950 (Fed. Cir. 2006) ("[a]llowing a patentee to argue that physical structures and characteristics specifically described in a claim are merely superfluous would render the scope of the patent ambiguous").

---

[3] Moreover, even if AdjustaCam now wishes to revise its position and construe "support frame" as a means-plus-function term, it is unlikely that it could do so.  Indeed, to invoke §112(6) AdjustaCam must not only identify sufficient corresponding structure for performing the recited function, but must also overcome a presumption that §112(6) *does not* apply because "support frame" is not in "means plus function" format.  As discussed *infra*, however, the claims do impose structural limitations on "support frame" relating to its function.

However, because AdjustaCam's construction is purely functional, Defendants reserve their right to amend invalidity contentions as well as to move for summary judgment of indefiniteness in the event AdjustaCam's construction is adopted, in accordance with P.R. 3.6(a).

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NO.  6:10-CV-329-LED**

By contrast, Defendants' construction incorporates precisely that which Plaintiff's construction lacks – *structural* limitations expressly provided for in the claims.  Indeed, while it is not *per se* impermissible for a claim term to be described in terms of its function, the term must also, ***at a minimum***, describe sufficient ***structure for performing that function*** to avoid application of § 112(6) and still satisfy §112's requirement that the patentee point out his invention with particularity.  *See, e.g.*, *Sage Prods. v. Devon Indus.*, 126 F.3d 1420, 1427-1428 (Fed. Cir. 1997) ("where a claim recites a function, but then ***goes on to elaborate sufficient structure, material, or acts within the claim itself to perform entirely the recited function***, the claim is not in means-plus-function format") (emphasis added); *TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259-60 (Fed. Cir. 2008) ("[s]ufficient structure exists when the ***claim language specifies the exact structure that performs the functions in question*** without need to resort to other portions of the specification or extrinsic evidence for an adequate understanding of the structure") (emphasis added).  In particular, claim language specifying ***structural arrangements*** for enabling the recited function may provide the necessary structural limitation.  *See e.g.*, *Kothmann & Kothmann, Inc. v. Trinity Indus.*, 287 F. Supp. 2d 673, 697-98 (S.D. Tex. 2003) (holding that claim language "describing how to 'arrange' a list of parts, even if the arrangement is defined in functional terms, provides a structural limitation").

Here, the language of the claims links the "support frame's" ability to provide support both on horizontal surfaces and on inclined objects to the particular structural arrangements it may take, specifically the "first disposition" and "second disposition":

> b. a **support frame** rotatably attached to said hinge
> member and **configured to support said hinge member on the**
> **surface and the object**, said hinge member rotating about a
> second axis of rotation relative to said support frame, said first axis
> of rotation being generally perpendicular to said second axis of

rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame **having a first disposition positioned on said generally horizontal, substantially planar surface**, and said support frame **having a second disposition attached to the object** when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

'343 patent at claim 1 (emphases added).  *See also Shanghai Meihao Elec., Inc. v. Leviton Mfrg Co.*, 212 Fed. Appx. 977, 984-85 (Fed. Cir. 2007) (claim language describing a circuit interrupter "configured to cause electrical discontinuity" as "having an operational state and a non-operational state" "plainly ties the 'operational state' of the circuit interrupter to the ability of the circuit interrupter to "cause electrical discontinuity").  Furthermore, the parties are in agreement that a "disposition" refers to a *structural* arrangement, or *configuration*, discussed *infra*.[4]

In addition to the claims, the specification further confirms that it is these structural arrangements of the "support frame" that enable support upon the differently inclined surfaces. *E.g.*, '343 patent at 2:1-4 ("The clip may be rotated to a **first position to support** the camera on a surface of a table or a desk.  The clip may be rotated to a **second position to support** the camera on a display screen of a laptop computer") (emphases added); *also* 4:48-54 (describing a "first mode" of the preferred embodiment wherein the arrangement of the front and rear "support elements" "support the camera in first position 44, on first surface 36" by "engag[ing] first surface 36 at three locations in a plane 50"); 5:2-14 (describing a "second mode" of the preferred

---

[4] However, the parties differ as to the definition of this structural arrangement in the context of the '343 patent, and thus "disposition" is construed separately, *infra*.  To avoid redundancy, Defendants have not reproduced the structural limitations ascribed to "disposition" in the construction of "support frame," but instead reference those limitations by incorporating the term "disposition."

embodiment wherein the arrangement of the front and rear "support elements" "support camera 12 in a second position 52" upon an inclined object by engaging surfaces 54 and 60).

Thus, taking into account the full context of the claim language as well as the specification, "support frame" is properly construed as "a physically distinct[5] structural element **whose different dispositions about the hinge member enable support** of said hinge member."

### B.    *Disposition*

| Claims | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| 1, 8, 19 | Configuration or position | Configuration **of the support frame enabling support of the hinge member**, accomplished **through rotation about the second axis** |

Just as for its construction of "support frame," Plaintiff's construction of "disposition" is wrong because it fails to define this term in the context of the surrounding claim language and the specification.  As discussed above, both the claims and specification explicitly link the function of the "support frame" to its ability to take on different structural arrangements or configurations, which the claims dub "dispositions." '343 patent at claim 1(b); part III(A) *supra*. Thus, in the context of the '343 patent, a "disposition" is not merely *any* structural configuration that exists in a vacuum, but rather a configuration with a particular purpose – to enable the

---

[5] Plaintiff's objection to inclusion of "physically distinct" as lacking support is trivial and may be disposed of summarily.  Pl. Br. at 11. The grammatical structure of the claims clearly contemplate two distinct elements, a "hinge member" and a "support frame," as evidenced by patentee's deliberate decision to set them out in *separate sub-paragraphs*. *E.g. Becton, Dickenson and Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim *lists elements separately*, the clear implication of the claim language is that those elements are *distinct components* of the patented invention") (emphasis added).  Moreover, the specification *consistently* depicts the two elements as separate structures, which Plaintiff appears to have acknowledged via the color-coded diagram included in its brief.  Pl. Br. at 2.  The phrase "physically distinct" simply reflects the patentee's intent not to allow one structure to subsume the other.

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NO.  6:10-CV-329-LED**

"support frame" to perform its function. [6] *See e.g., Shanghai Meihao*, 212 Fed. Appx. at 984-85 (*supra*).  Indeed, separating configurations of the "support frame" from its function would vitiate claim language requiring that the structure of the "support frame" be "***configured*** to support said hinge member." '343 patent at claim 1(b) (emphasis added); *Bicon*, 441 F.3d at 950 ("claims are interpreted with an eye toward giving effect to all terms in the claim").

Moreover, although it acknowledges that a "disposition" is some sort of "configuration," Plaintiff fails to shed *any* light on what this "configuration" means in the context of the claimed apparatus.  Merely suggesting that the words "disposition" and "configuration" may be synonymous or "easily understandable" cannot change the fact that simply stating that parts are arranged in a particular manner is hopelessly vague unless one knows *what* parts are being arranged and in *what manner*.  Indeed, the Federal Circuit has *routinely* declined to construe structural terms without taking into account their context in the claimed apparatus.  *See e.g., Demarini Sports v. Worth*, 239 F.3d 1314, 1324 (Fed. Cir. 2001) (declining to adopt a dictionary meaning of the term "frame," reasoning that it would be improper to construe the meaning of this particular structural element "in a vacuum. Rather, we must look at the ordinary meaning ***in the context*** of the written description and the prosecution history of the [patent] to determine the proper construction of that term") (emphasis added); *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc*., 424 F.3d 1293, 1306 (Fed. Cir. 2005) (construing description of structural arrangement as "operatively joined" to require physical joinder of claimed components, because that is the only method by which the claimed components of the device could function together).

---

[6] AdjustaCam's suggestion that "mere attachment" to the "support frame" alone is sufficient to enable support has no basis in the intrinsic record, and is moreover contradictory to this clear association drawn by the claims and specification between "disposition" and support upon different surfaces and objects.

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NO.  6:10-CV-329-LED**

Here, the '343 patent describes the claimed apparatus's ability to be adapted to differently inclined surfaces and objects as being enabled by *rotational motion*.  *E.g.*, '343 patent at 2:1-4 ("the clip may be ***rotated*** to a first position ***to support***…").  Therefore, since "dispositions" are configurations of the "support frame" linked to this function, they are necessarily configurations accomplished *via rotational motion*.  Significantly, the ***only*** rotational mobility of the "support frame" described in the claims is rotation about the "second axis" at which it is joined to the "hinge member":

> b. a support frame **rotatably attached** to said hinge member **and configured to support said hinge member on the surface and the object**, said hinge member **rotating about a second axis of rotation relative to said support frame**, said first axis of rotation being generally perpendicular to said second axis of rotation, said **second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object**, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

*E.g.*, '343 patent at claim 1 (emphases added).  No other rotational mobility of the "support frame" is recited in the claims.  Thus, in the structure described in the claims, the only rotational motion through which the "support frame" could be "configured" into different "dispositions" is about the "second axis."

Plaintiff argues that the "dispositions" of the "support frame" do not have any relation to the recited "second axis."  Pl. Br. at 13.  This argument is wrong because, once again, Plaintiff fails to take into account the *context* of the term "disposition."  It is important to keep in mind that the claims of the '343 patent are directed to an *apparatus for* performing a particular

*function*, and, as such, the claims must recite sufficient structure to render the apparatus

operational.  Indeed, particularly with respect to mechanical or apparatus claims,

> "It is very important that the essential cooperation between each element of the claim and the other elements with which it cooperates be specified. 'A **claim can be rejected as incomplete if it omits essential elements, steps or necessary structural cooperative relationship of elements**, **such omission amounting to a gap between the elements**.'… The **claim must be to an assembled, operable combination, not to a mere parts list** such as one might find in the corner of a production drawing."

FABER ON MECHANICS OF PATENT CLAIM DRAFTING § 3:22 (2011) (emphases added).

Here, as discussed, a "disposition" is a *functional* configuration of the "support frame"

enabling it to support the "hinge member," and by extension, a camera attached to said "hinge

member."  Thus, if the claims did not recite structural relationships sufficient to enable formation

of such configurations, the claim as a whole would be rendered incomplete as inoperative.

Significantly, the claims in issue describe ***only one*** structural relationship rendering the "support

frame" adjustable, and that is its ability rotate about the recited "second axis."  Thus, adjustment

of the "support frame" from one "disposition" to another could ***only*** be rendered operative in

reference to rotation about this "second axis."  The structure of the claim itself bolsters this

functional relationship – indeed, the recitation of motion about the "second axis" appears in the

same sub-paragraph defining the structure and function of the "support frame."  *See e.g.,Utah*

*Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376, 1382 (Fed. Cir. 2003) (affirming

construction of claimed element specifying structural relationship with another element "based

on structure of the claim"); *ASM Am., Inc. v. Genus, Inc.*, 401 F.3d 1340, 1346-47 (Fed. Cir.

2005) (holding that "the structure of the claim supports the district court's construction" of the

functional relation of a claim term to other recited components based on where that term appeared in the body).

Tellingly, while Plaintiff broadly disavows any relationship between "dispositions" and the "support frame's" rotatability about the "second axis," it conspicuously fails to provide *any* affirmative structural description of what it admits is a particular "configuration." *See* Pl. Br. at 12-13; Plaintiff's Construction (*supra*).  Indeed, its proposed construction provides *no* guidance to the trier of fact for what a "disposition" might mean *in the context of the '343 patent*, and would create a "gap" in the claims with respect to how the claimed apparatus operates.  As such, Defendants respectfully request that the Court reject Plaintiff's construction in favor of Defendants' construction.

### C.    *Hinge Member*

| Claims | Plaintiff's Construction | Defendants' Construction |
|--------|-------------------------|--------------------------|
| 1, 8, 19 | A structural element that joins to another for **rotation in at least one axis of rotation** | A structural element that may be joined to another **so as to form a hinge joint** and is capable of rotating on that hinge joint |

Plaintiff seeks to read the term "hinge" out of the asserted claims in an attempt to broaden them.  Specifically, Plaintiff argues that a "hinge member" may be *any* "structural element that *joins to another in at least one axis of rotation*," a construction which it admits bears no relation to *hinges*.  *See* Pl. Br. at 8 (indicating that its construction covers "pivot joints, ball and socket joints, and saddle joints").  Such a construction, however, is not supported by the claim language or the specification of the '343 Patent, and is inconsistent with the plain and ordinary meaning of "hinge."  Plaintiff attempts, but fails, to show that the patentee intended to act as his own lexicographer to define "hinge" inconsistently with its ordinary meaning.  By contrast, Defendants' construction is faithful to the patentee's deliberate choice of words because it

specifies that a "*hinge* member" must be able to be "joined to another so as to form a *hinge* joint." The Court should reject Plaintiff's proposed construction in favor of Defendants' construction, because Defendants' construction remains true to the plain and unambiguous language of the claims and is consistent with the specification.

Plaintiff's failure to incorporate a "hinge" into its construction of "hinge member" is improper because the plain language of *each* independent claim expressly uses the word "hinge" to modify "member."  '343 Patent at claims 1, 10, 19, 20, 21.  The patentee could have drafted the claims more broadly to recite a "member" but deliberately chose to use the term "***hinge*** member."  Accordingly, "hinge" is presumed to have meaning and cannot be read out of the claims.  *See e.g., Bicon,* 441 F.3d at 950 ("claims are interpreted with an eye toward giving effect to all terms in the claim."); *Innova/Pure Water,* 381 F.3d at 1119-20 (rejecting party's proposed construction "because it largely read[] the term 'operatively' out of the phrase 'operatively connected").

Moreover, it is clear that Plaintiff's construction contradicts the plain meaning of the claim language.  Indeed, the ordinary meaning of "hinge" indicates that it provides for motion about a *single* axis of rotation, similar to that of a swinging door.  *E.g.*, THE MERRIAM WEBSTER DICTIONARY (2004) (a "hinge" as "a jointed device on which a swinging part (as a door, gate or lid) turns") (Exhibit C); MCGRAW-HILL DICTIONARY OF SCIENTIFIC AND TECHNICAL TERMS (5th ed. 1994) (a "hinge" is "a pair of metal leaves forming a jointed device on which a swinging part turns") (Exhibit D).  However, Plaintiff's proposed construction broadly claims motion in "*at least* one axis," which is completely at odds with the ordinary understanding of a "hinge." Plaintiff's construction therefore renders the word "hinge" superfluous and should be rejected.

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NO.  6:10-CV-329-LED**

*See Power Mosfet Techs., L.L.C. v. Siemens AG,* 378 F.3d 1396, 1410 (Fed. Cir. 2004)

(interpretation of claims rendering claim terms superfluous is disfavored).

In addition, Plaintiff's construction is not supported by the specification, which

*consistently* demonstrates that the "hinge member" forms a "hinge joint" in the context of the

claimed apparatus.  For example, the Background of the Invention provides that the support

frame is "***hingedly*** attached to the hinge member … where the hinge member rotates over **a**

**second axis of rotation** relative to the support frame." '343 Patent at 2:14-18 (emphases added).

The figures from the specification likewise also depict a hinge (below):



'343 Patent, Figs. 4 and 1(emphases added).  In Figure 4, the joint formed by hinge member 16

and support frame 18 is shown at 82, and the specification explicitly refers to the connecting end

of the hinge member 16 as "***hinge*** element 82."  *Id.* at 5:37-42.  Similarly, the description of

Figure 1 also describes hinge member 16 as being "***hingedly*** attached" to support frame 18.  *Id.*

at 4:20.  Indeed, Figure 1 graphically illustrates that the point of attachment between the hinge

member and support frame is a hinge joint not unlike that of a door, which permits movement

about only one axis of rotation, labeled as "second axis of rotation 32." *Id.*

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NO.  6:10-CV-329-LED**

Plaintiff's proposed construction ignores both the claim language and the above described evidence from the specification.  Instead, Plaintiff suggests that a "hinge member" does not necessarily form *any* hinge joints, but rather could be equivalent to "pivot joints, ball and socket joints and saddle joints."  Pl. Br. at 8.  Plaintiff argues that the ordinary meaning of "hinge" does not apply simply because the patentee used the descriptor "rotatably attached"[7] to describe the motion of objects attached to the "hinge member," and thereby acted as his own lexicographer to define "hinge member."  Pl. Br. at 4-5.  Plaintiff misapprehends what it means for an inventor to act as his own lexicographer.  Indeed, courts look to indications that a patentee intended to "coin" a term *idiosyncratically* so as to *overcome* the "heavy presumption" in favor of ordinary meaning.  *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("the claim term *will not* receive its ordinary meaning if the patentee acted as his own lexicographer") (emphasis added); *cf. Elbex Video, Ltd. v. Sensormatic Elecs. Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007) ("Claim terms are entitled to a 'heavy presumption' that they carry their ordinary and customary meaning…").  Moreover, a party asserting that a patentee acted as his own lexicographer must show that the patentee "*clearly set forth a definition* of the disputed claim in either the specification or prosecution history."  *Id*.  Here, Plaintiff has failed to show that the patentee has "clearly set forth a definition" of "hinge member" that could overcome its ordinary meaning.

Plaintiff is incorrect to imply that the descriptor "rotatably attached" is somehow *inconsistent* with motion about a hinge.  To the contrary, the specification indicates that "rotatable[e] attach[ment]" is *fully consistent* with the presence of a hinge – indeed, in *every*

---

[7] In addition, Plaintiff misconstrues the meaning of "rotatably attached."  This term, and grammatical variations thereof, is addressed in as separate section *infra*.

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NO.  6:10-CV-329-LED**

instance wherein "hinge" or "hingedly attached" is used to describe how an object is joined to the "hinge member," this object is *simultaneously* described as being able to *rotate* about a "second axis." *E.g.*, '343 patent at 5:41-43 ("A **hinge** element 82 at distal end 78 of body 74 [of the hinge member 16] **hingedly attaches** to support frame 18 so that body 78 **rotates** about second axis 32") (emphases added); claim 19(b) ("a support frame **hingedly attached** to said hinge member… said hinge member **rotating** over a second axis of rotation") (emphases added). Thus, there is nothing about being "rotatably attached" that suggests the patentee intended the word "hinge" to mean something other than its common, ordinary meaning.  To the contrary, both the claims and specification demonstrate that the patentee used "hinge member" consistent with the common understanding of a "hinge," that is, a joint that rotates about a single axis of rotation.

For at least these reasons, Plaintiff's proposed construction fails, and the Court should adopt Defendants' proposed construction of "hinge member."

### D.    *Rotatably attached/Adapted to be rotatably attached/Adapted to rotatably attach*[8]

| Claims | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| 1, 19 (rotatably attached/adapted to be rotatably attached); 8 (adapted to rotatably attach) | Connected such that the connected object is capable of being adjustably rotated | Connected such that the connected object is capable of being **adjusted to different configurations via motion over one axis of rotation** |

The intrinsic evidence supports Defendants' proposed construction of the term "rotatably attached" (and other terms incorporating this phrase) as describing attachment allowing

---

[8] The parties' proposed constructions for "Adapted to be" and "Adapted to" are not meaningfully different, and will thus not be addressed separately.  In this section, Defendants will therefore address the parties' disputes with respect to "rotatably attached" and grammatical variations thereof.

"adjust[ment] to different configurations via motion **over one axis of rotation**."  Indeed, *every* reference to the term "rotatably attached" in the '343 patent, whether in the claims or the specification, *consistently* describes attachment that permits motion about only a *single* axis of rotation.  *See e.g., Nystrom v. TREX Co.*, 424 F.3d 1136, 1144-45 (Fed. Cir. 2005) (holding that where patentee "**consistently used** the term 'board' to refer to wood cut from a log… [even though] there was no clear disavowal of claim scope, **there was nothing in the intrinsic record to support the conclusion that a skilled artisan would have construed the term 'board' more broadly** than a piece of construction material made from wood cut from a log") (emphases added).   Plaintiff, on the other hand, construes "rotatably attached" to mean "[c]onnected such that the connected object is capable of being **adjustably rotated**."  In the argument in support its construction, Plaintiff makes clear that its proposed construction is intended to cover attachments permitting motion over multiple axes of rotation.  Pl. Br. at 8-9.   However, there is *nothing* in the claim language, specification, or file history to suggest that "rotatable attachment" refers to anything other than rotation about a *single* axis, and *only* a single axis.  Plaintiff's impermissibly broad construction ignores the plain language of the claims and the disclosure in the specification and should be rejected.

### 1.    The Intrinsic Evidence Supports Defendants' Construction

*All 21 claims* of the '343 patent describe objects that are "rotatably attached" as moving about only a *single* axis of rotation.  *E.g.,* '343 Patent at claim1(a), (b) (reciting "a hinge member adapted to be **rotatably attached** to the camera, said camera, when the hinge member is so attached, **rotating about a first axis of rotation** relative to said hinge member," and "a support frame **rotatably attached** to said hinge member… said hinge member **rotating about a second**

***axis of rotation***") (emphases added).  Therefore, the plain meaning of the claims indicates that "rotatably attached" refers to an attachment that permits movement about a *single* axis of rotation.

In addition, the specification is replete with references confirming that objects that are "rotatably attached" to another structure rotate *only* about a *single* axis of rotation.  For instance, in describing the relationship between the hinge member 16 and an attached camera in Figure 1 (below), the specification expressly states that hinge member 16 is "***rotatably attached*** to camera 12, where camera 12 ***rotates over a first axis 26*** in a direction shown by arrow 28."  *Id*. at Fig. 1; 4:17-19 (emphases added); *see also* 5:38-41 ("a pivot element 80 at proximal end 76 of the body 74 ***rotatably attaches*** camera 12 to body 74 so that camera may ***rotate about first axis 26***").



In sum, both the specification and the claims *consistently* use "rotatably attached" to refer to attachments permitting motion over only a *single* axis of rotation.  As such, there is simply *nothing* in the intrinsic record to support the conclusion that a skilled artisan could construe the term "rotatably attached" more broadly to encompass rotation about more than a single axis.

### 2.    Plaintiff's Claim Differentiation Argument is Misguided

Plaintiff relies on claim differentiation to argue that "rotatably attached" could encompass rotation about more than a single axis.  Specifically, Plaintiff points to claim 19,

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NO.  6:10-CV-329-LED**

which, out of all 21 claims of the patent, is the *only* asserted claim to recite a support frame that is "hingedly attached" to the hinge member, as opposed to "rotatably attached."  Plaintiff argues that this is evidence that "rotatably attached" must be broader than "hingedly attached" under the doctrine of claim differentiation, and further asserts this as the reason why "rotatably attached" cannot be limited to "one axis of rotation."  Pl. Br. at 8-9.  Plaintiff misapplies the doctrine of claim differentiation.

First, it cannot be presumed that different terms cover different *scope* when intrinsic evidence shows that such terms are used *consistently* to describe the *same thing*.  *See Nystrom*, 424 F.3d at 1143 ("***Different terms or phrases in separate claims may be construed to cover the same subject matter*** where the written description and prosecution history indicated that such a reading of the terms or phrases is proper") (emphasis added); s*ee also Aguayo v. Universal Inst. Corp.*, 356 F.Supp.2d 699, 736 (S.D. Tex. 2005) ("When neither the plain meaning nor the patent itself commands a difference in scope between terms, they may be construed identically"). Indeed, as discussed with respect to the term "hinge member," there is nothing *contradictory* about describing an object as "rotatably attached" when it is attached to a "hinge" – indeed, ***both terms consistently describe motion about a single axis*** wherever they appear in either the specification or the claims.  *See* part III(C); part III(D)(1).  Thus, insofar as the *number of axes* of rotation is implicated, the terms "hingedly attached" and "rotatably attached" are used *interchangeably*.

Second, even if one took at face value that "rotatably attached" is somehow "broader" than "hingedly attached," it ***does not*** follow that "rotatably attached," as that term is used in the '343 patent, is broader than rotation about a *single axis*.  Significantly, the *only* instances that Plaintiff has identified usage of the term "rotatably attached" in a manner that Plaintiff asserts is

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NO.  6:10-CV-329-LED**

"different" from use of the term "hingedly attached," it is in the context of describing the point of attachment between a camera and the hinge member.  Pl. Br. at 8.  However, as addressed in part II(D)(1) *supra*, the **point of attachment between a camera and the hinge member *still* only permits motion about a *single* "first axis" of rotation**.  *E.g.* '343 patent at claim 1(a). Tellingly, even Plaintiff admits that the joint formed between the hinge member and the camera is a "pivot joint," the ordinary meaning of which also entails motion about a *single* axis of rotation.  *Compare* Pl. Br. at 8 *with* THE MERRIAM WEBSTER DICTIONARY (2004) (a "pivot" is "a fixed pin on which something turns") (Exhibit E).  Invoking the doctrine of claim differentiation, in short, does nothing to support Plaintiff's construction whatsoever.

### 3.    Plaintiff Misapplies Federal Circuit Case Law Concerning Use of the Term "Comprising"

As described above, the claims and the specification confirm that the camera rotates about the hinge member on a *single* axis ("the first axis of rotation"), and the support frame rotates about the hinge member on a separate, *single* axis ("the second axis of rotation"). Plaintiff ignores this intrinsic evidence and argues that the claims cover "all types of rotatable attachments, including those which permit *rotation in more than a single axis*," merely because the claims include the transition phrase "comprising." Pl. Br. at 7.  Plaintiff's argument clearly misapprehends the role of this transitional word, which is "not a weasel word with which to abrogate claim limitations."  *Dippin' Dots*, 476 F.3d at 1343 (Fed. Cir. 2007).

Although "comprising" is understood to be open-ended and "raises a presumption that the *list of [claim] elements* is nonexclusive," the Federal Circuit explicitly admonished that "comprising" does ***not*** allow a patentee to read out *explicit limitations* recited with respect to a given element.  *See e.g.,id.* (although use of the transition "comprising the steps of" "indicates

that an infringing process could practice other steps *in addition* to the ones mentioned," the "*enumerated steps* must, however, all be practiced as *recited in the claim*… [the term] '*comprising' does not reach into each of the six steps to render every word and phrase therein open-ended*") (emphases added); *see also Power Mosfet Tech., LLC v. Siemens AG*, 378 F.3D 1396, 1409 (Fed. Cir. 2004) ("'Comprising,' while permitting additional *elements* not required by a claim, does not remove the *limitations* that are present") (emphasis added).

Here, the word "comprising" appears in the transition *before* the claim body – "Apparatus for supporting a camera…**comprising**: (a) a hinge member… (b) a support frame…" '343 patent at claim 1 (emphasis added).  Thus, *at most,* use of the term "comprising" suggests that other elements *in addition to* the recited "hinge member" and "support frame" may be within the scope of the claim.  *See Dippin Dots*, 476 F.3d  at 1343 (supra).  The term "comprising" *cannot*, however, "reach into" each of the enumerated elements themselves to render *every* limitation recited therein open-ended.  *See id.*  Indeed, each claimed element must still conform to all the limitations as recited.  *See id.* Thus, Plaintiff's argument that the word "comprising" can "reach into" the claim limitation describing a camera as being "rotatably attached" to the "hinge member" with reference to a *single* "first axis of rotation" has no merit.

Tellingly, Plaintiff misrepresents the claims in stating that "[t]he '343 patent teaches *and claims* that *a hinge member comprises rotation about a first axis*." Pl. Br. at 6; *also* at 7.  To the contrary, the word "comprising" *does not appear* in *any* portion of the sub-paragraph defining "hinge member."  '343 patent at claim 1(a) ("a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and").  Thus, it could not be clearer that Plaintiff is

improperly attempting to use the word "comprising" to "reach into" claim limitations, *precisely* as the Federal Circuit expressly forbade in *Dippin Dots*.

In sum, neither the claim language nor the specification suggests that a "rotatably attached" object could rotate about more than one axis of rotation.  Plaintiff's arguments to the contrary are meritless and misrepresent the claims.  For these reasons, the Court should adopt Defendants' proposed construction of "rotatably attached."

## V.      CONCLUSION

For at least the foregoing reasons, Defendants respectfully request the Court to reject Plaintiff's proposed constructions and adopt Defendants' constructions instead.

DATED:  January 17, 2012

By: _____/s/ Steven R. Daniels_____

    W. Bryan Farney
    Lead Attorney
    Texas State Bar No. 06826600
    Steven R. Daniels
    Texas State Bar No. 24025318
    Bryan D. Atkinson
    Texas State Bar No. 24036157
    Jia-Geng Lu
    California Bar No. 271589
    FARNEY DANIELS, LLP
    800 S. Austin Ave., Suite 200
    Georgetown, Texas 78626
    Telephone:  (512) 582-2828
    Facsimile:  (512) 582-2829
    bfarney@farneydaniels.com
    sdaniels@farneydaniels.com
    batkinson@farneydaniels.com
    jlu@farneydaniels.com

**ATTORNEYS  FOR DEFENDANTS**
**BEST BUY CO., INC.**
**BEST BUY STORES, LP**
**BESTBUY.COM, LLC**
**CDW LLC**
**FRY'S ELECTRONICS, INC.**
**HEWLETT-PACKARD COMPANY**
**MICRO ELECTRONICS, INC**
**OFFICE DEPOT, INC.**

By: _____/s/ Eric H. Findlay_____

    Eric H. Findlay
    State Bar No. 00789886
    Brian Craft
    State Bar No. 04972020
    Findlay Craft, LLP
    6760 Old Jacksonville Hwy
    Suite 101
    Tyler, TX  75703
    (903) 534-1100
    (903) 534-1137 FAX
    efindlay@findlaycraft.com
    bcraft@findlaycraft.com

    James E. Geringer (pro hac vice)
    james.geringer@klarquist.com
    Salumeh R. Loesch
    salumeh.loesch@klarquist.com
    KLARQUIST SPARKMAN, LLP
    121 S.W. Salmon Street, Suite 1600
    Portland, Oregon  97204
    Telephone:  (503) 595-5300
    Facsimile:  (503) 595-5301
**ATTORNEYS FOR DEFENDANT**
**AMAZON.COM, INC.**

By:  __/s/_____,_____

Trey Yarbrough
State Bar No. 22133500
Debby E. Gunter
State Bar No. 24012752
Yarbrough Wilcox, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
(903) 595-3111 Telephone
(903) 595-0191 Facsimile
E-mail: trey@yw-lawfirm.com
debby@yw-lawfirm.com

Of Counsel:

John N. Zarian
Christopher J. Cuneo (admitted *pro hac vice*)
Dana M. Herberholz
Parsons Behle & Latimer
960 Broadway, Suite 250
Boise, Idaho 83706
(208) 562-4900 Telephone
(208) 562-4901 Facsimile
JZarian@parsonsbehle.com
ccuneo@parsonsbehle.com
dherberholz@parsonsbehle.com

**ATTORNEYS FOR DEFENDANT
ROSEWILL INC.**

By:  __/s/_____.

Trey Yarbrough
State Bar No. 22133500
Debby E. Gunter
State Bar No. 24012752
Yarbrough Wilcox, PLLC
100 E. Ferguson St., Ste. 1015
Tyler, Texas 75702
(903) 595-3111 Telephone
(903) 595-0191 Facsimile
E-mail: trey@yw-lawfirm.com
debby@yw-lawfirm.com

Of Counsel:

John N. Zarian
Christopher J. Cuneo (admitted *pro hac vice*)
Dana M. Herberholz
Parsons Behle & Latimer
960 Broadway, Suite 250
Boise, Idaho 83706
(208) 562-4900 Telephone
(208) 562-4901 Facsimile
JZarian@parsonsbehle.com
ccuneo@parsonsbehle.com
dherberholz@parsonsbehle.com

**ATTORNEYS FOR DEFENDANTS
NEWEGG INC. AND NEWEGG.COM
INC.**

By:        ___/s/ Jen-Feng Lee___ __

Jen-Feng Lee (pro hac vice)
LT Pacific Law Group LLP
17800 Castleton Street, Suite 383
City of Industry, CA 91748
Tel: (626) 810-7200
Fax: (626) 810-7300
Email: jflee@ltpacificlaw.com

**ATTORNEYS FOR DEFENDANT
AUDITEK CORPORATION**

By:        ___/s/ David W. Denenberg___

David W. Denenberg (pro hac vice)
Davidorr Malito & Hutcher LLP
200 Garden City Plaza
Garden City, New York 1 1530
(516) 247-4440 (Telephone)
(516) 248-6422 (Facsimile)
dwd@dmlegal.com

**ATTORNEYS FOR DEFENDANTS
SYSTEMAX, INC., COMPUSA.COM,
INC., NEW COMPUSA
CORPORATION, AND TIGERDIRECT,
INC.**

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF
CASE NO.  6:10-CV-329-LED**

By:      /s/Gary Y. Leung
     Gary Y. Leung
     gleung@mcguirewoods.com
     MCGUIREWOODS LLP
     77 W. Wacker Dr. Ste. 4100
     Chicago, IL 60601-1818
     312.849.8100
     312.849.3690 (fax)

**ATTORNEYS FOR DEFENDANT
DIGITAL INNOVATIONS, LLC**

By:      /s/ Herbert J. Hammond

     Herbert J. Hammond
     Attorney-In-Charge
      State Bar No. 08858500
     Vishal Patel
      State Bar No. 24065885
     THOMPSON & KNIGHT LLP
     One Arts Plaza
     1722 Routh St., Suite 1500
     Dallas, Texas 75201
     (214) 969-1700
     (214) 969-1751 (Fax)

     Patricia L. Davidson
     MIRICK, O'CONNELL,
     DEMALLIE & LOUGEE, LLP
     100 Front Street
     Worcester, Massachusetts  01608-1477
     (508) 860-1540
     (508) 983-6240 (Fax)

**ATTORNEYS FOR DEFENDANT
GEAR HEAD, LLC**

By:      /s/ Victor de Gyarfas

     Victor de Gyarfas
     Texas Bar No. 24071250
     e-mail:  vdegyarfas@foley.com
     FOLEY & LARDNER LLP
     555 South Flower Street, Suite 3500
     Los Angeles, CA 90071-2411
     213.972.4500
     213.486.0065

**ATTORNEYS FOR DEFENDANT
WAL-MART STORES, INC.**

By:      /s/ Ezra Sutton
     EZRA SUTTON, Esq. (pro hac vice)
     EZRA SUTTON, P. A.
     Plaza 9, 900 Route 9
     Woodbridge, New Jersey 07095
     Tel:  732-634-3520
     Fax: 732-634-3511
     Email: esutton@ezrasutton.com

**ATTORNEYS FOR DEFENDANTS
SAKAR INTERNATIONAL, INC.,
KOHL'S CORPORATION, and
KOHL'S ILLINOIS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in

compliance with Local Rule CV-5(a). As such, this notice was served on all counsel who have

consented to electronic service, Local Rule CV-5(a)(3)(A), on this the 17th day of January, 2012.


_____*/s/ Steven R. Daniels*_____
Steven R. Daniels

**DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF**
**CASE NO.  6:10-CV-329-LED**