```
 1              IN THE UNITED STATES DISTRICT COURT

 2              FOR THE EASTERN DISTRICT OF TEXAS

 3                       TYLER DIVISION

 4   ADJUSTACAM, LLC          )(

 5                            )(    CIVIL DOCKET NO.

 6                            )(    6:10-CV-329

 7   VS.                      )(    TYLER, TEXAS

 8                            )(

 9                            )(    FEBRUARY 9, 2012

10   AMAZON.COM, INC., ET AL. )(    9:00 A.M.

11                  CLAIM CONSTRUCTION HEARING

12          BEFORE THE HONORABLE JUDGE JOHN D. LOVE

13              UNITED STATES MAGISTRATE JUDGE

14

15   APPEARANCES:

16

17   FOR THE PLAINTIFF:   (See Attorney Sign-In Sheet)

18

19   FOR THE DEFENDANTS:  (See Attorney Sign-In Sheet)

20

21   COURT REPORTER:      SHELLY HOLMES, Texas CSR 7804
                          Expiration Date:  12/31/12
22                        Sunbelt Reporting & Litigation
                          6575 West Loop South, Suite 580
23                        Bellaire, Texas 77401
                          (903) 593-3213
24
     (Proceedings recorded by mechanical stenography,
25   transcript produced on a CAT system.)
```

CLAIM CONSTRUCTION HEARING

1                     I N D E X

2

3

4  February 9, 2012

5                                              Page

6      Appearances                            1

7      Hearing                                3

8      Court Reporter's Certificate          98

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CLAIM CONSTRUCTION HEARING

```
 1                COURTROOM CLERK:  All rise.

 2                THE COURT:  Please be seated.

 3                All right.  Ms. Morris, you may call the

 4     case.

 5                COURTROOM CLERK:  The Court calls Case No.

 6     6:10-CV-329, Adjustacam versus Amazon.com, et al.

 7                THE COURT:  Announcements.

 8                MR. SPANGLER:  Good morning.  Andrew

 9     Spangler on behalf of the Plaintiff.  With me today is

10     Mr. John Edmonds and Mr. Johnathan --

11                MR. YAZDANI:  Yazdani.

12                MR. SPANGLER:  -- Yazdani, yes.  And we're

13     ready, Your Honor.

14                THE COURT:  All right.  And for the

15     Defendants?

16                MR. CRAFT:  Morning, Your Honor, Brian

17     Craft.  I'm here on behalf of Amazon.com with Jacqueline

18     Lu, Steve Daniels, here on behalf of Best Buy entities,

19     CDW, Fry's Electronics, Hewlett Packard Company, Micro

20     Electronics, and Office Depot.

21                THE COURT:  Okay.

22                MR. HAMMOND:  Herbert Hammond on behalf of

23     Gear Head.

24                MR. SMITH:  Michael Smith on behalf of

25     Wal-Mart.
```

```
 1            MR. YARBROUGH:  Trey Yarbrough, Your Honor,
 2  on behalf of the Newegg Defendants and Rosewill.  And
 3  John Zarian, as well.  Mr. Zarian will be arguing some
 4  of the disputed terms.
 5            THE COURT:  All right.  Thank you.
 6            We're here, of course, for claim
 7  construction hearing.  As the -- I'm sure you probably
 8  know, the way I want to approach this is to take this
 9  term-by-term.  I don't think there's, in this context,
10  really any necessity of any general tutorial of any
11  kind.  I think you can just jump right into the terms.
12  And we'll go back and forth on the -- term-by-term.
13            Let me, though, before we begin just kind of
14  get a clear understanding of what terms are in dispute
15  going forward here.  I'll just go kind of down the list.
16  I understand, I guess, that -- I'll just list them off,
17  that hinge member, rotatably attached terms,
18  disposition, support frame, I think these are the four
19  that I'm fairly certain are in dispute.  Are there any
20  other terms in dispute?  And I'm going off of what the
21  Defendants briefed.  Support frame, disposition, hinge
22  member, and rotatably attached.  Any other term in
23  dispute?
24            MS. LU:  No, Your Honor.
25            THE COURT:  Okay.  Just those four?
```

```
 1              MR. EDMONDS:  No, Your Honor.  I mean, there
 2    are -- there are a number of agreements that may not be
 3    reflected in the chart we gave you --
 4              THE COURT:  Okay.
 5              MR. EDMONDS:  -- in terms of plain meaning,
 6    but those are the ones in dispute.
 7              THE COURT:  So that I'm understanding, then,
 8    those terms which are originally in dispute, is there
 9    agreement as to plain meaning?  Is that what I'm
10    understanding, or is there an agreement --
11              MS. LU:  That's right.
12              THE COURT:  Okay.  All right.  So with those
13    four terms in dispute, then let's begin, and I'll leave
14    it up to the parties as far as how they would like to do
15    the order of terms.  As always, just keep in mind your
16    time.  I don't think this hearing should take too long
17    with the disputed terms in dispute, but my typical
18    advice is to prioritize the most important terms first
19    to the parties.
20              So let me hear first from the Plaintiff.
21              MR. ZARIAN:  Well, if it please the Court,
22    Your Honor, counsel conferred before the hearing and had
23    proposed and agreed that the -- that the following order
24    of terms be -- be discussed, support frame, then
25    dispossession, then hinge member, then rotatably
```

1  attached, essentially in the order they were presented

2  in the briefing, Your Honor.

3          THE COURT:  Okay.  That's fine.  Okay.

4  Support frame, then.  Go ahead.

5          MR. EDMONDS:  Thank you, Your Honor, John

6  Edmonds here for the Plaintiff.

7          And let me make one correction to what we

8  said.  In terms of the -- the agreements on plain

9  meaning, there's one element, hingedly attached, that

10  the parties agreed on a construction.  It was connected

11  or joined via a hinge joint.  I believe the rest of

12  them we stated correctly had been agreed to be plain

13  meaning.

14          THE COURT:  Okay.  Connected or joined via a

15  hinge --

16          MR. EDMONDS:  Joint, Your Honor.

17          THE COURT:  -- joint or point?

18          MR. EDMONDS:  Joint.  Is there a -- if

19  there's a typo, it should be joint.

20          THE COURT:  It may be -- it may be just in

21  our -- what we put together.  Okay.  Go ahead.

22          MR. EDMONDS:  So -- and by the way, I think

23  hinge member is probably the most important term, but

24  the Defendants' presentation was done in a different

25  way, so we're going to do it that way, which is fine.

CLAIM CONSTRUCTION HEARING

1            And the first term that they want to do

2   is -- make sure I get their order correct here.  Okay.

3   The support frame.  So, Your Honor, a -- a support frame

4   is, we say, a very simple term, that in general, the

5   Defendants are trying to read extra limitations into

6   this element, and I -- and I think even though we're

7   going to do it one at a time, I think it's important for

8   the Court to understand the -- the combination, kind of

9   the one-two punch they're trying with support frame and

10  disposition, because they have the word -- in support

11  frame, they have the word disposition.

12           So when they have a construction of

13  disposition, they're -- they're trying to import that

14  into a support frame.  And as -- in terms of the

15  Plaintiff's construction of support frame, we say it's a

16  structural element that supports a hinge member.

17  We're -- we're somewhat close to the Defendants in that

18  we agree that it supports a hinge member.  That seems to

19  be an agreement.

20           But the -- the point of disagreement is that

21  whether the different dispositions have to be what

22  enable the support of the hinge member or whether the

23  support frame is just simply what supports the hinge

24  member.

25           And in -- in that regard, we can look at

CLAIM CONSTRUCTION HEARING

1  Claim 1, and as you can see with Claim 1, Element B, we
2  have the support frame is rotatably attached to the
3  hinge member, and it's configured to support it.  The --
4  the Plaintiff says that that's all that's required by
5  this simple term, that's all that's required by a very
6  straightforward language in the claim.
7        What I see the Defendants saying is that the
8  Plaintiff's definition lacks context, but we disagree.
9  The context is provided within the claim itself, and
10 if -- what I'll do is I think our -- I think our
11 construction is fairly straightforward.  So I'll pick
12 apart theirs, which I think frames the issues somewhat
13 better for the Court.
14        The Defendants say that a support frame --
15 the different dispositions must be what enables support,
16 and then when they talk about disposition, they say that
17 that has to be something that's done in the second axis
18 of rotation.  So what they're trying to do is they're
19 trying to limit a support frame to something where
20 rotation in a second axis is the only thing that must be
21 the thing that enables support of -- of the hinge
22 member.  And that's just simply not required by these
23 claims.
24        That -- that may very well be an aspect of a
25 preferred embodiment, but as the Phillips case teaches

1  us, and many other cases teaches us, as the Court is

2  well aware, claims are not limited to their preferred

3  embodiments.

4          The -- the Defendants say that we need more

5  physical structure in the construction.  The problem

6  with that argument is their construction doesn't provide

7  additional structure.  All it's doing is putting in

8  additional limitation -- importing additional limitation

9  into this element.

10          So as I see it -- can I get the one with the

11 colors on it -- this is kind of a colored version of

12 Claim 1, and it gives kind of a better explanation of

13 what's happening here so the Court can better understand

14 it.  We have a -- it's a -- it's a camera clip.  The

15 hinge member is attached to the camera, and the claim

16 requires that it rotates around a first axis of rotation

17 relative to the hinge member.  Then we have -- we have

18 our hinge member attached to a camera, now we have a

19 support frame that's attached to the hinge member.

20          So to us, the structure is clear of what's

21 required in this claim, as they -- the old saying the

22 leg bone connected to the hip bone and the hip bone

23 connected to the thigh bone.  Here we have a hinge

24 member that's attached to the camera; we have a support

25 frame that's attached to the hinge member.  And then the

1   claim goes on to talk about how the hinge member, how

2   it -- how it rotates around a second axis -- axis of

3   rotation relative to the support frame.

4           And as the Court -- I don't want to go

5   through every element here, but I think the pictures

6   illustrate that in -- as claimed, we have the two

7   different dispositions here that are required by the

8   claim.  One is relative to the surface, and one is

9   relative to the object.  But those are already in the

10  claim.

11          As -- as we see it, if you take the

12  Defendants' restrictive construction, the claim now

13  becomes more limited than -- than it is already

14  structurally, and I think it's just a -- it's just a

15  non-infringement argument they're trying to make and an

16  improper claim construction in terms of what -- what the

17  Court should do.

18          The -- there's a lot of citations they have

19  to -- you have to have structure and you have to have

20  context, but what we'd say to the Court is carefully

21  read Claim 1 or Claim -- any of the -- any of the

22  independent claims, Claim 19 or Claim 20.  It's clear

23  from these straightforward claims what the structure is.

24  You have the hinge member that's attached to a camera,

25  you have a support frame that's attached to the hinge

1  member.  The support frame attaches the hinge member,

2  which is what is rotatably attached to the camera.

3           So the structure is there.  It's very

4  straightforward, and what -- what the Defendants are

5  trying to do is not to put additional structure in.

6  They're just trying to limit the claim in a very

7  restrictive way.  If you -- if you limited this to the

8  rotation about a second axis of rotation it must be what

9  enables support of the camera, then that's a very

10  restrictive -- unduly restrictive interpretation of this

11  claim, and we say that the fact that the camera is

12  attached to the hinge member and that the hinge member

13  is attached to the support frame is what -- all you need

14  is -- all you need to support is to attach.

15           There's no need to -- to say that I have to

16  move it in a single direction to enable support.  It

17  only needs to be attached.  I think that's the -- the

18  gist of our argument there, and I think it's as simple

19  as that.

20           You know, the Defendants have a lot of

21  slides here, a whole lot of slides.  We just got them,

22  so we're kind of working through them, but, you know,

23  it's remarkable how much argument, how many slides, how

24  many cites it takes here to have the Court construe a

25  very straightforward term in a very straightforward

1    context, and we respectfully submit that any argument

2    that this -- is this long and contorted and any argument

3    that is so dependent upon the preferred embodiments as

4    opposed to the straightforward claim language is

5    inevitably wrong, which is the case we have here.

6            Thank you, Your Honor.

7            THE COURT:  Well, let me -- let me ask

8    before I go to the Defendants, I don't at all disagree

9    with what you're saying, in other words, that the

10   support frame supports.  You know, that seems fairly

11   straightforward.

12           I guess my only question would be the

13   Defendants say, whose different disposition enable

14   support of said hinge member.  Now, just kind of explain

15   to me why that is unacceptable to the Plaintiff.  You

16   know, what do you see is that -- what does that

17   ultimately mean?  How does that ultimately work itself

18   out?

19           MR. EDMONDS:  Here's how --

20           THE COURT:  Yeah, go ahead.

21           MR. EDMONDS:  Thank you, Your Honor.

22           So as -- as the claim is structured, you

23   have a support frame that -- that is attached to the

24   hinge member supporting it, and the hinge member

25   supports the camera.  There -- there are also separate

1  claim elements that cover the rotation and -- and -- or

2  the disposition of the support frame, and what's one of

3  the novel aspects of these claims is, as you can see

4  from the illustration, in one disposition, the -- the

5  support frame has -- as claimed has to have a first

6  disposition on the surface, which is the one that you

7  see sitting on the blue there, and then it has a second

8  disposition when attached to an object, which is what

9  you see at the bottom there.

10            So the -- the problem we have with the

11  Defendants' construction is that as I read it, because

12  they're using the word disposition in their construction

13  of support frame and because they limit disposition to

14  rotation about a single axis, what they're trying to do

15  is to now argue to the jury based upon that construction

16  that the -- these claims require that the only way that

17  the support frame can be attached to the hinge member is

18  that the rotation about a second axis is what must

19  enable that, and that's just simply a very restrictive

20  reading of it.  There's no requirement that the

21  disposition be what enable the support.  The attachment

22  itself can enable the support regardless of the

23  disposition of the camera.

24            THE COURT:  Okay.

25            MR. EDMONDS:  Thank you, Your Honor.

1          THE COURT:  All right.  Response?

2          MS. LU:  Good morning, Your Honor.

3          THE COURT:  Good morning.

4          MS. LU:  So you just heard Plaintiff's

5  explanation for what their construction of support frame

6  is and why they think that's correct.  Defendants

7  disagree.  Defendants will tell you that and demonstrate

8  that Plaintiff's construction lacks context.

9          And Your Honor asked an excellent question

10  just now, what is it about including the word

11  disposition that's unacceptable or incompatible somehow

12  with the finding of what a support frame is in this

13  context, and the Defendants agree, that is an excellent

14  point.  And as we will show you, the two have to be

15  related, and if Your Honor will permit, because

16  disposition is also a disputed term and Defendants are

17  of the position that the two terms have to be related

18  structurally to what it means to have a support frame in

19  the claims, if it would be permitted by Your Honor, we'd

20  like to go ahead and present the arguments for

21  disposition and support frame together just because they

22  flow together logically.

23          THE COURT:  That's fine with me.  I'll allow

24  the Plaintiff to respond back to support frame and then

25  respond to disposition, as well.

CLAIM CONSTRUCTION HEARING

1            So go ahead.

2            MS. LU:  Okay.  Thank you, Your Honor.

3            So, first of all, we just looked at the

4    claims.  We saw a lot of colored boxes highlighting

5    specific words in the claim, but let's not forget what

6    the claim and really the patent here is about.  The

7    entire patent is about a camera clip, not the camera,

8    just the clip part of the camera, and this clip is used

9    to support the camera on different surfaces.  You can

10   put it on a desk, you can put it on top of a screen.

11            And the four terms that the parties are

12   disputing all have something to do with the clip.  The

13   clip is a device that fulfills a function, and all these

14   terms relate to that device and its function.  So the

15   disagreement really between the parties underlying all

16   four terms, and it will become clear as we go through

17   each of these, is that should the disputed terms be

18   construed to take into account the relationship to the

19   entire functioning device, the entire clip or not?

20            Now, Defendants would say, yes, and the

21   reason is -- I think becomes pretty clear when we look

22   at what the terms actually are.  So two of the terms are

23   support frame and hinge member, and what these actually

24   are in the clip are its pieces.  Just for convenience,

25   we have here a visualization of that, a figure taken out

CLAIM CONSTRUCTION HEARING

1  straight from the patent, the hinge member here, and the

2  Plaintiff has also already highlighted this in their own

3  version of the diagram, but we used a different color

4  scheme.  It's highlighted here in blue, and the support

5  frame is highlighted here in red.

6          So these are physical pieces.  The support

7  frame is a thing.  It's a part of the clip.  The hinge

8  member is a physical thing that's a part of the clip.

9          Now, aside from that, the other two terms,

10 rotatably attached and disposition, relate to how these

11 pieces are joined together and how they function

12 collectively in the clip, and we'll go into detail as to

13 exactly what's going on.

14         So the patent itself tells us what the clip

15 is for, and that's pretty clear.  It supports a camera,

16 and permissibly it can support a camera on either a flat

17 tabletop, flat horizontal tabletop, and you can also put

18 it on a non-flat surface, for instance, the housing of a

19 laptop screen, and here we have a couple of excerpts

20 just from the face of the patent itself, and it

21 basically just talks about the desire in the industry

22 for having some kind of adaptable support apparatus

23 going from tabletop to laptop.

24         And so accordingly, in the summary of the

25 invention section, the patentee describes it as being an

CLAIM CONSTRUCTION HEARING

1   object of the invention to provide such a clip that can

2   take you from horizontal tabletop to nonhorizontal

3   laptop screen.

4            So that said, the patent also tells you how

5   the invention does this.  It also tells you how the clip

6   is able to do this, and it's through rotation and motion

7   among its parts.  That's how the clip works.

8            Again, here seen in the summary of the

9   invention section, the clip is described here as being

10  able to be rotated into a first position to support the

11  camera on the surface of the table or a desk, and then

12  you rotate it again into a second position to support

13  the camera on the display screen of a laptop computer,

14  and the parts of the camera, as they are set out in the

15  claims, and here's just a simple excerpt from

16  Independent Claim 1, which all the parties have been

17  referring to as sort of the example representative of

18  all the -- all the independent claims are the hinge

19  member and the support frame.

20           Okay.  So we have here a clip.  We know what

21  it's supposed to do.  We know that it does this through

22  rotational motion among its parts, but, I mean,

23  logically the next question is, so what's rotating?

24  What -- what's actually the motion that's going on here?

25           And the claims tell you where and how the

1  claim -- how the clip provides rotational motion.  And

2  there's really only two places where anything can move.

3  There's a first axis of rotation at the point where the

4  hinge member may be attached to a camera, and there is a

5  second axis of rotation where the support frame attaches

6  to the hinge member.  These are the only locations

7  described in the claims talking about where in or about

8  the clip that this thing can move.

9            So knowing this is a physical object and

10 describing it in words and telling you about axes and

11 pieces connecting together, it may be a bit hard to

12 visualize, so towards that end, Defendants have put

13 together a simple animation based on the figures of the

14 patent just to show you how everything fits together.

15            And my colleague will please play the

16 animation.

17            (Animation played.)

18            So here we have the first axis.  The first

19 axis is at the point of connection between a camera and

20 the hinge member, and it rotates.  That's where the

21 first axis is.  And then the following slide, this is

22 where the second axis is.  The second axis is at the

23 point of connection between the support frame and hinge

24 member, and it also allows rotational motion.  So there

25 you go.

CLAIM CONSTRUCTION HEARING

1            Now, we've been saying time and again this

2    is a device with a particular function.  It takes you

3    from tabletop to laptop.  So we know where the pieces

4    are.  We know where the axes are.  Putting it together,

5    how does it work?  Motion about the second axis.  And

6    there you go.  It takes the clip from tabletop to

7    laptop, one smooth motion.  And this is just a slide for

8    later reference if you like, Your Honor, to sum up what

9    the previous animation shows.  So there's really no

10   point in reading off of it right now.

11            But anyway -- so that brings us to the terms

12   that are actually disputed.  We know what the clip is.

13   We know that the support frame is a piece of this clip.

14   We know the clip performs a specific function.  So what

15   does it mean in relation to the invention that's claimed

16   in the patent to have a support frame?

17            And Plaintiff would answer this question

18   differently from Defendants, as you've already seen.

19   Plaintiffs would say it's a structural element that

20   supports a hinge member.  Okay.  And Defendants, just so

21   you have our complete construction in front of you,

22   would say that it's a physically distinct structural

23   element whose different dispositions enable support of

24   the hinge member.

25            And the reason why Defendants' construction

CLAIM CONSTRUCTION HEARING

1  gives you a little bit more information, Your Honor, is

2  that the type of physical structure that a support frame

3  is and what it does in the context of the clip because

4  it's a part of a clip that performs a function, all

5  these things have to be taken into account in

6  determining what a support frame is.

7           So if we start not with the preferred

8  embodiment, as Plaintiffs seems to believe we did, but

9  just with the claim language, it states here in

10  Subparagraph B describing the support frame, we have a

11  support frame rotatably attached to said hinge member

12  and configured to support said hinge member on the

13  surface and the object.

14          Okay.  So what does -- what does this tell

15  us?  We know that in the context of a clip, a camera

16  clip that can take you -- take the camera from tabletop

17  to laptop, the support frame is the structural element

18  within this clip that is responsible for providing

19  support on the tabletop and on the laptop, on the

20  different surface and the different object.

21          But if we stop here, Your Honor, all that

22  tells you is what the support frame does.  What does

23  this tell you about what it is physically?  I mean, I

24  can tell you that it can go from tabletop to laptop, but

25  what's -- what is the shape of this thing?  How does it

CLAIM CONSTRUCTION HEARING

```
 1  actually do any of this?  It doesn't say.  And that
 2  precisely is why Plaintiff's construction is, in the
 3  Defendants' opinion, willfully incomplete.
 4           So, again, just for quick reference,
 5  Plaintiff's construction of support frame is that it's a
 6  structural element that supports a hinge member.  It
 7  doesn't actually tell you what the physical thing is,
 8  and just saying that it's a structural element also
 9  doesn't give you any information, because element, as we
10  already know from various old cases out there, is a
11  generic term.  It just says a thing exists.  It doesn't
12  tell you what the thing is.
13           And so as a practical matter, if you look at
14  Plaintiff's construction, take a careful look at it,
15  what it's really saying is that a support frame is a
16  means for performing the function of supporting a hinge
17  member.
18           Now, Plaintiff can't do this for several
19  reasons, and in their brief, there's case law cited, but
20  really what it all boils down to is common sense.  They
21  can't be allowed to claim all possible means, physical
22  or otherwise, for supporting the hinge member because
23  it's an old canon of claim construction, and here's a
24  citation provided here, but really we don't even need to
25  look at it, that you can't just define physical things
```

CLAIM CONSTRUCTION HEARING

```
1   solely by what they do instead of by what they actually
2   are.
3              And, again, there's citations for this, but
4   the principle is really rooted in common sense.  If you
5   don't tell me what the physical thing is that's doing
6   something, and I'm claiming or supposedly claiming a
7   physical thing, then conceivably that thing that
8   performs a function could be any conceivable physical
9   thing that could conceivably somehow fulfill that
10  function and -- because really just there's no limits.
11  There's no metes and bounds to what the thing itself is,
12  as a result of which any given member of the public
13  reading a patent like this would go, okay, you're
14  telling me there's a thing that can do this, but what --
15  what's the thing?  I have no idea.  There's no
16  fulfillment of the public notice function, which is the
17  entire point of why we have patents, why we require the
18  patentees to describe what their inventions are.
19             And that is why, Your Honor, time and again
20  the Courts have said, reiterated -- reiterating this
21  common sense principle, that the patentee simply cannot
22  be allowed to claim all possible means of achieving a
23  function.  You have to tell me what the thing is and how
24  it's achieving that function for me to have any idea of
25  what it is that you're talking about.
```

CLAIM CONSTRUCTION HEARING

1              Now, there's two different ways out of this,

2      and this is also well established, and both by statute

3      and in the case law, just as a quick summary, one of

4      them is established by Congress in Title 35, Section

5      112, Paragraph 6, and that is the availability of

6      means-plus-function claiming.

7              You can designate a term as literally being

8      I'm only claiming the means for performing a function,

9      but the result, the consequence mandated by statute of

10     doing that is you have to limit what it is you're

11     claiming to the specific structure that's described in

12     the patent and its equivalence, and that's it.  And the

13     only other way out -- and the only other alternative to

14     that is you tell me something about what the physical

15     structure is in the language of the claims.  You have to

16     give me some idea of what it is.

17             Now, here, Plaintiff has not even attempted

18     to argue that a support frame is a means-plus-function

19     term.  Defendants don't think it should be either, but

20     at the same time, if you look at their construction,

21     Your Honor, they're saying that a support frame is

22     basically any sort of physical means for supporting a

23     hinge member, which completely goes back on the position

24     that they've been taking on the construction since the

25     beginning, that there are no means-plus-function terms

CLAIM CONSTRUCTION HEARING

1   here, and also goes against this very old common sense

2   principle, that if you're claiming a physical thing that

3   does something, you have to tell me what the thing is,

4   you can't just tell me what it does.

5           So the only alternative left here for -- for

6   us to make any sense of what the claims are going to is

7   to look to the claims to tell us something about the

8   physical structure.  And this is precisely what

9   Defendants aim to do.

10          So here the claim language does actually

11  tell us something about the physical characteristics of

12  a support frame.  Again, going back to Subparagraph B of

13  Independent Claim 1 as an example, it tells you that the

14  support frame is configured, shaped somehow or arranged

15  somehow, to support the hinge member on a flat surface

16  or a vertical object such that it would have a first

17  disposition when it's positioned on a generally

18  horizontal flat surface and a distinct second

19  disposition attached to a -- an object that has been

20  inclined from a horizontal position.

21          Now, what does that tell us?  So

22  disposition, to the extent that there's any agreement

23  between the different sides at all on what that word

24  means, refers to a configuration or an arrangement,

25  something has been arranged in space.

CLAIM CONSTRUCTION HEARING

1              So at the very least, the very least that

2    the claims require is that the physical structure of the

3    support frame has to be such that it could take these

4    different dispositions.  The physical structure of the

5    support frame has to allow it to have these different

6    configurations depending on whether or not it's resting

7    on a flat desk or on a laptop screen.  That's the very

8    least.

9              Now, Plaintiff will say that the

10   dispositions are not related to supporting the hinge

11   member, but because the support frame can support the

12   hinge member by being attached to it, I mean, just as --

13   at a very superficial level, the word attached is not

14   the same as support, and I don't think there's any

15   reason why we should confuse the two.

16             And just for another more graphic example,

17   imagine, Your Honor, that I have, say, like the -- any

18   given camera or camera plus clip assembly in my hand,

19   and we know that the camera is attached to the hinge

20   member, if I can flip the entire camera plus clip

21   assembly upside down and somehow balance the camera on

22   the desk, does the camera now become the support frame?

23   It's attached to the hinge member, but it's not, and

24   it's not because it does not have the structural

25   characteristics required of a support frame in the

CLAIM CONSTRUCTION HEARING

1  claims.  But just saying that it's attached to the hinge

2  member does not get you there.

3       And we can look also to the specifications

4  permissibly just as further confirmation of what the

5  claims are already telling us, that it's the

6  dispositions or the different dispositions of the

7  support frame that allow it to provide support for the

8  entire hinge member and camera assembly on different

9  surfaces.

10       For instance, here, going back to the

11  summary of the invention section, that's the shortest

12  text -- the smallest text box you see in front of you,

13  it says that the clip may be rotated to a first position

14  to support the camera on the desk, rotated to a second

15  position to support the camera on a vertical object such

16  as the display screen of a laptop computer, and then,

17  also, further clearer descriptions of what one

18  embodiment of the invention would do.

19       In Figure 2, you see that the entire camera

20  plus clip assembly is resting on a flat, horizontal

21  surface, and in describing what's going on in Figure 2,

22  the specification tells you that in the embodiment,

23  there are specific rear end support elements -- rear end

24  support elements 38 and 40 and 42 that are touching

25  the -- or engaging the flat, horizontal surface at

CLAIM CONSTRUCTION HEARING

1  certain locations such that the entire assembly is

2  resting in the position 44.

3          Basically, what that's telling Your Honor is

4  the parts of the support frame are arranged or

5  configured in a certain manner, and that is how the

6  entire assembly can rest on a flat surface.

7          Now, Figure 4 will show you another

8  disposition, a second disposition where the entire

9  camera plus clip assembly is resting on an inclined

10 object such as a laptop screen, and, again, what's going

11 on here to clarify what the support frame is doing, the

12 specification tells you that the rear end support

13 elements 38, 40, 42 are touching the housing at the

14 locations shown in 44 such that the entire assembly is

15 supported in a position 54.

16         So there you go.  This is just further

17 confirmation with pictures showing you that as the

18 claims say, the disposition of the support frame is what

19 allows it to support the hinge member on a flat desk or

20 a laptop screen.  So --

21         THE COURT:  I guess -- I just have a

22 question, I guess.

23         MS. LU:  Uh-huh.

24         THE COURT:  Let me just go through them.  I

25 guess just to the point you just raised, I'm not sure

1  that I'm understanding why the different dispositions

2  enable support.  I mean, why doesn't the support

3  frame -- just a piece of plastic itself support the

4  hinge member?  I mean, why does it have to be in certain

5  dispositions or, you know, I mean, why does it just in

6  and of itself provide support?  It's a frame that

7  supports.  I don't understand why that's of necessity,

8  the disposition supporting the hinge member.

9            MS. LU:  That's an excellent point, Your

10 Honor, and to kind of help clarify our point, it's not

11 Defendants' contention that the word support doesn't

12 have some meaning in the English language.  What we'd

13 ask the Court to do is look at what the entire invention

14 is, and the entire invention as described in the -- oh,

15 I guess I don't have to go all the way back -- but if

16 you recall from the brief introductory section, the

17 entire invention is a clip that can take you from

18 tabletop to laptop.

19            I mean, you could have a piece of plastic

20 attached to a hinge member, but the point of the clip as

21 a whole is to be able to provide support on different

22 surfaces.  So when we say providing support, in the

23 context of what the invention is designed to do, that

24 means providing support on top of different things, and

25 in order to be adapted to differently inclined surfaces

CLAIM CONSTRUCTION HEARING

1  and objects, something about the invention has to be

2  adaptable, as well.  And those adaptations, as the

3  patentee described in the claims, are the different

4  configurations or dispositions of the support frame.

5          THE COURT:  Well, I don't -- I'm not saying

6  necessarily by what I'm asking that I disagree with your

7  overall sort of position as to what this invention is

8  designed to do and what it does and all that.  But I

9  guess my question would be why is it important to I

10  suppose implement that idea into the definition of

11  support frame?

12          And I guess what I'm getting to is I guess

13  I'm not clear from your argument why the claim itself

14  doesn't outline what you just said?  I mean, it talks

15  about that it's configured to support the hinge member

16  on the surface and the object, and it goes on to talk

17  about the first axis and the second axis and all that.

18          I guess I don't -- I mean, is the claim, you

19  know, that unclear that we've got to define the support

20  frame by the different dispositions when the different

21  dispositions are talked about in the claim?

22          MS. LU:  You know, Your Honor, that is an

23  excellent point, and from Defendants' perspective, the

24  claim is clear, too, but the mischief at work here is

25  not whether the entire claim is clear.  The mischief

1  that Defendants are concerned about is in Plaintiff's

2  construction.

3          It states that a structural element -- or a

4  support frame is just a structural element that supports

5  a hinge member.  And as you heard just now from

6  Plaintiff's argument with respect to this term, they

7  don't see any reason even to relate the dispositions to

8  what a support frame -- what this thing that's the piece

9  of a clip is.

10          And from Defendants' perspective, that's a

11  problem because the claims are clearly required, impose

12  a physical limitation on what the shape of a support

13  frame is, and that physical limitation has to require it

14  to provide support by taking these different

15  dispositions, but it's inherent in Plaintiff's argument,

16  as you heard just now, Your Honor, that they're trying

17  to divorce the idea that the shape of the support frame

18  has to be limited in this way for it to function in the

19  way that it's supposed to to serve its role in the clip

20  from the definition of support frame.  And that is what

21  Defendants are concerned about.

22          So we really appreciate, Your Honor, that

23  you're looking deeply into the claims and seeing the

24  same point that Defendants have been seeing, is that the

25  dispositions is a physical property that's inherent and

1  necessary to what the support frame is, and we just with

2  our construction hope to clarify that and avoid the

3  mischief that Plaintiff's construction would otherwise

4  work.

5           THE COURT:  Okay.  Let me ask you, I guess

6  I'm also a little bit unclear.  I think part of your

7  problem with Plaintiff's proposal is that you say, well,

8  it just is sort of defining support frame by what it

9  does, by its function.  I'm a little unclear as to why

10  your proposal that adds -- essentially it's the same

11  thing, except it says, whose different dispositions

12  enable support.

13           I'm not sure that different dispositions

14  provides any more structural identification than -- than

15  theirs does.  It seems to also go to the function, you

16  know, that it's -- as to how you position the support

17  frame it -- it supports.

18           I suppose that might give a little bit more

19  of an idea of what the -- of what it looks like, but it

20  seems like it also is sort of discussing it in -- in

21  functional terms.  So I guess have I kind of articulated

22  what you believe as far as different dispositions that

23  gives at least a little bit more of an idea how the

24  support frame would -- would look and would be

25  structurally composed?

1          MS. LU:  Yes, that's right, Your Honor.  So

2     the thing here, and I guess Defendants are also trying

3     to be modest and not trying to overreach at all as

4     Plaintiffs contends in looking to the preferred

5     embodiment.

6          Now, what would really give a clear picture

7     of what the support frame physically is, is if you just

8     look to the illustrations in the specification.  I mean,

9     that -- if anything tells you what the structure of this

10    thing is, it's that.  But in the interest of being

11    agreeable, not trying to restrict the patent any more

12    than the claims do, Defendants have not attempted to say

13    that the support frame is a physical thing with front

14    and back legs, you know, rear end support elements 38,

15    40, and 42.

16          But at a minimum, and this is another

17    reason why Defendants would like to present their

18    constructions for disposition and support frame

19    together, Your Honor, is that the word disposition, in

20    order to be arranged in a certain way, you have to also

21    be able to give some idea of what the arrangement is,

22    because an arrangement is something that exists in

23    physical reality.  It's something put together or

24    configured in space.  And so that gives much more of a

25    physical idea of what a support frame is than

1  Plaintiff's construction.

2          We agree it could be better.  The patent

3  could have gone ahead and described more structure, but

4  at a minimum, at a very minimum, as required in the

5  claims, this is what it is.

6          Now, if Your Honor would -- is of the

7  opinion that it would be clearer if we just say, it has

8  front and rear support elements 40, 42 and 38,

9  Defendants would be amenable to that, as well.

10          THE COURT:  Okay.  Well, let me hear back

11  from the Plaintiff.  I think I need to get with them

12  on -- I guess, Mr. Edmonds, what -- going, I guess, more

13  to this idea of disposition, I guess, what is the

14  Plaintiff's position on -- I mean, it talks about -- you

15  look at Claim 1, said support frame having a first

16  disposition, positioned on said generally horizontal

17  substantially planar surface and said support frame

18  having a second disposition attached to the object --

19  you know, so it talks about, obviously, first and second

20  disposition, first and second axis.

21          I mean, give me an idea of, you know, what

22  does this mean?  You know, what is the jury to make of

23  this?  How are they to interpret what's going on here?

24  Are we -- you know, even if the Court does not put that

25  the frame has different dispositions, we go to

CLAIM CONSTRUCTION HEARING

1   disposition, define it.  They propose through rotation

2   about the second axis -- I mean, what is -- what is the

3   Court and the jury supposed to do with that?  I mean,

4   what -- what is going to be your position as to what

5   these -- what this means?  I mean, are these the

6   dispositions, you know, related to these axes?  Are they

7   related to these objects?  I mean, how does this thing

8   work?

9           MR. EDMONDS:  Fair enough, Your Honor.

10          Could I have their Slide 21 back?  I thought

11  it may have illustrated it better than anything else.

12  21.

13          As we see it, Your Honor, the -- what

14  they're talking about in terms of what they're trying to

15  shoehorn into the definition of support frame, those are

16  already provided for in the claim itself, and in terms

17  of the support frame that's required to have a first

18  disposition, it's already there.

19          So there's no -- you know, we're not

20  claiming that that's not part of the claim.  We're just

21  saying that that's not what enables -- what is required

22  to enable support.

23          THE COURT:  Okay.  But let -- let's move --

24          MR. EDMONDS:  Yes.

25          THE COURT:  -- let's move from support

 1  frame, I want to move to disposition itself.

 2             MR. EDMONDS:  Yes, Your Honor.

 3             THE COURT:  Okay.  Your proposal is

 4  configuration or arrangement for disposition, correct?

 5             MR. EDMONDS:  Yes, Your Honor.

 6             THE COURT:  And they're proposing

 7  configuration of the support frame enabling support of

 8  the hinge member accomplished through rotation about the

 9  second axis.  What I'm really concerned about is not so

10  much about the first part of what they proposed but the

11  second part, that this disposition is accomplished

12  through rotation about the second axis.

13             MR. EDMONDS:  Same -- same concern here,

14  Your Honor, and it's frankly not clear to us what

15  non-infringement argument this supports.  And maybe the

16  Defendants could enlighten us as to whether that webcam

17  there would -- would meet the claim as they have

18  proposed to be construed, because apparently what

19  they're -- what we see them doing is they're trying to

20  limit -- disposition is -- is just a very

21  straightforward word.  Configuration is a very

22  straightforward word.  And they're trying to limit that

23  to something that's accomplished about the second axis.

24  So they're trying to -- to limit the word disposition to

25  a -- if I could borrow your webcam.

1           They seem to be trying to limit disposition

2  to something that's limited to one axis, one thing.  So

3  what they seem to be saying is that I have to enable

4  support of this camera by this -- something that happens

5  in this axis, and apparently they have a

6  non-infringement argument to say that, okay, I may be --

7  I may be supporting this thing, but what's enabling this

8  support is not what's happening on this axis.

9           That -- that's all we can tell they're

10  trying to do, and that's why I think they're trying to

11  import things that are already in the claim into this

12  term because there's a sleight-of-hand here to where

13  they're -- because they're trying to limit it to the

14  second axis, they're trying to import a whole

15  non-infringement argument into one claim term.

16           And, you know, like I said, I'd invite them

17  to say would this infringe under their construction?  If

18  not, why not?  And then maybe we'd understand why

19  they're making this argument better.  But all we can see

20  is they're -- they're taking words that don't belong

21  there, and they're adding them, and there's obviously

22  some reason.

23           THE COURT:  Okay.  Well, that's a point well

24  taken.  But I guess what I want to understand is -- I

25  think what they're saying is that in their animation

1   that the disposition, let's say, on the object is

2   accomplished through this sort of back and forth which

3   is oriented about the second axis.  Am I correctly

4   stating your understanding?  Maybe I need to get them up

5   here.

6             MR. EDMONDS:  Well, if we pull up Claim 1, I

7   think it's -- it's easier to -- to follow here.  So as

8   far as -- I think, Your Honor, that -- and as far as the

9   first axis and the second axis, I think that -- that

10  everyone, I think, seems to -- to disagree that the

11  first axis is vertical.  That's the way this works,

12  because -- because you're dealing with horizontal

13  surfaces and something that's inclined from a horizontal

14  surface.  So the first axis is vertical.  The second

15  axis is horizontal.

16             And in terms of what was -- I think -- I

17  think that's already -- and what we're saying is that

18  the support frame has to have a first disposition on the

19  table, and it has to have a first disposition -- a

20  second disposition on the object or the laptop.

21             Now, the support frame, you could still have

22  a support frame, and -- but if it doesn't have a first

23  disposition on the surface and if it doesn't have a

24  second disposition on the object, then it doesn't

25  infringe.  It's still a support frame.  It's just that

CLAIM CONSTRUCTION HEARING

1  the claim limitation is not --

2          THE COURT:  But that's my question, I think,

3  is --

4          MR. EDMONDS:  Right.

5          THE COURT:  -- you say, okay, the support

6  frame has to have a first disposition and a second

7  disposition.  How are you defining -- you're saying it's

8  just a configuration or arrangement?

9          MR. EDMONDS:  Right.

10         THE COURT:  And what I'm trying to get at

11  is -- I guess my question is, is that enough?  They're

12  saying that disposition is accomplished through rotation

13  around the second axis, I think, or the first axis, but

14  what is your -- I mean, is it -- is it -- is the

15  disposition connected to the axis of rotation, I guess,

16  is what I'm asking?

17         MR. EDMONDS:  Fair enough.

18         THE COURT:  And if it is, how are you

19  defining -- how are you kind of linking the two

20  together?

21         MR. EDMONDS:  Well, they're -- they're

22  linked together by the other claim language, and -- and

23  if I may borrow -- so it just has to have a -- we have

24  to have, one, a first disposition, one, a second

25  disposition.  There's no -- there's no limit on what

CLAIM CONSTRUCTION HEARING

1  those are until you get to the other claim limitations.

2          First -- first disposition is sitting flat.

3  The second disposition would be here what's sitting on

4  top of the computer.  Fair enough.  Now, that's all

5  that's required.  It has to have a first disposition on

6  the surface, a second disposition on the -- on the

7  object.

8          Now, separately in the claims, it says that

9  there has to be an axis rotation for the hinge member,

10  and it says there has to be an axis rotation for the

11  support frame, and that those axes have to be

12  perpendic -- generally perpendicular to each other.

13  That's -- what you're asking about is already there in

14  the claim.  There's no need to -- there's no loss of

15  structure.  There's no ambiguity.  The claim itself

16  provides, as I said, the hip bone's connected to the leg

17  bone.

18          We understand how these pieces are connected

19  and how they move by the claim, and -- and going to our

20  definitions, well, disposition -- see, there's no --

21  there's nothing in the -- in the claim that says that

22  the support has to be accomplished through rotation

23  about a second axis.  It just simply says it has to

24  support, it says it has to have two configurations.

25  Separately it says that there have to be two axes

CLAIM CONSTRUCTION HEARING

 1 │ relative to the hinge member and relative to the camera.

 2 │          So when you -- the sum total of what they're

 3 │ trying to do is they're trying to limit it to where the

 4 │ rotation about the second axis has to be the thing that

 5 │ enables support of the camera, and that's just simply

 6 │ not in the claim.  The claim wasn't written that way.

 7 │          Thank you.

 8 │          And we had one thing for the Court.  We're

 9 │ familiar with the Markman ruling from the Court in -- I

10 │ call it SFA, it's Sales Force Automation.  I think there

11 │ were two different Markmans, and I think in that case,

12 │ the Defendants had argued something similar relative

13 │ to -- let's see, the claim term had to do with -- I

14 │ think it was just hardware or software that did

15 │ something, and they were -- there was -- the Defendants

16 │ in that case had suggested that -- that that wasn't

17 │ enough, and the Court looked at the surrounding claim

18 │ language and saw that proper context and proper

19 │ understanding was given by the surrounding claim

20 │ language.  That may be something that might inform the

21 │ Court here.

22 │          THE COURT:  Okay.  All right.  I'd like, I

23 │ think, to go ahead and move on, unless there's something

24 │ else specifically the parties want to address on support

25 │ frame or disposition, go ahead and move on to the next

CLAIM CONSTRUCTION HEARING

1  two -- or, I guess, whatever the -- I think we got left

2  rotatably attached and hinge member.  So unless you have

3  something specific to address on -- on either one of

4  those -- the two terms we just talked about, I think

5  we're ready to move on to the other two.

6          MS. LU:  Actually, Your Honor, there is

7  something specific Defendants would like to address with

8  respect to what Plaintiffs just said --

9          THE COURT  okay.

10         MS. LU:  -- and with respect to the

11 disposition.

12         THE COURT:  Go head.

13         MS. LU:  So I think, Your Honor, the

14 question that you posed just now is here the claims tell

15 you there's a second axis, here the claims tell you that

16 there is different arrangements, physical arrangements

17 of the support frame that depending on what it's resting

18 on that the patentee termed the first disposition and

19 the second disposition, and I think what Your Honor was

20 getting at, and this was something that Defendants

21 struggled with, as well, is if you're telling me that

22 something -- there's a physical thing in space that can

23 be arranged in certain ways, and it can be moved from

24 one arrangement to another, then logically the next

25 question is, well, how do you -- how do you arrange it?

CLAIM CONSTRUCTION HEARING

1   What -- what's an arrangement?

2           And Plaintiffs would respond that you look

3   at the claims and the word disposition is a simple word,

4   and it has a plain and ordinary meaning, or it means

5   configuration or arrangement, well, you can say all

6   that, but we're not trying to determine whether or not

7   the word disposition has a meaning in the English

8   language out there in the abstract.  We're here talking

9   about a camera clip whose shape is adapted so that you

10  can go from tabletop to a laptop.  That is what we're

11  talking about here.

12          And in this context, what does it mean when

13  you have a disposition, and what does it -- what is its

14  relation really to the rest of what's in here?  And the

15  Defendants would say that from the claims, it's apparent

16  that a disposition, you can't simply say that it's just

17  the configuration, because that still tells you nothing

18  what a physical arrangement of a physical thing in space

19  physically is.

20          And just to drive the point home, we brought

21  here a couple of examples.  Here we have U.S. Patent

22  5,8 -- 5,857,684 for a collapsible golf cart, and before

23  the parties get up here and object and say it has

24  nothing to do with the camera clip, that is actually

25  precisely Defendants' point.

CLAIM CONSTRUCTION HEARING

1            Golf cart, collapsible or not, is not a

2  camera clip, has nothing to do with a camera clip.  Yet

3  you look at the claims here, and what is it talking

4  about but a frame that has different dispositions.  I

5  mean, what's the difference between a disposition here

6  and a disposition in the patent that we're talking

7  about?  They both mean arrangement.  They both mean

8  arrangement or configuration of a physical thing.

9            But that's not enough.  I mean, when you say

10 there's a disposition of a golf cart, that doesn't mean

11 the same thing as a disposition for a camera frame.

12 Why?  Because it's a different device serving different

13 purposes, and because it's a mechanical thing and things

14 are arranged, you have to tell me how the different

15 parts are arranged, and they're arranged in different

16 ways.

17            Now, there's many examples of this.  If you

18 just go on Google patents and say, enter a support frame

19 and disposition, hundreds of these things will come up.

20 The word disposition will mean a physical arrangement or

21 configuration in every single one of them, but in every

22 single one of them, when you say disposition of a golf

23 cart as opposed to a disposition of a support -- of the

24 support frame of a camera clip, it will mean something

25 different because it's a different device with a

CLAIM CONSTRUCTION HEARING

1  different purpose.

2          And here again is another such example of a

3  folding creeper, which I recently learned is a type of

4  lawn chair.  I did not know that before.  This thing has

5  not only one disposition or two dispositions but also a

6  third and fourth disposition, and here in the claims,

7  they tell you not only that they're -- these different

8  dispositions exist, they also tell you exactly how you

9  make them and exactly what they're for.  That's what

10  tells you what a disposition is with respect to a

11  folding creeper.

12          So the bottom line is this, the word

13  disposition, if you consider it in the absence of what

14  it -- what the clip does doesn't have any meaning.  You

15  know, what's the difference between disposition in the

16  golf cart patent as opposed to disposition in the camera

17  clip patent, different device, different purpose,

18  different way to form it.

19          And so at a minimum, to ascribe any physical

20  meaning to the word disposition, and Defendants are of

21  the opinion that disposition, because it means a

22  physical arrangement, should have physical meaning, you

23  have to know what's being disposed, why it's being

24  disposed, and most importantly how you're causing it to

25  be disposed.  I mean, you can't just telling, I can

CLAIM CONSTRUCTION HEARING

1  arrange something, without telling me how to arrange it.

2  That's just common sense.

3          And the claims can't answer these questions

4  here.  So going back to Subparagraph B, which tells you

5  about the support frame and how it fits into this whole

6  camera clip thing, we have the disposition is a

7  configuration of a support frame.  You have multiple

8  dispositions, so it has to be able to transition from

9  one to the other.  Transition requires movement, and the

10 only point of movement attributed to the support frame,

11 the only way that we -- the claims tell us that the

12 support frame can move is about -- is rotation about the

13 second axis.  That's it.  That's all the claims give us.

14         So, again, as an illustration, because here

15 we're talking about spacial arrangements of a physical

16 thing, it might be helpful to actually see it as opposed

17 to try to visualize where the pieces go.

18         And will you play the animation?

19         (Animation played.)

20         There you go, movement about the second axis

21 taking you from tabletop to laptop, two different

22 dispositions.  So at a minimum, at a very minimum, the

23 physical description of a disposition with respect to

24 the patent here requires that it's a configuration of a

25 support frame that enables support of a hinge member and

1  that it's accomplished through a rotation of the second

2  axis at a very minimum.

3          Now, as Your Honor contemplated earlier,

4  maybe that is not enough structural description, and if

5  it is, the Court's opinion that we should limit it to

6  front and rear support elements and talk about those

7  arrangements instead, Defendants would be amenable to

8  that, as well, but at a very minimum, you have to tell

9  me how to arrange something if you're going to say that

10 different arrangements exist and they serve a purpose.

11 And the only way that the claims give you to do that is

12 rotation about the second axis.

13         Now, in comparison, you go back and look at

14 the Plaintiff's construction again, it's just saying

15 configuration or arrangement, it becomes clear why that

16 lacks context.  So as you've already heard, Plaintiff

17 will say, well, you know, there is a support frame, and

18 it's attached to the hinge member, so, therefore, it's

19 supporting and it also has dispositions, and that's all

20 you need.

21         But I don't believe Plaintiff answered your

22 question when -- and Defendants think this is where you

23 were going, Your Honor, is what -- what is it?  I mean,

24 if you're telling me there's an arrangement of the

25 support frame, what is it and how do you do it?  Like

CLAIM CONSTRUCTION HEARING

1  how do you make a disposition?  If you're going to

2  arrange something and this arrangement serves some

3  function, it's not in there for no particular reason,

4  then how do you do it?

5          And here, again, Your Honor, it's a matter

6  of common sense, the claims go to a functioning device.

7  It's not to a list of parts.  The claim is telling

8  you -- is teaching you -- is claiming something that can

9  do something, a clip that can take you from tabletop to

10  laptop, but if you don't tell me how to configure it,

11  how to adapt it from one thing -- from one surface to

12  another, then what I'm leaving you with is I'm not

13  telling you how to make the invention work, and that is

14  a big problem.

15          Again, from a matter of common sense, and

16  here on the slide, Your Honor, we provided a citation to

17  a seminal text on the principles of claim drafting, but

18  this is mostly just for ease of reference.  I mean, you

19  can think about it in the absence of looking at any

20  text.  If you're going to claim something, if you're

21  going to contribute to society something that they

22  didn't have before, a functioning device, a device that

23  can do something, then I sure hope your claims tell me

24  how you can do it because then I don't know what you've

25  contributed.

CLAIM CONSTRUCTION HEARING

1              It's not -- and going to the text here, this

2    Faber on Mechanics of Patent Claim Drafting is more of

3    an expert on this, presumably, than -- than I or the

4    Plaintiff.  The claim must be to an assembled operable

5    combination, not to a mere parts list, and that, Your

6    Honor, Defendants think really sums up the point.

7              The clip functions to take you from tabletop

8    to laptop.  As part of doing so, it takes on different

9    physical arrangements.  You have to tell me how to make

10   those physical arrangements, and the second axis is the

11   only means in the claims that allows you to do that.

12             Now, Plaintiff has suggested that maybe

13   there are other ways to form dispositions.  Well, that's

14   great, but that's not in the claims.  Are you telling me

15   that the second axis is immaterial, that the claims set

16   that out, but that has nothing to do with how to make

17   the invention work?  Well, then, how does the invention

18   work?

19             That is the connection that has to be there,

20   Your Honor, so the disposition, in order for the camera

21   to function, in order for the camera to take functional

22   arrangements, that functional arrangement has to be

23   about the second axis in order for this entire thing to

24   make sense.

25             THE COURT:  Okay.  Well, let me -- let me

 1  back up a little bit then.  Now, what you've shown me in

 2  this animation --

 3              MS. LU:  Uh-huh.

 4              THE COURT:  -- I'm assuming by showing me

 5  that, you're saying that is what you believe this claim

 6  comprises, that type of camera that goes from the table,

 7  rotates on a second axis, and you set it on the laptop

 8  screen; am I -- am I correct?

 9              MS. LU:  Right.  That animation is drawn

10  from the figures in the patent, and that's an example

11  showing you how the invention works.  So, yes, that's

12  right.

13              THE COURT:  Okay.  Well, I guess -- okay.

14  Give me an idea.  We've argued here for an hour and 15

15  minutes about this -- this camera going from table to

16  laptop in such a fashion.  I think Plaintiff raised the

17  issue, well, does that camera in Defendants' estimation

18  infringe this claim?  Apparently the answer is yes.  So

19  what are we really arguing about here?  What's the

20  issue?  Why is this so important?

21              MS. LU:  The issue -- well...

22              THE COURT:  I mean, I guess what's the

23  Plaintiff's theory on how this -- if what you're saying

24  is correct --

25              MS. LU:  Uh-huh.

CLAIM CONSTRUCTION HEARING

1              THE COURT:  -- and I think the Plaintiff

2   will probably agree to a large extent that this patent

3   is about a camera that can set up on a table and set up

4   on a laptop, what is their theory as to what's your --

5   how your cameras meet these claims, and then what's

6   different about the camera you're showing me in the

7   animation?

8              MS. LU:  Well, correct me if I'm wrong, Your

9   Honor, but I didn't think that it was actually

10  permissible for us to talk about -- import our

11  non-infringement case into the claim construction, so --

12             THE COURT:  Well, if I'm going to spend over

13  an hour talking about this, I need to know what's going

14  on here.  Why is this important?  I mean --

15             MS. LU:  Right.  Excellent point, Your

16  Honor.

17             THE COURT:  I'm going to make it an issue,

18  so tell me what's going on in this case.

19             MS. LU:  Okay.  So what Defendants are

20  concerned about with Plaintiff's construction is saying

21  that a configuration or physical arrangement exists, but

22  I'm not going to tell you how to make that

23  configuration, and moreover, the only means of making

24  that configuration in the claims, the second axis should

25  not be taken into account -- taken into account when

1  you're trying to tell me what the configuration is.

2          What Defendants are concerned about here is

3  Plaintiffs will say anything connected to something else

4  connected to a camera where the thing that's closest to

5  the bottom could have different shapes.  I'm not -- it

6  doesn't matter how it makes it, it doesn't matter if the

7  claim tells -- if -- if that product makes different

8  shapes in a way that's taught by the claims, it doesn't

9  matter if those have any relationship, then that's going

10  to infringe because there are two pieces, and it can

11  move, and one of those pieces can take different shapes.

12          If you're going to tell me that you're going

13  to read the claim on things that can take different

14  shapes, well, then, the shape has to at least be enabled

15  by the patent.  It has to be -- you can't just say that

16  you take a camera and some piece that allows the camera

17  to rotate around two axes and stick it on to, say, a

18  giant magnet, and you move the magnet from tabletop to

19  laptop and say, oh, look, it's taking different shape,

20  or a big sticky ball and you change that big sticky ball

21  from one shape to another and say, look, it has

22  different dispositions, that something like that would

23  be covered by the claims.

24          THE COURT:  Okay.  All right.  Well, let's

25  move -- I want to move on from this, but I do want to

 1  get Plaintiff up one more time on this because we've got

 2  to move on.

 3        Mr. Edmonds, you know, I want to raise the

 4  issue here what really is -- is going on.  I mean, what

 5  they're saying is, look, what you claimed was this

 6  configuration on the table, you move it, you rotated

 7  this second axis that's referred to in the claim, you

 8  set it up on the laptop.  And they're saying, you're

 9  trying to make this into something that if it's got

10  anything that supports this camera and you move it from

11  table to laptop, as long as it's got this axis -- two

12  axes you can find, it infringes.

13        And they're saying, no, what you invented

14  was this thing you can move from one surface to the

15  another -- a surface to an object by rotating it, and

16  that's what you've got, and now you're trying to make it

17  into something that covers, I guess, a multitude of

18  webcams that your claim is not supportive of, so --

19        MR. EDMONDS:  Yes, Your Honor, and I

20  think --

21        THE COURT:  What is your theory here?

22  What's going on here?

23        MR. EDMONDS:  Good question.  So -- and I

24  think this illustrates the point.  My question to

25  them -- I think everybody agrees that the illustration

1   in their PowerPoint meets the claims limitation.  I

2   think the issue is this one here that the Court's

3   looking at that they brought with them, because we say

4   this infringes, they say it doesn't.  So I think this is

5   where -- really where the rubber hits the road.

6            So the only thing I can figure out that

7   they're getting at is here we have a hinge member, it's

8   here, it's rotatably attached to the camera, and it

9   rotates throughout the first axis of rotation, which is

10  the horizontal axis.  This also rotates around other

11  axes of rotation, too.  I think they want to say that

12  it -- it has to rotate around -- there has to be a

13  single axis of rotation and that has to be what

14  accomplishes everything, and if it does more, if it

15  rotates in more than one axis, then it doesn't infringe.

16  They're going to say to the jury that the Court has

17  construed this so narrowly that if we -- that if we

18  rotate in more than one axis, then we can't infringe.

19           I think that's where the rubber is hitting

20  the road here, and I think that gets into the same thing

21  with hinge where they say it has to be a specific kind

22  of joint, and we get that.  I think it's the same

23  argument over and over again to where essentially

24  they're saying that the only thing that could possibly

25  infringe is something that's configured exactly like the

1 | one that's in the patent, and we're saying that the

2 | claim language, it should be interpreted -- you should

3 | look at the claim, not the preferred embodiment.

4 |         THE COURT:  Well, I'll just ask one more

5 | thing --

6 |         MR. EDMONDS:  Yes.

7 |         THE COURT:  -- and then we do have to move

8 | on.  The way I'm understanding their argument here at

9 | the very end was I'm not sure it's so much what you're

10 | pointing out.  It seems to me what they're saying is, is

11 | that they're saying the thing is sitting on the surface,

12 | then as you move this clip to the laptop, you rotate it

13 | about this second axis, which I think is a horizontal

14 | axis, correct, or is it the --

15 |         MR. EDMONDS:  The second axis is horizontal,

16 | yes, Your Honor.

17 |         THE COURT:  So you rotate it, and that's

18 | what enables you to fit it onto the laptop.  So it's

19 | almost like it's this transition.  They're saying,

20 | configuration table, configuration laptop.  You go from

21 | one to the other, one disposition to the other by

22 | rotating it.

23 |         MR. EDMONDS:  And maybe that is what they're

24 | saying.  I mean, that's just simply -- that -- that

25 | illustration they had is really neat, but that's not in

CLAIM CONSTRUCTION HEARING

1  the patent, that's not required by the claims.  There --

2  it's just all that I acquired is -- it's an apparatus,

3  so it's not a method of kind of shaping itself that way.

4  The apparatus has to have a first disposition; it has to

5  have a second disposition.  It doesn't say that there

6  has to be some transition between the two.  If that's

7  how they're reading it, it's just not there.

8          THE COURT:  Well, I think that is how

9  they're reading it.  They're saying because you've got

10  these two orientations, two dispositions, that this

11  clip, how you do -- how you maneuver these orientations

12  is by rotating it around this second axis.  I think

13  that's why they say -- you know, I'm really not sure as

14  I -- maybe I'm not fully understanding what they're

15  saying.  That seemed to be what they were saying at the

16  end there, but anyway...

17          Okay.  All right.  Well, I tell you what,

18  we're going to take a break for about 10 minutes and

19  then resume with, I guess, rotatably attached and hinge

20  member and -- so all right, in recess for about 10

21  minutes.

22          COURTROOM CLERK:  All rise.

23          (Recess.)

24          COURTROOM CLERK:  All rise.

25          THE COURT:  Please be seated.

CLAIM CONSTRUCTION HEARING

1          All right.  What's the next term?

2          MR. EDMONDS:  Hinge member, Your Honor.

3          THE COURT:  All right.  Go ahead.

4          MR. EDMONDS:  Your Honor, with respect to

5   hinge member, it seems like the -- the battle -- the

6   battle lines are fairly drawn here.  The -- the

7   Plaintiff says it's a structural element that joins to

8   another for rotation.  And I think that there's a join

9   versus may be joined.  I think that's somewhat of a side

10  issue with the Court.  I mean, in the claims, they are

11  joined, so I'm not really sure why we're arguing over

12  how many angels dance on the head of a pin there.

13          But I think the big issue for the Court to

14  resolve is that this hinge joint, which is what the

15  Defendants are trying to read into the claim here,

16  whether -- whether a hinge member has to be limited to a

17  hinge joint or not, and I think that -- that is the

18  major question for the Court.

19          And the -- all right.  The hinge member, as

20  claimed, it has -- it has to do a couple of things here.

21  First of all, all the claims have rotatable attachment,

22  all the independent claims have rotatable attachment in

23  there.  So we know rotatable attachment is something we

24  need to account for.

25          And then go to the next slide.

CLAIM CONSTRUCTION HEARING

1           Claim 19 has hinged attachment.  The parties

2    have agreed that hinged attachment means a hinge joint.

3    We've agreed on that.  And I think where the battle

4    lines are drawn are the Defendants are saying that not

5    only is hingedly attachment a hinge joint, but rotatably

6    attached must be a hinge joint, too.  And that's just

7    simply improper claim construction.

8           When different words are used, it's presumed

9    to have different meanings, and if you go back a

10   slide -- it's interesting to see the difference in the

11   parties' graphics here, and I think if the Court -- the

12   color-coated things help the Court put it in

13   perspective.

14          This -- well, we have a front view and a

15   side view of hinge member 16, and the preferred

16   embodiment, hinge member 16 that's depicted in this

17   figure, has a hinged attachment, it also has a pivot

18   joint, and it's interesting -- and the -- I think the

19   graphic the Defendants are going to show you doesn't

20   have the entire hinge member 16 filled in.  So it's --

21   it's an incomplete picture for the Court.

22          The hinge member 16 has a pivot element.  So

23   the Defendants -- I got a preview of their slides, and

24   they have a slide with a -- with an old-style phonograph

25   that rotates, and I think they're going to say that that

CLAIM CONSTRUCTION HEARING

1  can't be included as a hinge member.  I think what's

2  interesting about that is the -- the pivot element

3  that's shown here in the preferred embodiment with this

4  pivot joint, that rotates like a -- like a phonograph

5  does.  So the -- the construction that the Defendants

6  are urging would read out a preferred embodiment,

7  which is presumptively wrong and we say conclusively

8  wrong.

9           I think it's also worth pointing out to the

10  Court that -- and go to the next slide -- the pivot

11  joint to better -- so in this one, we've got hinge

12  member 16, which is this whole structure -- I've pointed

13  out pivot element 80 of hinge member 16, which is this

14  pivot part.

15           And I think the pivot element is an

16  important point in the Court understanding whether

17  these claims are limited to a preferred embodiment or

18  not.  If you look at Claims 8 and 17, Dependent Claims 8

19  and 17, they both have -- they both have a pivot

20  element -- or, excuse me, yeah, a pivot element and a

21  hinge element.  We're getting there, Your Honor.  Yeah,

22  there's 17.  We have a pivot element and a hinge

23  element.

24           And so what we see here is that rotatable

25  attachment is not limited to a hinge joint, and, in

 1  fact, if it was, Claim 17 and Claim 8, which has the

 2  same -- the same language there, would be inoperable and

 3  a nullity because you couldn't have a pivot element -- a

 4  pivot element and a hinge joint are two different

 5  things.

 6          I think that's basically where the -- where

 7  the rubber hits the road there, Your Honor, and

 8  whether -- I understand that the patentee used the word

 9  hinge member, and I think what the Defendants say at the

10  first instance is, well, they're saying a hinge member

11  isn't a hinge, and perhaps to a certain extent, we are

12  in a sense that the claims and the specifica -- the

13  specification teaches and the claims not only teach but

14  require that you can have at least pivotable attachment

15  here with the hinge member.  So there's no way that it

16  could be limited just to a hinge joint.

17          And I think what -- to put it in perspective

18  for the Court as to, again, why we're -- why these

19  things matter, I presumably -- and I'm going to borrow

20  their webcam.

21          Can I borrow it, or did it disappear?  Thank

22  you.

23          So -- so this helps put it in perspective,

24  this -- this webcam that we -- that they brought with

25  them, this -- this is what's swinging down here is a --

```
 1   is a hinge joint.  Everybody agrees on that.  And
 2   presumably what they're going to say is that what is up
 3   here is not a hinge joint, and thus this doesn't
 4   infringe because a hinge joint is required.
 5              But it's funny, when you look at this webcam
 6   and you look at the preferred embodiment, as you can
 7   see, this webcam rotates on a horizontal axis with a
 8   pivot -- it pivots just like the preferred embodiment
 9   does.  So, I mean, fundamentally, what -- what the
10   Court's faced with is it going to have a construction
11   that excludes a preferred embodiment.
12              And then I think the other fundamental point
13   of disagreement between the parties is that the
14   Defendants -- I think what their language is intended to
15   argue is that it can only rotate in one axis.  It can't
16   rotate in more than one axis.
17              And our answer to that is to infringe the
18   claim, it must rotate in a first axis and a second axis,
19   and those axes must be perpendicular to each other, fair
20   enough.  But the webcam can have other -- there can be
21   other axes or rotation.  That's -- what's required to
22   infringe is one thing.  What they're trying to do is
23   trying to say that if -- if we do that and more, then we
24   don't infringe because we're trying to get the Court to
25   limit it to something that is -- is restricted in this
```

1  movement, and to that, we say that that's not how claims

2  are interpreted.  To us, that's claim interpretation

3  101.

4           This is comprising.  There's no disclaimer

5  in the patent to say that it can only rotate in one

6  direction.  What it says is that it must rotate in a

7  direction.  It doesn't say that it can't rotate in other

8  directions.  I think that's where the points of

9  disagreement are, and I think that the Plaintiff's

10 construction should -- should prevail for those reasons.

11          If -- in terms of kind of their picking

12 apart our construction, something -- somewhat what we

13 did with our constructions is we -- we took the

14 Defendants' construction and tried to reach as many

15 points of agreement as we could, which I -- which I

16 think helps highlight the points of disagreement for the

17 Court and where it needs to rule.

18          We both agree that a hinge member is a

19 structural element.  We both agree on joining.  We just

20 have joins or maybe joins.  We both agree that there's

21 rotation.  So really where -- where we part ways is

22 they've got another limitation in there that it has to

23 form a hinge joint as opposed to, for example, a

24 preferred embodiment, a pivot joint, or as opposed to,

25 for example, another joint that still meets the

1   requirement of the claim that you have two axes that are

2   perpendicular.  I think that's where -- where that one's

3   left.  So I'll take them in turn, so axis of rotation --

4   we'll do them one at a time.  Axis of rotation comes

5   next.

6             THE COURT:  Okay.  Response?

7             MR. ZARIAN:  Thank you, Your Honor.

8             Respectfully, although counsel indicated, as

9   the Court has requested, that the hinge member and

10  rotatably attached terms would be dealt with separately.

11            I submit, Your Honor, that most of the

12  argument that was just given with respect to hinge

13  member actually relied on arguments about rotatably

14  attached.  And, specifically, the statement was made

15  that rotatable attachment was not limited to a hinge

16  joint.

17            What I'd like to do is really focus on hinge

18  member and exactly what hinge member means and what the

19  proper construction of that ought to be.  And we submit,

20  Your Honor, if hinge member means anything at all, it

21  has to do something -- it has something to do with

22  hinge.

23            What the Plaintiff would do is actually read

24  out the hinge functionality, the hinge term completely

25  from the construction of this term, from the definition

1  of this term.  So whether or not a hinge element has a

2  pivot, allows for a pivot function at the top and a

3  hinge function on the second axis at the bottom, it has

4  to have a hinge.  That's our position.

5           So ultimately, the central disagreement here

6  is whether or not a hinge is a hinge, Your Honor.

7  That's -- that's our view of it, and Plaintiff's

8  construction in no way addresses or takes into account

9  the term hinge in defining and construing hinge member.

10          The word hinge, Your Honor, is used 66 times

11  in the specification or variations thereof.  And every

12  independent claim in this patent uses hinge, the word

13  hinge to modify member.  The patentee deliberately used

14  the word hinge to modify member in every independent

15  claim.

16          And this slide illustrates that, No. 36,

17  Your Honor.  It is a basic rule, of course, of -- of

18  claim construction that claims must be interpret with an

19  eye toward giving effect to all terms in the claim.  And

20  here we simply must give effect, Your Honor, to the

21  important term hinge and not read that out of the claim

22  as -- as Plaintiff would do.

23          The ordinary meaning of the term hinge is

24  known to those with skill in the art, it's well known.

25  It's a joint that allows a swinging motion about a

CLAIM CONSTRUCTION HEARING

 1  single axis, a single axis, and a door is the most

 2  commonly cited example of exactly what that means.

 3  There's an illustration here of how it works in a door

 4  and how it works in a hinge.  There's a single axis

 5  about which a rotation occurs, and the door is a -- is a

 6  great example of that, but the hinge is defined by its

 7  rotation about that single axis and by the swinging

 8  motion that goes along with it.

 9          The specification's description here of how

10  the hinge member operates in the context of this camera

11  clip is consistent with how a hinge actually works.

12  This is to say, Your Honor, that the function of this

13  purported invention here requires the hinge

14  functionality.

15          It defines this as being hingedly attached,

16  the hinge element.  The very object and function of this

17  invention shows that the hinge function is central to

18  the definition, and the Court saw the animation of the

19  way in which this moves from the table to the laptop

20  computer.  The way it works is consistent with a

21  construction that requires taking into account the hinge

22  functionality.

23          We got some other animations, Your Honor,

24  that I think will illustrate this point.

25          Is it possible to animate this?

CLAIM CONSTRUCTION HEARING

1              This shows, Your Honor, where the hinge

2    member is located in the -- in the device that we've

3    been animating and illustrating here.  That's the hinge

4    member there, and it's attached to the support frame,

5    and on top, not part of the invention, rests the -- the

6    camera part of the device.  So that's -- that's where

7    the focus is, Your Honor, is on that hinge member and

8    how we ought to construe that.

9              This compares, Your Honor, the animation

10   we've provided, the Court will see compared to exactly

11   what the function of a hinge is and how a hinge rotates

12   about that one axis of rotation.  The Court will see the

13   door and the hinge on the left and then on the right the

14   camera rotating about the second axis of rotation

15   swinging as a hinge.

16             A hinge is a hinge, Your Honor, and

17   Plaintiff's contradiction -- construction contradicts

18   the plain and ordinary meaning of the term hinge.  That

19   proposed construction by Plaintiff has actually changed.

20   It was one thing in the original brief, and it was

21   something slightly different in the reply.

22             I think that first proposed construction,

23   Your Honor, made clear what the object, what the intent

24   of Plaintiff's construction is, which is really to take

25   this invention beyond what the claims describe, what the

CLAIM CONSTRUCTION HEARING

1   specification taught, which is in every case rotation
2   about a single axis, whether it's the first axis of
3   rotation or the second axis of rotation.  Whether it's a
4   pivot joint, Your Honor, or a hinge joint, it's always
5   one axis of rotation.  I think this shows as much as
6   anything that the original intent here in the
7   constructions advanced by Plaintiff is trying to expand
8   this to broaden this beyond anything the patent ever
9   claim or ever taught.
10          The ordinary meaning of hinge is, in fact, a
11  joint that only permits motion about a single axis and
12  including multiple axes as Plaintiff originally tried to
13  do or perhaps its revised proposed construction would
14  allow contradicts that understanding, effectively
15  erasing hinge from the claims.
16          We did provide examples, Your Honor, of ways
17  in which a full rotation does not in any way address the
18  term hinge in this -- in this term that needs to be
19  construed.  The pin wheel is one, the turn table is
20  another.  The fact that something is joined to something
21  else for rotation in no way describes a hinge.  That is
22  not sufficient and no way gets at the meaning in context
23  in the context of this patent and the claims, and what's
24  taught in the specification, all the intrinsic evidence
25  clearly shows that what's required here is a hinge and

CLAIM CONSTRUCTION HEARING

1   not just something -- some vague reference to rotation.

2   To construe the term that way would create a great deal

3   of unwarranted and unnecessary ambiguity, Your Honor.

4            The argument was made in the briefs, Your

5   Honor, that perhaps what we really have here is an

6   example of a -- you know, a purported inventor being his

7   own lexicographer, and, Your Honor, just to be clear,

8   that case law does not -- does not allow, as Plaintiff

9   would do here, the patentee to take and try to define a

10  term such as hinge, which is commonly known and

11  understood and has an ordinary meaning, and define it in

12  a way that is inconsistent with -- not just inconsistent

13  but completely fundamentally compatible with the term

14  hinge by excluding that from the definition.

15           The Eon case is a recent case, Your Honor,

16  that was decided by -- by this Court in which I think

17  similar relationships were raised, and as there, here,

18  no clear definition of hinge is provided that would

19  suggest that it means anything other than what the claim

20  asserts and what the specification teaches, which is the

21  working of a hinge.

22           The facts here are that every use of hinge

23  member in the claims in the specification is consistent

24  with the ordinary understanding of exactly what a hinge

25  is and how it operates.

CLAIM CONSTRUCTION HEARING

1              There is a claim differentiation argument

2    that I think was alluded to, as well, Your Honor, and it

3    is that, you know, there's a difference between

4    rotatably attached and hingedly attached.  Hinges

5    rotate; pivots rotate.  There's no fundamental

6    inconsistency between rotatable attachment in the

7    working of a hinge.  The question is how that happens,

8    and I think the discussion about rotatable attachment

9    will speak to that.

10             But, you know, the point we want to stress,

11   Your Honor, in every instance where hinge or hingedly

12   attached is used to describe how an object is joined at

13   the hinge member, the object is simultaneously described

14   as being able to rotate about a second axis.  That's --

15   there's rotation here, but it's rotation as a hinge

16   rotates.

17             And hinge member, I'll just emphasize this

18   point again and rest with this, must require, Your

19   Honor, some acknowledgement that the hinge member is

20   going to involve the workings, the operations, and the

21   term hinge and not to define that term in a way that

22   excludes and in no way acknowledges the term hinge would

23   be fundamentally wrong, Your Honor.

24             THE COURT:  Well, what about their argument

25   that Figure 4 and you're reading out Claim 8, you're not

1  providing for the possibility that a hinge member

2  includes a pivot element, pivot element 80, what about

3  that?

4           MR. ZARIAN:  I think that relies on their

5  understanding that our construction of rotatably

6  attached is somehow fundamentally inconsistent with the

7  workings of a hinge, and I think we argue, Your Honor,

8  is that -- that hinges rotate, as well.  They rotate

9  about a single axis, and a swinging motion is rotation

10 about an axis of rotation.

11          I think that's -- I heard that argument that

12 was made, but I don't understand it, Your Honor.  I

13 don't think we read out any preferred embodiment here.

14 All we're saying is that, moreover, Your Honor, whether

15 or not there's a pivot function allowed for at the top

16 where the cam -- webcam attaches, there must be a hinge,

17 and that's exactly what the preferred embodiment shows.

18 There's a hinge at the bottom which rotates about the

19 second and allows the rotation of the support frame

20 about the second axis of rotation.

21          So -- so there must be a hinge and the hinge

22 member, and whether or not there's also a pivot function

23 or, again, I think perhaps what they're alluding to is

24 some -- they're relying on what they think we take

25 rotatably attached to mean and somehow that

CLAIM CONSTRUCTION HEARING

1  excluding hinge -- that's not correct, Your Honor.

2  That's not our view of that.  Hinges do rotate.

3          THE COURT:  Okay.  Well, go to, I guess,

4  Claim 19.  What's the difference between hingedly

5  attached in the way you're describing it and rotatably

6  attached and the way you're describing it?

7          MR. ZARIAN:  Your Honor, we wrestled with

8  this question, too.  In all candor, this is the only

9  claim in which that distinction is made.  All of the

10 other independent claims use rotatably attached both in

11 the first element and in the second element, and there's

12 a difference in the language there.  We've cited cases

13 that -- that teach, Your Honor, that the fact that, you

14 know, there's different wording doesn't necessarily mean

15 that there's a different definition in terms of the

16 scope of the claim.

17         And maybe more to the point, you know, with

18 respect to whether or not that excludes or includes

19 certain matters in terms of how we define hinge, I mean,

20 this maybe goes more to the question of rotatably

21 attached.  They made a claim differentiation argument

22 with respect to rotatably attached on this point.  But

23 with respect to the definition of hinge, Your Honor, I

24 don't believe this has any impact on the proper

25 definition, which must -- must mean hinged member in

CLAIM CONSTRUCTION HEARING

1  particular must include and account for the presence of

2  a hinge.  That's our point with respect to hinge member.

3        This is the point perhaps that goes a little

4  bit more to -- and I think they've used it to argue for

5  their construction of rotatably attached, and I do want

6  to address that, Your Honor.  With respect to hinge

7  member, Your Honor, that's -- that's our particular

8  focus.  It's a very discreet element.  It's a very

9  commonly understood term.  Under all the circumstances,

10 the teachings, and the claims as specifically set forth,

11 what we're saying is a hinge is a hinge, and whatever

12 definition or construction the Court settles on must

13 include and not exclude a hinge.  That's our position,

14 Your Honor.

15        THE COURT:  Okay.  Well, all right.  Okay.

16 Rotatably attached, then, or any response to hinge

17 member, brief response if you desire.

18        MR. EDMONDS:  We -- we will take the Court's

19 comment brief -- brevity here.

20        So -- and what I heard counsel say was, and

21 I think it's telling, in every case it's one axis, and

22 I -- and I think that's -- their argument -- the

23 language they're proposing for the Court is to say that

24 the claims are limited to that, and that's just simply

25 not what the language of the claim says.  That's just an

```
 1   extra limitation, restriction they're trying to build in
 2   there.
 3              And I think there's -- you know, there's a
 4   difference, as the Court is well aware, between a
 5   preferred embodiment and what's claimed.  And what's
 6   claimed is rotatable attachment, and the Court asked the
 7   right question.  What's the difference between rotatable
 8   attachment, and what's the difference -- and hinged
 9   attachment?
10              A similar question would be what's the
11   difference between a pivot element and a -- and a hinge
12   element.  Clearly, those things are different.  And
13   rotatably attached, as we pointed out in our brief, is
14   broader than a hinge joint.  There are -- there are
15   pivot joints, there are ball and socket joints, there
16   are saddle joints, there are all kinds of joints that
17   provide for rotatable attachment.  And the restriction
18   that the -- yeah, that the Defendants are trying to do
19   is to try to say that -- that rotatable attachment is to
20   be read out of the claims.
21              Those are our -- go ahead, Your Honor.
22              THE COURT:  Okay.  Well, I guess my
23   overall -- overall question is -- I just want to ask you
24   again.  You've mentioned this, but the concern that you
25   are reading hinge out of the claim, it's there, it's, I
```

CLAIM CONSTRUCTION HEARING

1   think, a well-understood term.

2          Now, it says that -- Claim 1 says, a hinge

3   member adapted to be rotatably attached to the camera.

4   So I'm not so sure that that rotatably attached term

5   means that it's not a hinge.  It's adapted to be

6   rotatably attached.  Then it goes on to say that the

7   support frame is rotatably attached.

8          Now, their position, as I understand it, I

9   think, is that, well, hinge, rotatably on the hinge --

10  it's rotating on the hinge.  On that -- I think the

11  hinge and single axis go together.  When you've got a

12  hinge, they're saying you got one axis.  They're saying

13  we can't go beyond that to ball and -- ball and socket

14  joint, that kind of thing, because then you're getting

15  away from hinge.  You're now rotating on different axes.

16         I mean, it all goes back to hinge, and my

17  concern is, is that, as the Court, am I just changing

18  hinge, which is definitely there, it's not only in the

19  spec, it's in the claim itself, into something that, you

20  know, without a -- I don't think there's anywhere you

21  can point to where the intrinsic record says, hinge

22  member here or hinge includes this, this, this and this.

23         You're kind of trying to cobble together

24  from rotatably attached and -- and these sorts of things

25  that, well, it could be more than just solely a hinge.

1           I guess, give me your best argument as to

2    why the Court departs from, you know, hinge when that's

3    clearly the word used here and enlarges it to other

4    possibilities.

5           MR. EDMONDS:  Yes, Your Honor.  To us, the

6    answer, Your Honor, is that the patentee used the word

7    hinge member.  They didn't use the word hinge.  They

8    didn't use the word hinge joint.  The word hinge joint

9    is not used in the patent at all.  And what we see here

10   with the preferred embodiment is -- and -- and -- and

11   that at a minimum, a hinge member needs to have -- the

12   rotatable attachment you're talking to -- and you say it

13   doesn't say that in the patent.  It does.  It says,

14   specifically in a preferred embodiment, that hinge

15   member 16 has pivot element 80 and hinge element -- I

16   think it's 78 or 82.

17          So what -- what they're doing is -- and what

18   the Court asked me is -- my question is what about pivot

19   element 80?  We can't read that out of the -- it's --

20          THE COURT:  Okay.

21          MR. EDMONDS:  Yes.

22          THE COURT:  Tell me what pivot Element 80

23   does.

24          MR. EDMONDS:  It -- okay.  A pivot, Your

25   Honor -- and I guess the best way to frame it would be

 1  when a basketball player pivots, so you don't travel,

 2  you pivot on your foot.  That's -- that's a pivot, okay?

 3  So -- and -- and just like the record player, it -- it's

 4  a spin.  It's not a hinge.

 5          THE COURT:  Well, it's almost like what

 6  we're talking about here are two different things.  I

 7  think they're saying, we don't think the hinge member

 8  you're talking about does -- has anything to do with the

 9  pivoting of the camera.

10          MR. EDMONDS:  Yeah, but hinge member 16

11  includes pivot element 80 by --

12          THE COURT:  Let me stop you.

13          MR. EDMONDS:  Yes.

14          THE COURT:  Do you -- Mr. Zarian, do you

15  agree with that, that pivot element 80 is included in

16  hinge member 16, or are they two different things?

17          MR. ZARIAN:  The pivot element is simply

18  where there's a -- the webcam and the hinge member meet.

19  The point at which they attach I think is what's

20  described by -- by number 80 on that figure.

21          THE COURT:  But so in answer to my question,

22  it's not part of hinge -- the hinge member is the

23  Defendants' position?

24          MR. ZARIAN:  I think that -- I think the

25  hinge member has to allow for -- in fairness, it has to

```
 1  allow for a pivot element to be attached there.  But,

 2  no, the device that's described is specifically the

 3  member.  And what's described to rotate, I think, is

 4  pretty clearly is the webcam that rotates at that point,

 5  whereas, the support frame, which is part of the device,

 6  rotates.  That's part -- that is part of the -- of the

 7  invention -- of the alleged invention.

 8             THE COURT:  Okay.  Well, I guess -- okay.

 9  Let's say it's got this pivot which allows the camera to

10  rotate, but I think their point is, is that your

11  definition of hinge member does not require a hinge,

12  which I think they're saying is required in its

13  attachment to the support frame; is that correct?

14             MR. ZARIAN:  Absolutely, Your Honor, it must

15  have the hinge.

16             THE COURT:  So what about -- let's go away

17  from the 80, the camera attachment, the part that

18  attaches the camera to the support frame, which I think

19  they're saying shows this sort of back and forth action,

20  a hinge on one axis.  I mean, why can we -- why can the

21  Court not incorporate that into the definition of hinge

22  member?

23             MR. EDMONDS:  So -- and as I understand the

24  Court, right, I understood them to say that pivot --

25  that a hinge member couldn't have a pivot element.  Now
```

CLAIM CONSTRUCTION HEARING

1  they're saying it can, but it also has to have this

2  hinge element, and I think the Court's question is why

3  doesn't it have to have a hinge element?

4          THE COURT:  Why doesn't it have to have a

5  hinge element?

6          MR. EDMONDS:  Right.  And -- and the answer

7  is that Claim 19 requires hinged attachment.  The other

8  claims do not, and, in addition, Claims 8 and 17 require

9  a hinge element, and the other claims do not.

10          And the -- the -- what we see is that

11  rotatable attachment is, again, broader than hinged

12  attachment.  There are all kinds of rotatable

13  attachments, and if the Court was to restrict it that

14  way, then it's an undue restriction on the claims and

15  hinged attachment becomes meaningless and hinge element

16  becomes meaningless, and that's improper claim

17  construction.  And I -- and I think the key to

18  understanding it is that the patentee didn't -- they

19  said, hinge member.  That's not a word in the art.

20  That's the word the patentee made up.  And he didn't

21  say, hinge joint, like the Defendants keep saying.

22          So what we know from looking at the claims

23  and the structure of the claims is that a hinge member

24  doesn't have to have a hinged attachment and that a

25  hinge member does not have to have a hinge element.  All

CLAIM CONSTRUCTION HEARING

1   that's really required in Claim 1, Claim 10, Claim 20,

2   the other independent claims is it has to be rotatable

3   attachment.  That's all that the claims require.

4           THE COURT:  Okay.  Now, so what I'm

5   understanding you to say is, is that this hinge member,

6   this rotatable attachment to this support frame, I guess

7   it's like you say, it could be -- the attachment could

8   result in not only -- it doesn't have to be a hinge

9   joint, it could be a ball joint, it could be some --

10  some sort of attachment that allows rotation in some

11  fashion?

12          MR. EDMONDS:  Rotatable attachment means

13  rotatable attachment.  It's that simple.  And had the

14  patentee not used hinged attachment, we might be having

15  a different conversation.  But hinged attachment, I --

16  what I heard counsel say and I think it's correct, they

17  said that a -- a hinged attachment is a type of

18  rotatable attachment.  We agree.  But there are other

19  types rotatable attachments, too, and the claims don't

20  limit themselves, except for Claim 19, to any particular

21  type of rotatable attachment.

22          THE COURT:  Okay.  Anything else on this?

23          MR. EDMONDS:  I think that sums it up, Your

24  Honor.  Thank you.

25          THE COURT:  Okay.  All right.  Are we moving

CLAIM CONSTRUCTION HEARING

1    to -- is the next thing to do is rotatably attached?

2             MR. ZARIAN:  We're prepared to address that,

3    Your Honor.

4             THE COURT:  Okay.  Mr. Edmonds, have you

5    addressed rotatably attached?

6             MR. EDMONDS:  I -- have I addressed theirs?

7    No, I was -- I was responding to hinge member.

8             THE COURT:  Go ahead and move to rotatably

9    attached, and that may raise some issues I might have

10   with regard to -- I think they're really, you know, kind

11   of arguing the same thing here, but if there's something

12   specific you want to present on rotatably attached, go

13   ahead.

14            MR. EDMONDS:  Yes, Your Honor.  I think that

15   the rotatably attached, the difference between the

16   parties is that they're saying it's limited to one axis

17   of rotation, and that's just simply not what the claims

18   say.

19            What the claims require to infringe the

20   claim, you have to have rotatable attachment in one

21   axis, you have to have rotatably attachment in a second

22   axis.  That's required to infringe the claim.

23            But what they're saying is that you -- you

24   can only have rotatable attachment in one axis.  And

25   there's nowhere that the patent says that.  There's

1  nowhere in the spec, there's nowhere in the claims that

2  say that.  So the question is are we going to limit

3  what's claimed here to the preferred embodiment?  The

4  preferred embodiment has a pivot joint.  The preferred

5  embodiment has a hinge joint on one end, a pivot joint

6  on the other end.  Both of those, fair enough, are --

7  are rotating in one axis.

8         But it's -- as Phillips says, you're not

9  limited to the preferred embodiment.  And the question

10 of whether somebody is limited to the preferred

11 embodiment, if somebody went around saying, the claimed

12 invention, the claimed invention, this is what the

13 claimed invention is, sometimes that happens, and the

14 Courts say, you know, you just -- you just said

15 that's the claimed invention.  That's all you're going

16 to get.

17        That's not how this patent was written.

18 They're referred to as the preferred embodiments, and

19 then, of course, at -- at the end, it made -- to the

20 extent it's not -- it wasn't clear at the end of the

21 patent, the specification says that we're not limited to

22 the preferred embodiment.  We're not intending to limit

23 this to the preferred embodiments.

24        And the case law we cited to the Court says

25 exactly that, that if the patentees are not limited to

CLAIM CONSTRUCTION HEARING

1  the preferred embodiment, there has to be a special case

2  in which they be limited to the preferred embodiment.

3  Here they're not, and this is very much on point to the

4  case we cited to the Court.  It's very much on point to

5  Phillips for that matter.

6            But I think that's -- that's the issue,

7  and -- and with the webcam we have, I think it

8  illustrates the point.  This -- this webcam, as we can

9  see, it rotates in an axis.  So what -- what the

10 Plaintiff would say is you have an axis of rotation

11 here, you have another axis of rotation that is

12 perpendicular to it, and we say it infringes.

13           What the Defendants say is maybe it does

14 that, maybe it doesn't, but they say but it also moves

15 in other directions, and because it does more than what

16 the claim requires, it doesn't infringe.  The word

17 comprising is including but not limited to.

18           So the only way their argument works is if

19 the claim -- if the Court follows their admonition and

20 restricts the claim to mean that you can only do what --

21 what the claim absolutely requires.  You can't do

22 anything else.  So, for example, we have a car with head

23 lamps, they'd say, this claim is to a car.  If you put

24 head lamps on the car, it doesn't infringe because

25 you're limited to a car.

CLAIM CONSTRUCTION HEARING

1          THE COURT:  Okay.  All right.  Response?

2          MR. ZARIAN:  Thank you, Your Honor.  A

3  couple of quick points, then I'd like to move to the

4  presentation.  But just -- just to distinguish, Your

5  Honor, between the discussion we had about hinge member

6  and rotatably attached, our point with respect to hinge

7  member, and I think the fundamental difference between

8  parties, is that we -- we submit that whatever else the

9  hinge member does, it could have 20 attachments, it's

10 got to have a hinge.  There's got to be a hinge on the

11 hinge member, and if it doesn't, it's got to have a

12 hinge member.  That's -- that's our construction that

13 we've advanced.  It requires a hinge joint.  It's as if

14 the claim required head lamps on a car and there were no

15 head lamps.  That's where they're taking this claim in

16 terms of an attempt to broaden it.

17          The issue with respect to rotatable

18 attachment does turn on -- on the construction -- the

19 difference with the two constructions.  Defendants

20 submit that rotation about an axis means rotation about

21 an axis.  There must be a single axis.  That's all the

22 patent teaches, that's all that's disclosed, and there's

23 no teaching or any suggestion of any kind in terms of

24 these claims and this specification of this patent of

25 anything else.

CLAIM CONSTRUCTION HEARING

1           Now, much has been made about the fact that
2    there's a reference at one point to a pivot joint.  One
3    thing that needs to be clarified, Your Honor, a pivot
4    joint still rotates about a single axis.  It's -- you
5    know, it's the spinning at the top.  It spins about a
6    single axis.  That's what a pivot does.  The hinge joint
7    also pivots about a single axis.
8           I mean, we've seen suggestions here, even in
9    oral argument, about ball joint and saddle joints, and
10   there's just absolutely nothing, nothing at all in this
11   patent that would disclose any kind of a device that
12   incorporates that kind of functionality.  That's not
13   what was claimed, and that's not what was taught by
14   these patents.
15          These patents have a physical meaning, and
16   our -- our construction is faithful to -- to what was
17   disclosed and what was claimed in this patent.  There
18   was an argument made in the papers, Your Honor, about,
19   you know, this being a disclaimer perhaps or disclaimer
20   issue, and there is no disclaimer here.  So just to be
21   clear, Your Honor, we've not argued a disclaimer, but,
22   you know, in terms of the other point made in the reply,
23   there's not teaching that rotation was restricted to a
24   single axis.  In fact, that's not correct.  The only
25   teaching here is about rotation about a single axis.

CLAIM CONSTRUCTION HEARING

1              I'm going to get later in the argument, Your
2    Honor, to the issue that was made about comprising,
3    but -- but to move ahead to that, Your Honor, what
4    they'd like to do is reach down in the claims and be
5    able to take out the limitation to rotation about a
6    single axis.  That's -- that's not permitted, and that's
7    not what the construction ought to allow here.
8              As used in this claim -- in these claims and
9    as taught in the specification, the term describes a
10   specific type of rotatable attachment, and, Your Honor,
11   in every case -- in every single case, that is, it shows
12   and describes and claims rotation about one axis, one
13   axis of rotation.
14             The -- we've included some of the authority
15   we had in our briefs, Your Honor, but we don't rely on
16   disclaimer, and we instead seek to give rotatable
17   attachment its ordinary meaning in the context of the
18   claims and in the context of the specification.  And the
19   intrinsic record here is completely consistent with our
20   construction and inconsistent with any reading that
21   would allow for all these exotic other types of joints
22   not taught and not claimed in the patent.
23             In this case, wherever the term rotatably
24   attached is used to describe how two objects are
25   connected, they're always described, always, as moving

CLAIM CONSTRUCTION HEARING

1   about a single axis.  The 21 claims here described

2   objects that are rotatably attached, again, in every

3   single case moving about a single axis of rotation, no

4   deviation from that.

5          The rotatable -- rotatably attached, as used

6   here, whenever that term is used to describe how objects

7   are connected, always describe as moving about a single

8   axis.  Here we have some language in the specification,

9   and here we show the rotation above that -- about that

10  vertical axis.

11          THE COURT:  Well, let me ask you this, I

12  mean -- I mean, the camera is not necessarily always

13  going to be sitting like this.  I mean, if the camera

14  goes forward or back, I mean, that's not the same axis,

15  that's a different axis, and wouldn't the camera go to

16  rotate around that axis?

17          MR. ZARIAN:  Well, we don't think that's

18  what the -- what the patent teaches or discloses or

19  explains.  It talks about the two axes.  I think at one

20  point it refers to them as generally perpendicular, and

21  there's a -- even counsel here today referred to a

22  horizontal axis and a vertical axis.

23          I mean, what is -- what is shown, what is

24  taught, and what is claimed is -- is an axis about which

25  there is rotation and another axis, a second axis about

CLAIM CONSTRUCTION HEARING

1  which there is also rotation.  In each case, the

2  rotation is about a single axis, and there's nothing

3  else taught in this patent and nothing else claimed,

4  Your Honor.  We think that to try to broaden the claim

5  beyond that is -- is improper and should not be

6  permitted.

7           The -- you know, we've got a few more slides

8  on this, but not to belabor the point, but, again,

9  whether it's pivoting that takes place as shown here or,

10  you know, the rotation is about the second axis, in

11  every instance, it's about a single axis of rotation.

12  We've animated to illustrate, you know, how that

13  occurs, and maybe we can play this for the Court in

14  terms of one illustration of this rotatable attachment,

15  again, about a single axis.  That's what the claims

16  speak to and what the patent teaches is -- is rotation

17  about a single axis.  Here we see the rotation about the

18  second axis.

19           THE COURT:  Yeah, I mean, I get that.  I

20  think the only way, though, that you get that out of

21  this claim is -- and this is a question I'm going to

22  have for the Plaintiff is, is that it says that the

23  first axis and second axis are general -- generally

24  perpendicular.

25           I mean, I think the second axis is always

 1  going to be essentially horizontal.  I guess my question

 2  would be when the thing pivots, you know, maybe that's

 3  still generally perpendicular.  I'm not sure I'm getting

 4  why that when it says first axis, that means it is just

 5  set in stone, you know, one axis, you know.  I mean, I

 6  don't know why it can't pivot even in the way you're

 7  describing it.  I think they would dispute even that

 8  it's that narrow, the configuration of the camera and

 9  the clip, but why that's restricted to just that

10  one -- one axis.

11          MR. ZARIAN:  Well, Your Honor, in the same

12  way that, you know, the second axis I think is clear and

13  clear to the Court I submitted -- okay.  You know, the

14  second axis is defined not just an axis, but it's the

15  second axis.  The first axis is defined the same way.

16  The camera is said to rotate and claimed to rotate about

17  a first axis of rotation relative to said hinge member.

18  That is language that's used consistently throughout,

19  and I don't think it lends itself to movement or

20  variation or an infinite number of axes or many axes.  I

21  think that's not a fair reading of the language that's

22  used consistently throughout the claims and the

23  specification.

24          THE COURT:  But isn't the first

25  distinguishing it from the second?  I mean, I'm not sure

CLAIM CONSTRUCTION HEARING

1  that first means locked in, that's the only one we're

2  referring to, but it's an axis that's different from the

3  second.

4           MR. ZARIAN:  And I think Ms. Lu would like

5  to address if it please the Court.

6           THE COURT:  Okay.  Go ahead.  Briefly, and

7  then I want to go to the Plaintiff.

8           MS. LU:  Yes, Your Honor, just to clarify, I

9  think we're all talking kind of about the same thing,

10  but there is a little point of semantic difference here.

11           So there -- the term that we're talking

12  about here is rotatably attached.  That phrase describes

13  how two things are connected together.  Now, once these

14  two things are connected together, they may permissibly

15  move in a certain way.  But essentially what we're

16  talking about is the type of attachment.  Now, we're not

17  talking about what the word rotate means in the

18  abstract.  If we go back into the claims here,

19  Subparagraph 1 of Claim 1 describing the hinge member,

20  it says that the hinge member is adapted to be rotatably

21  attached to the camera, and then when it is so attached,

22  it rotates about an axis.

23           And what Defendants are trying to say here

24  is that when you're rotatably attached, you're -- the

25  motion that's permitted by that type of attachment is

CLAIM CONSTRUCTION HEARING

1   rotation about an axis.

2           Now, Plaintiff will make an argument here

3   like, well, there's a first axis, and there's a second

4   axis, and there may be different axes, but if

5   Plaintiff's construction is -- the way that Plaintiff

6   seems to be making their argument is that it should also

7   include different types of joints, like ball joints,

8   Your Honor, motion about a ball joint is motion about

9   a spherical plane around a point around a center.

10  That's -- there's no axis.  Defendants are just saying,

11  as in the claims, that when you have a rotatable

12  attachment, you move about an axis.  You can have

13  different things attached --

14          THE COURT:  Well, I think that -- I think

15  that the claim talks about rotating about a first axis.

16  I think you've said an axis.  That's different from a --

17  one axis.  Now, I'm not sure the Plaintiff can get away

18  from the fact, even though they've defined rotatably

19  attached without reference to an axis, that it says

20  rotating about a first axis.  So I would -- they're

21  going to have to deal with that.  I'm not sure -- I

22  mean, their argument as to ball and joint, you know, I

23  mean, we're going to have to look at that and reconcile

24  that with -- first with axis, which I think is clearly

25  called for in the claim.  But I think an axis is

1    different from one axis.

2            So let me hear from the Plaintiff on this.

3    And I guess let me ask you, Mr. Edmonds, would you have

4    an objection to the rotatably attached term being such

5    that connected such that the connected object --

6    something like this, connected such that the connected

7    object is capable of being rotated around an axis, an

8    axis of rotation or something of that -- along that

9    line?  What I'm saying is drop the one axis, but put

10   axis of rotation or rotated around an axis in there.

11           MR. EDMONDS:  We don't object to that as

12   long as it's not interpreted back as being one.  I mean,

13   that's the point.  And I think that's a point well

14   taken.  But the question is whether that is needed, and

15   when -- and I don't think it fundamentally changes

16   anything, but just in terms of good and correct claim

17   construction, the first axis of rotation and second axis

18   of rotation are already claim limitations.  So whatever

19   infringes has to meet those.  That's not -- we're not

20   trying to read those limitations out of the claim.

21           We're just saying that there's no reason to

22   shoehorn those into rotatably attached.  There are

23   already separate limitations in the claim.

24           THE COURT:  Okay.  Well, let's go to my --

25   my question about this -- this -- that the camera goes

CLAIM CONSTRUCTION HEARING

1   back and forth.  Let's say the camera goes forward.  Is

2   it your position that first axis -- the rotation of the

3   camera is -- is around an axis running through the

4   center of the camera, I guess, is my question?  These

5   axes has to be perpendicular, generally perpendicular,

6   correct?

7              MR. EDMONDS:  The -- the first axis and the

8   second axis do have to be generally perpendicular.

9              THE COURT:  Okay.  Well -- well, their

10  question is it's one axis.  If you -- if you look at

11  this figure -- and what I'm saying is I can see a

12  situation where the thing would go off of that axis

13  slightly but still rotate.  Am I --

14             MR. EDMONDS:  You're absolutely correct,

15  Your Honor.

16             THE COURT:  Okay.  So you're -- that to you

17  would still meet the elements of the claim as being a

18  generally perpendicular axes?

19             MR. EDMONDS:  Yes, Your Honor.

20             THE COURT:  Now, we still have this argument

21  about hinge or what's required there as far as -- I

22  mean, I guess the question is can the camera possibly,

23  as you say, you know, pivot or turn or rotate on a ball

24  joint or -- or something along those lines?  I think

25  that's still, you know, a question, but I'm just trying

CLAIM CONSTRUCTION HEARING

1  to get to this understanding of rotatably attached.

2          You know, I have real concerns -- real

3  questions about defining this term at all.  It seems

4  understandable in and of itself.  The claim language has

5  many of the things that are asked to be placed into the

6  definition.  I have real questions about whether this

7  requires a definition at all.

8          MR. EDMONDS:  The Plaintiff would concur, if

9  the Court says ordinary meaning, we agree, because as I

10  said, the other limitations that they're expressing

11  concerns about are -- and the other structure, the other

12  context is already there in the claim.  We concur.

13          THE COURT:  All right.  I guess let me go

14  back, Mr. Edmonds.  I just want to cover one more thing

15  before we adjourn here.

16          Going back to hinge member for a moment, I

17  guess I want to go back to this Claim 19, hingedly

18  attached and rotatably attached.  I guess this is one of

19  those questions that Courts ask sometimes to Plaintiffs'

20  lawyers, and maybe there's no good -- good answer, but I

21  have a real concern with why the patentee would have

22  used hinge member.  Why not use member, connection, I

23  don't know, any number of different things, because when

24  you say that, well, hingedly is different from

25  rotatably, well, the question then becomes, but you said

CLAIM CONSTRUCTION HEARING

1  hinge member.

2          Now, you got a hinge member that's rotating,

3  and you got a hinge member that's acting on a hinge.  I

4  mean, it's almost like what does it mean if, oh, yeah,

5  now a hinge can rotate, unless it means, as the

6  Defendants seems to be saying, well, yeah, a hinge

7  rotates around, you know, an axis.

8          You know, I just -- I don't really know --

9  it's difficult for the Court to see a path to where you

10  can define hinge member in such a way that doesn't

11  require a hinge. I mean, what you proposed is it just

12  joins to another.  Well, I mean, I think there's got to

13  be some pretty strong support for the idea that, you

14  know, that doesn't need to have an element of a hinge in

15  there.

16          I mean, if you take the shoe on the other

17  foot, you know, if the Defendant were saying, oh, well,

18  this doesn't -- I mean, I see Defendants all the time

19  say, well, even though it says this, we want to define

20  it as this.  And it's like you're doing -- you're doing

21  the same thing here, and I just -- I'm having difficulty

22  with, you know, defining this in -- in a way that does

23  not communicate what it seems is clearly called for.

24  Again, there could have been any number of things used,

25  but there wasn't, there was -- the hinge was used.

CLAIM CONSTRUCTION HEARING

1          MR. EDMONDS:  If anything, Your Honor, and

2    if I may borrow -- and I think we -- we feel our

3    construction is correct, and maybe if Court reflects, it

4    might agree, but if it doesn't, I think that our primary

5    concern with the Defendants' construction is that this

6    reading a hinge joint into it is entirely consistent

7    with a rotatable attachment and a rotatable attachment

8    being different than a hinged attachment.

9          What we see with this webcam is a good

10   example.  There's -- the -- the hinge member here has a

11   hinged attachment, and everybody aggress.  It also has a

12   rotatable attachment that's not a hinge.  I think if the

13   Court felt that it had to impose some hinge-like

14   limitation on it, then the thing would be -- then the

15   thing to do would be to say that the hinge member needs

16   to have at least a pivot element or some kind of hinge

17   to it, but it's not limited to that.  That -- that's the

18   problem.

19          You're saying our construction -- our

20   construction doesn't have a hinge, and we're saying, but

21   their construction excludes rotatable attachment, maybe

22   that's the middle ground the Court may find.

23          THE COURT:  Well, I certainly agree.  This

24   is something I struggled with before the hearing was is

25   this idea that the hinge member is clearly adapted to be

CLAIM CONSTRUCTION HEARING

1   rotatably attached.  So I think there's got to be some,

2   you know, rotatable attachment.  You know, I don't see

3   how that's being -- would be an argument, but it may

4   also need a -- a hinge, a pivot-type of -- hinge-type of

5   joint, but I'm going to look at this and review the

6   briefing and your arguments and reach a conclusion.

7            MR. ZARIAN:  If I can address one very brief

8   point, Your Honor.  With the respect to the last

9   suggestion that was made, a pivot is -- is different

10  from a hinge and -- and just to highlight that point,

11  Your Honor, there's no solution.  It really doesn't fix

12  the problem to define a hinge that pivots any more than

13  it, you know, would be appropriate to exclude -- it

14  still excludes hinge and makes -- and doesn't account

15  any way for hinge.  So we submit, Your Honor, that a

16  hinge is a hinge and requires that the word hinge be

17  accounted for in the construction.

18            THE COURT:  Okay.

19            MR. EDMONDS:  If I may, Your Honor, that's

20  not what I meant to say.  If I said it, I apologize.

21  What I'm saying is on this one, a hinge member does have

22  a pivot element, it does have a hinge to it, but that

23  doesn't mean that it can have another type of rotatable

24  attachment, and that's really where the big problem is,

25  because the preferred embodiment has another type of

 1  rotatable attachment.

 2          THE COURT:  Okay.  Okay.  All right.  Well,

 3  thank you for your arguments.  We'll get you a ruling on

 4  this as soon as we can.

 5          Anything further from the Plaintiff?

 6          MR. EDMONDS:  Thank you, Your Honor.  Thank

 7  you for your indulgence.

 8          THE COURT:  Anything further from the

 9  Defendants?

10          MS. LU:  Just one final comment.  Plaintiff

11  seems to like playing with this camera and saying, look,

12  there's a hinge.  Look, there's something.  And we need

13  not belabor the point, but, Your Honor, when you go back

14  and look at the claims, it states that the hinge member

15  is the piece to which the camera attaches and not to

16  which the support frame attaches.  I would request that

17  Your Honor not give too much credence to the particular

18  ways Plaintiff's hands were manipulating this particular

19  model, and, also, ask yourself if this means anything,

20  what -- what the Plaintiff was doing with this camera,

21  where does the hinge member begin, and where does it

22  end?  Where does the support frame begin, and where does

23  it end?

24          THE COURT:  Okay.

25          MS. LU:  Thank you.

CLAIM CONSTRUCTION HEARING

1          THE COURT:  All right.  Thank you for your
2    arguments, and we're adjourned.
3          COURTROOM CLERK:  All rise.
4          (Hearing concluded.)
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1                           CERTIFICATION

2

3              I HEREBY CERTIFY that the foregoing is a

4    true and correct transcript from the stenographic notes

5    of the proceedings in the above-entitled matter to the

6    best of my ability.

7

8                                                   March 2, 2012

9    _____        _____
     SHELLY HOLMES                   Date
10   Deputy Official Reporter
     State of Texas No.: 7804
11   Expiration Date: 12/31/12

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Job No. 98620