# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| ADJUSTACAM, LLC. § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| vs. § | CASE NO. 6:10-CV-329 | |
| § | PATENT CASE | |
| § | | |
| AMAZON.COM, INC., ET AL. § | | |
| § | | |
| Defendants. § | | |

## MEMORANDUM OPINION AND ORDER

This claim construction opinion construes the disputed terms in U.S. Patent No. 5,855,343 ("the '343 patent"). Plaintiff Adjustacam, LLC ("Adjustacam") and Defendants[1] have presented their claim construction positions. (Doc. Nos. 575, "PL.'S BR.;" 595, "DEF.'S RESP.," 601, "PL.'S REPLY"). On February 9, 2012, the Court held a claim construction hearing and heard further argument (Doc. No. 614). For the reasons stated herein, the Court adopts the constructions set forth below.

## CLAIM CONSTRUCTION PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). The Court examines a patent's intrinsic evidence to define the patented invention's scope. *Id.* at 1313-1314; *Bell Atl. Network Servs., Inc. v. Covad*

---

[1] Amazon.com, Inc., Auditek Corp., Best Buy Co., Inc., Best Buy Stores, LP, Bestbuy.com, CDW LLC, CompUSA.com, Inc., Digital Innovations, LLC, Fry's Electronics, Inc., Gear Head, LLC, Hewlett-Packard Co., Kohls, Corp., Kohl's Illinois, Inc., Micro Electronics, Inc. d/b/a Micro Center, New Compusa Corp., Newegg, Inc., Newegg.com, Inc., Office Depot, Inc., Rosewill Inc., Sakar International, Inc., Systemax, Inc., Target Corp., Tigerdirect, Inc., and Wal-Mart Stores, Inc. are referred to collectively as "Defendants."

*Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  Intrinsic evidence includes the claims, the rest of the specification and the prosecution history. *Phillips*, 415 F.3d at 1312-13; *Bell Atl. Network Servs.*, 262 F.3d at 1267.  The Court gives claim terms their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

Claim language guides the Court's construction of claim terms.  *Phillips*, 415 F.3d at 1314.  "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent."  *Id.*  Differences among claims, such as additional limitations in dependent claims, can provide further guidance.  *Id.*

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id.* (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp.v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex. Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  In the specification, a patentee may define his own terms, give a claim term a different meaning that it would otherwise possess, or disclaim or disavow some claim scope.  *Phillips*, 415 F.3d at 1316.  Although the Court generally presumes terms possess their ordinary meaning, this presumption can be overcome by statements of clear disclaimer.  *See SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343-44 (Fed. Cir. 2001).  This presumption does not arise when the patentee acts as his own

lexicographer. *See Irdeto Access, Inc. v. EchoStar Satellite Corp.*, 383 F.3d 1295, 1301 (Fed. Cir. 2004).

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. For example, "[a] claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct." *Globetrotter Software, Inc. v. Elam Computer Group Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004) (quoting *Vitronics Corp.*, 90 F.3d at 1583). But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed language in the claims, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988); *see also Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patentee may define a term during prosecution of the patent. *Home Diagnostics Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent"). The well established doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). The prosecution history must show that the patentee clearly and unambiguously disclaimed or disavowed the proposed interpretation during prosecution to obtain claim allowance. *Middleton Inc. v. 3M Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002). "Indeed, by distinguishing the claimed invention over the prior art, an applicant is

indicating what the claims do not cover." *Spectrum Int'l v. Sterilite Corp.*, 164 F.3d 1372, 1378-79 (Fed. Cir. 1988) (quotation omitted). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Omega Eng'g, Inc.*, 334 F.3d at 1324.

Although, "less significant than the intrinsic record in determining the legally operative meaning of claim language," the Court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (quotation omitted). Technical dictionaries and treatises may help the Court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but such sources may also provide overly broad definitions or may not be indicative of how terms are used in the patent. *Id.* at 1318. Similarly, expert testimony may aid the Court in determining the particular meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

## DISCUSSION

### A.     Overview of Patents-in-Suit

The '343 patent, entitled "Camera Clip," is directed at a clip for supporting a portable webcam. *See* '343 patent at ABSTRACT. The claimed apparatus is specifically directed to a structure supporting a webcam both on a flat surface, like a tabletop, and on an edge of a housing, like a laptop computer screen. *Id.* at 1:4–9. The camera clip is also intended to protect the camera lens when the clip is not used as support. *Id.* Figures 2 and 4 of the patent illustrate

the two different configurations of the camera clip, *i.e.*, on a flat surface (Fig. 2) and on an inclined object (Fig. 4):



**B.    Disputed Terms**

"Hinge Member" [cls. 1, 8, 10, 17, 19, 20, and 21]:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A structural element that joins to another for rotation | A structural element that may be joined to another so as to form a hinge joint and is capable of rotating on that hinge joint |

The parties generally agree that the "hinge member" is "a structural element that joins to another." The parties, however, disagree whether the hinge member must form a "hinge joint" or can include any form of "joint."

5

Plaintiff's proposed construction evolved over the course of the briefing. Plaintiff ultimately argues that the "hinge member" is not limited to hinge *joints*. Specifically, Plaintiff contends that the claims and specification describe the "hinge member" as both "rotatably attached" and "hingedly attached." Therefore, an object that is "rotatably attached" is necessarily broader than a "hingedly attached" object. PL.'S BR. at 4–8; PL.'S REPLY at 3–4. Plaintiff raises secondary arguments regarding the "rotatably attached" terms and their interplay with the hinge member (*Id*. at 7–8), however, those arguments are discussed in more detail in the section below construing the "rotatably attached" terms.

The claims and the specification of the '343 patent disclose the hinge member as both "rotatably" and "hingedly" attached to another object. For example, claim 1 of the '343 patent describes the support frame as "rotatably attached" to the hinge member. '343 patent at 58–60. On the other hand, claim 19 of the '343 patent describes the support frame as "hingedly attached" to the hinge member. '343 patent at 9:24–26. A plain reading of the claims leads to the conclusion that a rotatable attachment is necessarily broader than a hinged attachment. Therefore, while a hinge member may include hinge joints and hinged attachments, the claims explicitly allow for broader attachments.

The specification, moreover, describes embodiments of the hinge member incorporating the concept of pivots and pivoting. *See, e.g.*, 4:44–48 ("It is recognized that camera 12 may be pivoted to any number of positions about second axis 32 in the direction shown by arrow 34."); 5:37–41 ("A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about first axis 26."). Therefore, Defendants' proposed

construction limiting the hinge member to hinge *joints* would improperly read out the foregoing preferred embodiments. *See Globetrotter Software, Inc.*, 362 F.3d at 1381.

Defendants' proposed construction would also render the "rotatably attached" terms superfluous by limiting all claimed attachments to "hinged" attachments. Such a result is untenable. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1381 (Fed. Cir. 2006) ("[C]laim differentiation takes on relevance in the context of claim construction that would render additional, or different, language in another independent claim superfluous.") (quoting *Fantasy Sports Props. v. Sportsline.com*, 287 F.3d 1108, 1115-16(Fed. Cir. 2002)). Defendants' proposed construction is also unnecessarily permissive because it describes the hinge member as a structural element that *may* be joined to another. Neither the specification nor claims teach a permissive attachment and such a construction would not meaningfully limit the claims.

As Defendants advocate, the claimed "hinge member" indeed may include a hinge joint. However, the claims and the specification disclose that the hinge member is not limited to hinge joints. Had the patentee intended to limit the patent in such a way, he or she: (1) could have simply used the term hinge *joint*, and not the broader term *member*; or (2) would have used "hingedly" to describe all the attachments in the claims. Therefore, the Court construes "hinge member" as "a structural element that joins to another for rotation."

"Rotatably attached / adapted to be rotatably attached / adapted to rotatably attach" [cls. 1, 10, 19, 20, and 21]

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Connected such that the connected object is capable of being rotated | Connected such that the connected object is capable of being adjusted to different configurations via motion over one axis of rotation |

The crux of the parties disagreement is whether the '343 patent claims allow for a "rotatably attached" object to rotate over more than a single axis. Plaintiff contends that "rotatably attached" objects are not limited to one axis of rotation, while Defendants advocate for the contrary.

The Court finds that the claims of the '343 patent describe "rotatably attached" objects as rotating over a single axis. For example, claim 1 explains that when the hinge member is "rotatably attached" to the camera, it rotates "about a first axis of rotation." '343 patent at 6:54–57. Claim 1 further describes that when the hinge member is rotatably attached to the support frame, it rotates "about a second axis of rotation." *Id.* at 6:58–65. In other words, in claim 1, the hinge member may rotate about a single axis relative to the camera and a single axis relative to the support frame, and the two axes are "generally perpendicular" to one another. *Id.* All of the remaining claims that discuss "rotatably attached" objects are consistent with this understanding. *See, e.g.*, '343 patent at 7:60–67 ("[A] hinge member . . . rotatably attached to the camera . . . rotating[] about a first axis of rotation" and "a support frame rotatably attached [to the] hinge member . . . [with] the hinge member rotating about a second axis of rotation to said support frame."); 9:20–32 ("[A] hinge member adapted to be rotatably attached to the camera . . . rotating about a first axis of rotation."); 9:35–47 (same); 10:16–45 (same).

The specification is consistent with the claims in disclosing the camera and support frame rotating over a first and second axis of rotation. *See, e.g.*, 2:12–18 ("The hinge member is rotatably attached to the camera where the camera rotates over a first axis of rotation"); 4:17–19 ("Hinge member 16 is rotatably attached to camera 12, where camera 12 rotates over a first axis 26."). Every reference to a "rotatably attached" object in the specification and claims describes the attachment as permitting motion over a single axis of rotation.

Plaintiff contends that that claims refer to the apparatus as "comprising" a first and second axis of rotation; therefore, Plaintiff argues that the use of "comprising" broadens the claims to allow attachments which rotate over multiple axes. PL.'S BR. at 7. Plaintiff is mistaken. For example, claim 1 recites:

> 1. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:
>   a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and
>   b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame, said first axis of rotation being generally perpendicular to said second axis of rotation, said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object, said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

'343 patent at 6:49–7:6. "Comprising" appears before the individual elements of the claimed camera clip, *i.e.*, the hinge member and support frame. Therefore, the word "comprising" may suggest that other elements exist beyond the *hinge member* and *support frame*. However, the term "comprising" does not render each and every word in the claim open-ended as Plaintiff suggests. Plaintiff's position would render the claim language meaningless.

Plaintiff further contends that the rotatable attachment between the hinge member and the camera is a "pivot joint"; therefore, limiting the rotation about a single axis would exclude a preferred embodiment. PL.'S BR. at 8. Even assuming the specification does disclose a pivot joint, limiting the *rotation* around a single axis would not read out the embodiment. A pivot joint allows for rotation and the specification explicitly describes the "pivot element" as rotating around a *single* axis of rotation. *See, e.g.*, '343 patent at 5:38–41 ("A pivot element 80 at proximal end 76 of body 74 rotatably attaches camera 12 to body 74 so the camera may rotate about *first axis* 26.") (emphasis added).

On the other hand, Defendants' proposed construction merely restates what is already contained in the claims. The claims plainly describe each "rotatably attached" object as rotating about a single axis and any further construction would only serve to confuse the jury. In other words, Defendants' construction merely repeats the claim language. Therefore, the Court finds that the "rotatably attached" terms do not require construction beyond what is contained in the claims. While the Court has not explicitly construed the "rotatably attached" terms, the Court has resolved the parties' dispute regarding the proper scope of the claims, *i.e.*, "rotatably attached" objects in the patent-in-suit are limited to a single axis of rotation. *See O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When

the parties raise an actual dispute regarding the proper scope of the claims, the court, not the jury, must resolve that dispute."). Therefore, the parties may not contradict the Court's resolution of that dispute.

"<u>Support Frame</u>" [cls. 1–8, 10, 11, 13–17, and 19–21]:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| A structural element that supports a hinge member | A physically distinct structural element whose different dispositions enable support of said hinge member |

Plaintiff and Defendants both propose functional constructions to the extent that they agree that the intended purpose of the support frame is to support the hinge member.[2] Indeed, the function of the support frame is explicitly recited in the claims. *See, e.g.*, 6:57–59 ("[A] support frame rotatably attached to said hinge member and configured to support said hinge member."). Defendants, however, argue that the claim language specifically links the ability of the support frame to provide support on particular structural arrangements, specifically the "first disposition" and "second disposition." DEF.'S RESP. at 8. Plaintiff disagrees that the different dispositions enable support of the hinge member and argues that the specification and claims generally provide the relevant structure of the support frame. PL.'S REPLY at 1–2.

The claims of the '343 patent describe two general structural arrangements of the support frame. For example, claim 1 of the '343 patent describes the support frame as supporting the camera on a horizontal surface and an inclined object. '343 patent at 6:58–7:2. The specification is consistent with this understanding of the claims. *See, e.g.*, '343 patent at 2:1–2 ("The clip may be rotated to a first position to support the camera on a surface of a table or desk. The clip may

---

[2] The parties agree that the "support frame" is a "structural element that supports" the claimed hinge member. PL.'S REPLY at 1. While not explicitly contained in Plaintiff's proposed construction, Plaintiff also agrees that the support frame is distinct from and not part of the hinge member. *Id.* Thus, the parties only dispute is related to the whether the support frame is limited to specific structural arrangements, namely, the "different dispositions."

be rotated to a second position to support the camera on a display screen of a laptop computer."); 2:24–26 ("[T]he rear support element and the first and second front support elements support the camera in the first position"); 2:39–41 ("[T]he rear support element and the first and second front support elements support the camera in a second position on the first surface"); 4:48–54 (same); 5:2–14 (same). Therefore, the claims and the specification identify the first and second disposition as particular structural arrangements of the support frame.

Plaintiff and Defendants generally agree that the structure of the support frame is provided in the specification and claims. PL.'S BR. at 10; PL.'S REPLY at 1–2. Plaintiff, however, proposes a construction that ignores the different structural arrangements of the support frame, *i.e.* different dispositions. On the other hand, Defendants' construction unnecessarily requires the actual dispositions of the support frame to functionally provide the support frame its ability to "support." The claims are not limited to the extent that "the different dispositions *enable* support" of the hinge member.

Support frame is an easily understood term and its function and structure are defined in the claims. While the support frame must allow for two structural arrangements as described in the claims, the ability to support the hinge member is not directly linked to the two structural arrangements. As such, the Court finds that "support frame" is sufficiently defined in the claims and no construction is necessary. Nevertheless, the Court has resolved the parties' dispute regarding the scope of the claims. *See O2 Micro*, 521. F.3d at 1360.

"Disposition" [cls. 1, 2, 5, 6, and 10]:

| Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| Plain and ordinary meaning; alternatively, configuration or arrangement | Configuration of the support frame enabling support of the hinge member, accomplished through rotation about the second axis |

Beyond an agreement that a disposition is a "configuration," the parties' proposed constructions wildly diverge. Plaintiff contends that "disposition" is an easily understood term and does not require construction beyond its plain and ordinary meaning. Defendants argue that a "disposition" is a functional configuration of the "support frame" and such function can only be accomplished through rotational motion through the second axis. DEF.'S RESP. at 11–13.

A plain reading of the claims discloses that the support frame has two "dispositions" or configurations, one allowing for the apparatus to be placed on a generally flat surface, the second allowing for the apparatus to be attached to an inclined object. Defendants appear to contend that these "dispositions" may only be functionally accomplished through rotational motion of the support frame about the second axis. DEF.'S RESP. at 12. On the contrary, the claims describe the hinge member, not the support frame, as rotating about the second axis. *See, e.g.*, '343 patent at 6:60–61 ("[S]aid hinge member rotating about a second axis of rotation."). Further, the first clause of Defendants' proposed construction is merely a second bite at the same argument they advanced in construing "support frame." The claims, however, do not require the specific *dispositions* of the support frame to enable support of the hinge member.

Defendants appear to be masquerading a noninfringement position as an issue of claim construction by injecting rotation into an easily understood structural term. Accordingly, the Court construes "disposition" as "a configuration or arrangement of the support frame."

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table as Appendix A.

**So ORDERED and SIGNED this 10th day of April, 2012.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

## APPENDIX A

| Claim Term | Court's Construction |
|---|---|
| Hinge member | a structural element that joins to another for construction |
| Rotatably attached / adapted to be rotatably attached / adapted to rotatably attach | No construction necessary, sufficiently defined in the claims; subject to the Court's resolution of the scope of the claims |
| Support Frame | No construction necessary, sufficiently defined in the claims; subject to the Court's resolution of the scope of the claims |
| Disposition | a configuration or arrangement of the support frame |