IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ADJUSTACAM LLC | |
| v. | NO. 6:10-cv-329-LED |
| AMAZON.COM, INC., ET AL. | JURY |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE LOVE'S CLAIM CONSTRUCTION ORDER**

Plaintiff AdjustaCam LLC ("AdjustaCam"), respectfully responds to Defendants' objections to Magistrate Judge Love's Claim Construction Order (Doc No. 632), as follows:

**I.    INTRODUCTION.**

Magistrate Judge Love issued a Memorandum Opinion and Order Regarding Claim Construction (Doc. No. 627) (the "Opinion") on April 10, 2012. Ex. 1.[1] The Magistrate Judge correctly ruled that "disposition" is "a configuration or arrangement of the support frame." *Id.*, p. 13.[2] Defendants' do not appear to dispute the correctness of "configuration or arrangement." In fact, their new, untimely "alternative" proposed construction of "disposition" comprises "configuration or arrangement." Objections at p. 8. Fundamentally, Defendants are merely attempting to slip in an extra claim limitation under the guise of "context" and providing "guidance."  As the Magistrate correctly observed, "Defendants appear to be masquerading a noninfringement position as an issue of claim construction." Ex. 1, p. 13.

---

[1] AdjustaCam's opening Markman Brief is at Doc. No. 575, and AdjustaCam's Reply Markman Brief is at Doc. No. 601.  Both are respectfully incorporated herein to the extent the Court deems them helpful in resolving these objections.

[2] Although AdjustaCam contends that the Magistrate correctly construed "disposition," separately AdjustaCam has objected to the Magistrate's construction, findings and statements with respect to the "rotatably attached terms." Doc No. 629.

1

In rejecting the Defendants' construction of "disposition," the Magistrate wrote as follows:

> Defendants argue that a "disposition" is a functional configuration of the "support frame" and such function can only be accomplished through rotational motion through the second axis. DEF.'S RESP. at 11–13.
>
> A plain reading of the claims discloses that the support frame has two "dispositions" or configurations, one allowing for the apparatus to be placed on a generally flat surface, the second allowing for the apparatus to be attached to an inclined object. Defendants appear to contend that these "dispositions" may only be functionally accomplished through rotational motion of the support frame about the second axis. DEF.'S RESP. at 12. On the contrary, the claims describe the hinge member, not the support frame, as rotating about the second axis. See, e.g., '343 patent at 6:60–61 ("[S]aid hinge member rotating about a second axis of rotation."). Further, the first clause of Defendants' proposed construction is merely a second bite at the same argument they advanced in construing "support frame."[3] The claims, however, do not require the specific dispositions of the support frame to enable support of the hinge member.
>
> Defendants appear to be masquerading a noninfringement position as an issue of claim construction by injecting rotation into an easily understood structural term. Accordingly, the Court construes "disposition" as "a configuration or arrangement of the support frame."

Ex. 1, p. 13.

## II.  TECHNOLOGY AT ISSUE

Plaintiff is the owner of U.S. Patent No. 5,855,343 (the "'343 patent") entitled "Camera clip." Apparatuses which comprise camera clips are often referred to as webcams. The '343 patent generally relates to a novel adjustable camera clip comprising one disposition on a generally horizontal, planar surface (*e.g.*, a table top), and another disposition on an inclined object (*e.g.*, the screen of a laptop computer). Exemplary Fig. 2 shows a preferred embodiment webcam in a first disposition on a table top, and exemplary Fig. 4 shows the same webcam in a second disposition when attached to the laptop screen, as follows:

---

[3] In their *Markman* briefing, Defendants contended that "support frame" should be construed as "[a] physically distinct structural element whose different dispositions enable support of said hinge member." In his *Markman* Order, the Magistrate rejected the Defendants proposed construction of "support frame." Ex. 1, pp. 11-12. However, Defendants have not appealed/objected to the Magistrate's construction of "support frame."



The independent claims of the '343 patent are claims 1, 10, 19, 20 and 21. Exemplary claim 1 covers an apparatus comprising a hinge member rotatably attached to a camera, a support frame rotatably attached to the hinge member, the support frame having a first disposition on a surface and a second disposition on an inclined object.[4] To help the Court better envision claim 1, the following color-coded chart compares claim 1 to certain preferred embodiments disclosed in the '343 patent:



1. Apparatus for supporting a camera, having a lens, on any generally horizontal, substantially planar surface and on an object having a first surface and a second surface and an edge intersecting the first surface and the second surface, comprising:
a. a hinge member adapted to be rotatably attached to the camera, said camera, when the hinge member is so attached, rotating, about a first axis of rotation, relative to said hinge member; and
b. a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object, said hinge member rotating about a second axis of rotation relative to said support frame,
said first axis of rotation being generally perpendicular to said second axis of rotation,
said second axis of rotation being substantially parallel to the first surface when said hinge member is supported on the object,
said support frame having a first disposition positioned on said generally horizontal, substantially planar surface,

---
[4] Exhibit 2 hereto is the '343 patent. Although the prosecution history of the '343 patent was not relied on with regard to the subject matter of the present motion, in the interest of completeness it is included as Exhibit 3 hereto.

3

and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation, the camera being maintained adjacent said edge in said second disposition of said support frame.

The term "disposition" is in independent claims 1 and 10, and in dependent claims 2, 5, 6, 14, 15 and 16.  The main difference between independent claims 1 and 10 is that the support frame of claim 10 has the additional limitations of a "rear support element," a "first front support element," and "second front support element."  Claims 1 and 10 have similar provisions relative to "disposition" with claim 1 stating in pertinent part as follows:

> . . . said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation . . .

and claim 10 stating in pertinent part as follows:

> said support frame having a first disposition positioned on said generally horizontal, substantially planar surface when said rear support element and said first and second front support elements are engaging said generally horizontal, substantially planar surface, said support frame having a second disposition attached to the object when the first surface is inclined from a substantially horizontal position . . .

The word "disposition" is not used in the specification, although the exemplary camera clips in Figs. 1 – 4 clearly have different dispositions.  Instead of using the word "disposition," the specification uses its synonym "position."  The specification refers to a "first position, a "second position," "first position 44,"[5] and "second position 52."[6]

## III.   APPLICABLE LEGAL PRINCIPLES

---

[5] *E.g.*, "In the preferred embodiment, when support frame 18 is in the first position 44, the object may be a top of a table and first surface 36 may be a top surface of the table."
[6] *E.g.*, "Second position 52 corresponds to first surface 54 being inclined from the substantially level position (see also, FIG. 2)."

Claim construction is a matter of law.[7] The court "indulge[s] a heavy presumption that claim terms carry their full ordinary and customary meaning unless the patentee unequivocally imparted a novel meaning to those terms or expressly relinquished claim scope during prosecution."[8] Claim terms are interpreted from the point of view of a person of ordinary skill in the art who "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."[9] However, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

Intrinsic evidence includes the claims, written description, drawings, and the prosecution history."[10] A disputed term should be construed by first examining the intrinsic evidence of record from the perspective of one skilled in the relevant art. *Id.* at 1313-14. "The claims themselves provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1314. Extrinsic evidence (such as Defendants "big sticky ball" argument addressed below) is less significant than the intrinsic record in determining the legally operative meaning of the claim language. *Id.* Where the ordinary meaning can be ascertained from the intrinsic evidence, a court does not have to evaluate extrinsic evidence. *Id.*

Although the specification is relevant to interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally

---

[7] *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996).
[8] *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).
[9] *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).
[10] *Teleflex Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002).

be read into the claims.[11] As the Federal Circuit has held, "[o]ne of the cardinal sins of patent law [is] reading a limitation from the written description into the claims."[12]

The Magistrate's Opinion is not dispositive of the parties' claims, and therefore, the question before the Court is whether it is "clearly erroneous or contrary to law."[13] Here, claim construction is a legal conclusion. The District Judge reviews the Magistrate Judge's legal conclusions *de novo* (reviews his factual findings for clear error).[14]

## IV.   THE MAGISTRATE JUDGE CORRECTLY CONSTRUED "DISPOSITION."

The Magistrate correctly ruled that "disposition" is "a configuration or arrangement of the support frame." Disposition is not a complicated word or technical jargon. Disposition is merely the act of being disposed, which equates with "configuration," "arrangement" or "positioning." The '343 patent describes and claims that the support frame has at least one disposition/configuration/arrangement when positioned on a surface (*e.g.*, "first position 44"), and at least another disposition/configuration when positioned on an inclined object (*e.g.*, second position 52).[15] Further, both independent claims 1 and 10 comprise a support frame having "a first disposition positioned on said generally horizontal, substantially planar surface" and a "second disposition attached to the object" when the object is inclined. Exemplary dispositions are shown at Figs. 2 and 4.

Defendants' proposed construction seeks to import at least two inappropriate limitations into the simple term "disposition." Defendants improperly seek to require that the configuration of the support frame (1) must be the thing that enables support of the hinge member; and that this

---

[11] *Comark Comms., Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998); *see also Phillips*, 415 F.3d at 1323.
[12] *Phillips*, 415 F.3d at 1319-20.
[13] FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A); *see also Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992).
[14] *See Lahr v. Fulbright & Jaworski*, 164 F.R.D. 204, 209 (N.D. Tex. 1996).
[15] *See, e.g.,* Ex. 2 at 2:1-4; 2:24-29; 2:34-37; 2:66-3:4; 3:39-43; 3:63-65; 4:27-30; 4:49-54; 5:2-6; 5:33-37.

(2) must be "accomplished through rotation about the second axis." However, the versatile "disposition" of the support frame claimed in the '343 patent involves the support frame having a first disposition when positioned on a generally horizontal, substantially planar surface, and a second disposition when supported on an object.[16] There is no requirement in the specification[17] or the claims that the configuration the "support frame" must be the thing that "enables" support of the hinge member, or that any such thing must be "accomplished" through rotation about the second axis. For example, a camera may be supported merely by virtue of being rotabably attached to the support frame. In fact, neither the word "enable" nor any of its derivations are present in the specification or claims.

The support frame's support of the hinge member is already addressed elsewhere in the claims. Separately from the term "disposition," independent claims 1, 10, 20, 21 and 22 comprise a support frame "configured to support" the hinge member on a "surface" and an "object," and independent claim 19 comprises a support frame which "engagingly supports" the hinge member on a "surface" and on an "object."

The term "disposition" is not in independent claims 19, 20 and 21, yet each of claims 19, 20 and 21 (like claims 1 and 10) have a support frame which supports a hinge member. Claim 19 comprises "a support frame hingedly attached to said hinge member to engagingly support said hinge member . . ." Claims 20 and 21 each comprises "a support frame rotatably attached to said hinge member and configured to support said hinge member . . ." If the configuration of the support frame enabled support of a hinge member then the word "disposition" would have to

---

[16] The '343 patent uses the words "position" and "disposition" interchangeably.
[17] None of the descriptions of preferred embodiments mention configuration of the support frame enabling support of the hinge member, or that such a thing would be "accomplished through rotation about the second axis." *See, e.g.,* 2:1-4; 2:24-29; 2:34-37; 2:66-3:4; 3:39-43; 3:63-65; 4:27-30; 4:49-54; 5:2-6; 5:33-37. Further, even if either restriction was consistent with a preferred embodiment, which is not apparent, it would be improper to limit the claimed invention to a preferred embodiment.

been included in claims 19, 20 and 21. As the Magistrate recognized, this extra limitation was manufactured by Defendants to improperly advance a noninfringement position. It is not supported by the specification or claims.

Further, there is no requirement in the claims or preferred embodiments that "disposition" of the support frame must be "accomplished through rotation about the second axis." In fact, there is no requirement that the support frame rotate about any axis in order to have a disposition. This includes because claims 1 and 10 each states that the *hinge member* rotates about a second axis relative to the support frame. As the Magistrate correctly observed,

> On the contrary, the claims describe the hinge member, not the support frame, as rotating about the second axis. *See, e.g.*, '343 patent at 6:60–61 ("[S]aid hinge member rotating about a second axis of rotation.").

Ex. 1, p. 13.[18]

Defendants' allege that the claim language and specification "make clear that 'dispositions' in the claimed invention are the result of rotation of the 'hinge member" about the 'second axis' relative to the 'support frame.'" To the contrary, the pertinent language of claim 1 is "said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined from a generally horizontal orientation." The language of claim 10 is similar, except that it also includes the rear support element, first front support element, and second front support element.[19] Thus, as noted above, the "dispositions" in claims 1 and 10 (and their dependent claims) are not the result of the hinge

---

[18] For the same reason, Defendants' argument at p. 9 of their Objections that "in any 'disposition,' the only rotational mobility of the "support frame" described in the claims is rotation about the 'second axis'" is erroneous.
[19] Claim 10 states in pertinent part that, "said support frame having a first disposition positioned on said generally horizontal, substantially planar surface when said rear support element and said first and second front support elements are engaging said generally horizontal, substantially planar surface, said support frame having a second disposition attached to the object when the first surface is inclined from a substantially horizontal position so that an uppermost extremity of the object is the edge ."

member moving about a second axis relative to the support frame. For example, a support frame has a disposition or configuration without there being any movement of the hinge member. Again, as the Magistrate correctly noted, "the claims describe the hinge member, not the support frame, as rotating about the second axis." Ex. 1, p. 13.

Defendants argue that the claims "describe only one structural relationship rending the 'support frame' adjustable, and that is the capability of rotation of the 'hinge" member and the "support" frame about the recited 'second axis.'" Objections at p. 9. However, Defendants fail to understand that the structural relationship between the support frame and the hinge member is addressed elsewhere in the claims. It should not be properly addressed in the construction of the word "disposition." Without limitation, exemplary claim 1 describes that there is "a support frame rotatably attached to said hinge member and configured to support said hinge member on the surface and the object," and how the hinge member "rotat[es] about a second axis of rotation relative to said support frame." This is separate and apart from "said support frame having a first disposition positioned on said generally horizontal, substantially planar surface, and said support frame having a second disposition attached to the object when said first surface and said second surface are inclined. . ." Thus, Defendants' "context of the claim" or "structure of the claim" argument is meritless. The claim limitations that are structurally or functionally related to "support frame" and "disposition" are already present in the claims, so it would be improper to pile on extra limitations into "disposition" under the guise of "context" or "structure of the claim."

Further, on the issue of rotation, the claims set forth the clear structural and functional relationship between the various elements. For example, in exemplary claim 1, it is clear from the straightforward claim language that the support frame is "rotatably attached to said hinge

9

member and configured to support said hinge member on the surface and the object," and that "said hinge member rotat[es] about a second axis of rotation relative to said support frame," *and* that "said support frame ha[s] a first disposition positioned on said generally horizontal, substantially planar surface," and "said support frame ha[s] a second disposition attached to the object . . ." In pertinent part, this is all that is required to infringe claim 1, and it is very straightforward. There is no requirement in the claims, or for that matter, in the specification – although it would be improper to limit the claims to a preferred embodiment – that the "disposition" of the support frame must be "accomplished through rotation about the second axis." Again, under the ruse of "context," Defendants seek to create a claim limitation out of whole cloth and to pile it on top of a straightforward term, thus attempting to improperly narrow the claims from their straightforward language. As the Magistrate recognized, "Defendants' proposed construction is merely a second bite at the same argument they advanced in construing 'support frame.' The claims, however, do not require the specific dispositions of the support frame to enable support of the hinge member."

Likewise, Defendants argument that the Magistrate's construction of disposition "provides no guidance to the trier of fact what a 'disposition' might mean in the context of the '343 patent" also lacks merit. This argument lacks merit because the term "disposition" is easily understandable by a lay juror, because the Magistrate's construction does provide guidance, and because the other language in the claims provides ample context of what "disposition" means. In fact, it is easily understandable by a lay juror that (using exemplary claim 1 as a guide), a support frame has a first disposition positioned on a surface, and a second disposition attached to an object. *See, e.g.,* Ex. 2, claim 1 & Figs. 2 and 4.

**V.  DEFENDANTS' "BIG STICKY BALL" ARGUMENT LACKS MERIT.**

Defendants "big sticky ball" argument is a straw man that they have built in order to tear it down. Defendants state that "cameras attached to such a moldable ball are problematic"; however, a camera attached to a moldable ball never existed until Defendants' created one using clay for the purpose of building their straw man.

Defendants seem to suggest that Plaintiff would accuse of infringement a camera built atop a "big sticky ball", or that somehow this embodiment would fall under the claims, without any support whatsoever.

Defendants' "big sticky ball" argument is so absurd and unsupported that they fail to state which part of the "big sticky ball" would qualify as a "hinge member," which part would qualify as a "support frame," how a "big sticky ball" could meet the "rotatably attached" limitation, or how a "big sticky ball" could "rotate" in a "second axis of rotation" substantially parallel to a surface and "generally perpendicular" to a first axis of rotation. *See* Ex. 2, claims 1 & 11. Although a "big sticky ball," like many things, can have different "configurations," it otherwise seems to have nothing to do with the claimed invention.

Defendants argue that their "big sticky ball" example "demonstrates the clear danger of divorcing 'disposition' from the rotational claim language." However, have failed to explain how this example "demonstrates" any such thing. If anything, a "big sticky ball" lacks the "rotatably attached" limitation that is present in the claims as a separate limitation. It does not support Defendants' incorrect construction of "disposition." Rather, it demonstrates how there are many more claim limitations besides "disposition" and that each claim limitation, such as "rotatably attached," must be considered in the context of the entire claim, without piling extra unwarranted limitations into the term "disposition."

## VI. DEFENDANTS' PROPOSED ALTERNATIVE CONSTRUCTION IS UNTIMELY, IMPROPER AT THIS JUNCTURE, AND HAS BEEN WAIVED.

**EVEN HAD IT BEEN TIMELY, DEFENDANTS' PROPOSED ALTERNATIVE IS NONETHLESS ERRONEOUS.**

In their Objections to the Magistrate's *Markman* Order, Defendants propose a new, alternative construction for "disposition."[20] By not advancing or disclosing this proposed construction as required by the Court's Scheduling Order, any error in the Magistrate not adopting this untimely proposed construction has been waived.[21]

Irrespective of the forgoing, Defendants' proposed alternative construction of "disposition" is improper. At least tacitly acknowledging that their "enabling support of the hinge member" is unsupported and unlikely to prevail, Defendants purport to alternatively seek a construction with just the "accomplished through rotation about the second axis" added in. However, as noted in Section IV above, "accomplished through rogation about the second axis" is not a proper limitation for this term.

## VII. CONCLUSION

For the reasons stated herein and in its prior *Markman* briefing, Plaintiff AdjustaCam respectfully submits that Defendants' objections to Magistrate Judge Love's construction of "disposition" should be overruled. AdjustaCam also requests such other relief to which it may be justly entitled.

May 7, 2012                                                                 Respectfully submitted,

By: /s/ *John J. Edmonds*
John J. Edmonds – LEAD COUNSEL
Texas State Bar No. 789758
Michael J. Collins
Texas Bar No. 4614510
Stephen F. Schlather
Texas Bar No. 24007993
COLLINS, EDMONDS &

---

[20] For their alternative construction, Defendants' propose the following: "a configuration or arrangement of the support frame accomplished through rotation about the second axis." Objections at p. 8.
[21] *See, e.g., Interactive Gift Express, Inc. v. Compuserve Inc.,* 256 F.3d 1323, 1347, (Fed. Cir. 2001).

>POGORZELSKI, PLLC
>1616 S. Voss Rd., Suite 125
>Houston, Texas 77057
>Telephone: (713) 501-3425
>Facsimile: (832) 415-2535
>jedmonds@cepiplaw.com
>mcollins@cepiplaw.com
>sschlather@cepiplaw.com
>
>Andrew W. Spangler
>Texas Bar No. 24041960
>Spangler Law P.C.
>208 N. Green Street, Suite 300
>Longview, Texas 75601
>(903) 753-9300
>(903) 553-0403 (fax)
>spangler@spanglerlawpc.com
>
>ATTORNEYS FOR PLAINTIFF
>ADJUSTACAM LLC

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with this filing via the Court's CM/ECF system and/or email per Local Rule CV-5(a)(3).

May 7, 2012                                  /s/ *John J. Edmonds*
                                             John J. Edmonds