# EXHIBIT C

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE EASTERN DISTRICT OF TEXAS

 3                      TYLER DIVISION

 4

   ADJUSTACAM, LLC,                        )
 5                                         )
                  Plaintiff,               )
 6                                         ) CIVIL ACTION
   vs.                                     ) NO.
 7                                         ) 6:10-CV-329-LED
   AMAZON.COM, INC., ET AL,                )
 8                                         )
                  Defendants.              )
 9

10    *****************************************************

11                   ORAL DEPOSITION OF

12                     CLAYTON HAYNES

13    (DESIGNATED HIGHLY CONFIDENTIAL ATTORNEYS EYES ONLY)

14                    August 30th, 2012

15    *****************************************************

16            ANSWERS AND DEPOSITION of CLAYTON HAYNES,

17    taken at the instance of the Defendants, on the 30th

18    day of August AD 2012 in the above styled and numbered

19    cause at the offices of United American Reporting

20    Services, Inc., 1201 Elm Street, Suite 5220 in Dallas,

21    Dallas County, Texas, before David B. Jackson, RDR, a

22    Certified Shorthand Reporter in and for the State of

23    Texas, pursuant to the Federal Rules of Civil Procedure

24    and the provisions stated on the record.

25
```

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 84

1    connection with litigation?

2        A.    I was -- I'm sorry.

3               MR. EDMONDS:  Go ahead.

4        A.    I would need to take a look at it to refresh

5    my memory.

6        Q.    (BY MR. HEBERHOLZ)  Okay.  Aside from the

7    Chicony settlement agreement, are you aware of any

8    other settlement agreements involving AdjustaCam or

9    license agreements that were negotiated outside of

10   litigation?

11       A.    Well, again, in connection with my preparation

12   I didn't seek to separate them out between the two, so

13   I -- in order to -- to address your question I would

14   need to thumb through the agreements to see.  I just

15   didn't make mental note of whether they were broken out

16   between settlement versus license or either.

17       Q.    You said that AdjustaCam engages in licensing,

18   enforcement and protection from unauthorized use of its

19   intellectual property; is that right?

20       A.    I believe that's how I described its business.

21       Q.    Okay.  Let's talk about enforcement.  Does

22   enforcement mean litigation?

23       A.    Again, I'm not an attorney.  I believe one

24   aspect of enforcement is -- is that you may be required

25   to -- to file litigation with respect to alleged

Page 85

1    infringement.

2        Q.    Has AdjustaCam taken any enforce- --

3    enforcement actions with regard to the '343 Patent or

4    any patents that don't involve litigation?

5                MR. EDMONDS:  Objection, scope.

6        A.    Again, all those types of matters are handled

7    by external counsel, so I don't believe I can testify

8    with respect to an answer to that question.

9        Q.    (BY MR. HEBERHOLZ)  And you also mentioned

10   protecting from unauthorized use of its intellectual

11   property.  Can you give me an example of a time when

12   AdjustaCam has taken efforts to protect the '343 Patent

13   from unauthorized use that did not involve litigation?

14       A.    Again, those matters are handled by external

15   counsel and I didn't undertake, you know, a search for

16   information with respect to the answer to that

17   question.

18       Q.    When we were looking through the AdjustaCam

19   settlement agreements today, Mr. Haynes, there were a

20   number of officers of AdjustaCam that signed those

21   agreements.  Do you recall that generally?

22       A.    I do.

23       Q.    Okay.  I have listed a Paul Ryan as being a

24   CEO of AdjustaCam.  Dooyong Lee also being a CEO of

25   AdjustaCam.  I have you signing agreements as the chief

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 86

 1    financial officer of AdjustaCam.  And then I saw at

 2    least one of the agreements where Mr. Harris signed as

 3    the president of AdjustaCam.

 4              Aside from those four individuals, are

 5    you aware of any other individuals that have served as

 6    an officer of AdjustaCam?

 7        A.   I'm not aware of any other individuals.

 8        Q.   I believe this morning you testified that

 9    AdjustaCam does not have a research and development

10    facility.

11        A.   Correct.

12        Q.   Does AdjustaCam have any plans to build a

13    research and development facility?

14        A.   Not to my knowledge.

15        Q.   Does AdjustaCam have any plans to design

16    products?

17        A.   Not to my knowledge.

18        Q.   Does AdjustaCam have any plans to sell

19    products?

20        A.   Not to my knowledge.

21        Q.   Does AdjustaCam employ any engineers?

22        A.   AdjustaCam does not.

23        Q.   AdjustaCam's office you said was in Frisco,

24    Texas?

25        A.   I believe so.

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 87

1     Q.   Is there any equipment in that office?

2   Computers, for example?

3              MR. EDMONDS:  What topic is that under,

4   counsel?

5              MR. HEBERHOLZ:  That's topic number 18.

6              MR. EDMONDS:  Of what equipment they have

7   in their office?

8              MR. HEBERHOLZ:  Yeah.  All business they

9   conduct.

10             MR. EDMONDS:  Don't answer that.

11             MR. HEBERHOLZ:  Are you instructing him

12   not to answer?

13             MR. EDMONDS:  Yes, I am.

14             MR. HEBERHOLZ:  Again?

15             MR. EDMONDS:  Yes, I am.

16    Q.   (BY MR. HEBERHOLZ)  Are you going to follow

17   your counsel's instructions?

18    A.   Yes, I am.

19    Q.   Okay.  So you're not going to tell me how many

20   computers are in AdjustaCam's office.  How many desks

21   are in that office?

22             MR. EDMONDS:  Same thing.  It's not under

23   a topic.  If you can point to a topic, we'll reconsider

24   it, but it's not --

25             MR. HEBERHOLZ:  I pointed to topic number

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 88

1    18.

2         Q.    (BY MR. HEBERHOLZ)   Do you have an AdjustaCam

3    business card?

4         A.    I'm sorry.  Do --

5         Q.    Do you have an AdjustaCam business card?

6         A.    Do I have one?

7         Q.    Yes.

8         A.    I do not.

9         Q.    Are you aware of anybody that has a business

10   card from AdjustaCam?

11               MR. EDMONDS:   Objection, scope.

12        A.    I don't know whether somebody does or does

13   not.

14        Q.    (BY MR. HEBERHOLZ)   Are there any AdjustaCam

15   e-mail addresses?  For example,

16   claytonhaynes@adjustacam.com?

17               MR. EDMONDS:   Objection, scope.

18        A.    I'm not aware of any e-mail addresses that

19   either do or do not exist.

20               MR. HEBERHOLZ:   I'm going to pass the

21   witness.  Ezra, do you have any questions?

22               MR. SUTTON:   Hold on one second.  Just

23   take a two minute break.  I just want to go over my

24   notes.

25               MR. EDMONDS:   Okay.

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 101

1    AdjustaCam review the complaint before it was filed

2    with the Court?

3              MR. EDMONDS:  Objection, scope.

4         A.   I believe that was asked earlier today and

5    I'll refer back to my initial testimony.

6         Q.   (BY MR. SUTTON)  Well, it's a simple yes or

7    no.  Could you just repeat it?  Give your answer, I

8    mean?

9              MR. EDMONDS:  Objection, scope.

10        A.   I did not review the complaint and I don't

11   know to what extent anybody did or did not at

12   AdjustaCam, as it was handled by outside counsel.

13        Q.   (BY MR. SUTTON)  And I'm sorry, I know Dana

14   asked you this question before, but how many people are

15   at AdjustaCam?

16        A.   AdjustaCam does not have any employees.

17        Q.   Are you an employee?

18        A.   Of?

19        Q.   AdjustaCam?

20        A.   AdjustaCam does not have any employees.

21        Q.   So who is your employer?

22        A.   I'm employed by Acacia Research Group LLC.

23        Q.   Can you explain how AdjustaCam operates

24   without any people working for it?

25              MR. EDMONDS:  Objection, scope.

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 102

1      A.    Sure.   Is there a particular topic that that

2   falls under?

3      Q.    (BY MR. SUTTON)  I don't know.  If you don't

4   want -- if you can't answer the question or don't want

5   to answer the question I guess you could say that on

6   the record, but I think it's a pretty straight forward

7   and simple question about AdjustaCam, the party who is

8   the plaintiff in this case.  Are you refusing to answer

9   or you don't know?  What's -- what -- what do you want

10  to say?

11            MR. EDMONDS:   Objection, scope.

12  Objection to the form of whatever that question was.

13     A.    Okay.  So if you can do me a favor and just

14  restate the question for me.

15     Q.    (BY MR. SUTTON)  If AdjustaCam has no

16  employees how does it operate?

17            MR. EDMONDS:   Objection, scope.

18     A.    AdjustaCam receives employee services from

19  Acacia Research Group LLC.

20     Q.    What does that mean?

21     A.    It means -- it means that there are employees

22  of Acacia Research Group LLC that provides services to

23  AdjustaCam.

24     Q.    Who are those employees of Acacia?

25     A.    It's Acacia Research Group LLC is the entity

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 103

1   that I identified.

2     Q.   Yes.  And who are the employees that provide

3   services to AdjustaCam?

4     A.   Well, I -- I believe I mentioned earlier a

5   Steve Wong is an employee of Acacia Research Group LLC

6   that has provided services to AdjustaCam.  I'm also an

7   employee of Acacia Research Group LLC and I have

8   provided services to AdjustaCam.

9     Q.   Anyone else?

10    A.   There are individuals that have executed

11  agreements, AdjustaCam agreements.  Namely, Paul Ryan,

12  Chip Harris and Dooyong Lee who have provided services

13  to AdjustaCam.

14             MR. SUTTON:  I'm sorry, I didn't get

15  those names.  Can the reporter read them back to me

16  with the correct spellings?

17             (Record read back.)

18             MR. SUTTON:  Okay.  I got Paul Ryan.  Who

19  was the next person?

20             THE REPORTER:  Chip Harris.

21             MR. SUTTON:  Chip Harris.  And who else?

22  Was there anyone else?  In his answer did you get any

23  other names?

24             THE REPORTER:  Are we off the record?  I

25  can't write and answer questions.

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 104

1          MR. SUTTON:  Oh, I'm sorry.  Was there

2    anyone else in his answer besides Young Lee?

3          MR. EDMONDS:  Why don't you just ask

4    witness?  Our court reporter is getting a little

5    frustrated here.

6      Q.   (BY MR. SUTTON)  All right.  Mr. Haynes, the

7    court reporter mentioned Paul Ryan, Chip Harris and

8    Young Lee; is that correct?

9      A.   The last individual's name is Dooyong Lee.

10   D-o-o-y-o-n-g, Lee, L-e-e.

11     Q.   Okay.  Was there anyone else that you

12   mentioned?

13     A.   No.

14     Q.   So now who -- who at Acacia signed the

15   settlement agreements for AdjustaCam?

16     A.   There are -- and -- and again, just to be

17   specific, I indicated that the employee services

18   company is Acacia Research Group LLC, and so

19   individuals that have executed agreements for

20   AdjustaCam are myself, Paul Ryan, Chip Harris and

21   Dooyong Lee.

22     Q.   And if I -- tell me if I'm wrong, but my

23   understanding is though that the settlement agreements

24   that you looked today -- looked at today were signed by

25   the party AdjustaCam, correct?

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 105

1      A.    A number of the agreements today had as a

2   party to the agreements, AdjustaCam LLC.  AdjustaCam

3   LLC.

4      Q.    I'm sorry?

5      A.    A number of the agreements that I believe we

6   looked at on the record today, one the parties to those

7   agreements was AdjustaCam LLC.

8      Q.    And -- and am I correct that the signatory box

9   was signed on behalf of AdjustaCam LLC, correct?

10     A.    Based on my recollection, I believe that's

11  correct.

12     Q.    And some of the individuals that you just

13  mentioned that executed those agreements in the box     

14  that said AdjustaCam LLC, they were employees of Acacia

15  Research LLC, correct?

16     A.    Acacia Research Group LLC, correct.          

17     Q.    Is that correct?

18     A.    With the correction that it's Acacia Research

19  Group LLC.

20     Q.    All right.  Let me repeat the question.

21          Some of the people that you've mentioned

22  earlier signed the settlement agreements on behalf of

23  AdjustaCam, but they were employees of Acacia Research

24  Group LLC, correct?

25     A.    Those individuals executed agreements on

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 108

```
 1      Q.   And where do you get your authority to sign a

 2   settlement agreement on behalf of AdjustaCam LLC?

 3              MR. EDMONDS:  Objection, scope.

 4   Objection, form.

 5      A.   Well, again, I'm not an attorney and I'm

 6   certainly not a corporate attorney.  But I'm an officer

 7   of AdjustaCam LLC.

 8      Q.   (BY MR. SUTTON)  But you get no payments for

 9   performing those functions -- any functions for

10   AdjustaCam LLC -- AdjustaCam LLC; is that correct?

11      A.   Correct.

12      Q.   And is that -- is that also true of Paul Ryan,

13   that he does not get any payments from AdjustaCam LLC

14   although he's an officer of AdjustaCam LLC?

15              MR. EDMONDS:  Objection, scope.

16      A.   Yes.

17      Q.   (BY MR. SUTTON)  And is that also true of

18   Dooyong Lee, that he performs functions for AdjustaCam

19   LLC and does not get any payment for them?

20              MR. EDMONDS:  Objection, scope.

21      A.   I'm sorry, any -- I'm sorry.  Does not get any

22   payment from AdjustaCam LLC?  Is that your question?

23      Q.   (BY MR. SUTTON)  Yes.

24      A.   Correct.  Correct.

25      Q.   So let me go back and rephrase a question I
```

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 109

1    asked you earlier, because I didn't realize the

2    relationship between those persons that we've been

3    talking about.

4              Did you or any of the persons that we've

5    just been talking about review the complaint in this

6    case before it was filed with the Court?

7              MR. EDMONDS:  Objection, scope.

8    Objection, form.

9    A.    I did not review the complaint and I don't

10   know to what extent any of the other individuals did or

11   did not review the complaint.

12   Q.    (BY MR. SUTTON)  Well, do you have any

13   knowledge that Mr. Ryan reviewed the complaint before

14   it was filed with the Court?

15             MR. EDMONDS:  Objection, scope.

16   A.    I do not know whether he did or did not review

17   the complaint prior to filing.

18   Q.    (BY MR. SUTTON)  Okay.  But sitting here

19   today, you don't have any knowledge that he reviewed

20   the complaint before it was filed with the Court?

21             MR. EDMONDS:  Objection, scope.

22   A.    Correct.  I don't have any knowledge whether

23   he did or did not.

24   Q.    (BY MR. SUTTON)  And with regard to

25   Mr. Dooyong Lee, do you have any knowledge as to

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 112

1          MR. EDMONDS:  Objection, scope.

2     A.   Just -- just to be clear, I'm -- you know, I

3 believe I'm testifying on behalf of AdjustaCam.  But

4 I'm sorry, can you repeat that last question?

5     Q.   (BY MR. SUTTON)  Okay.  You're testifying on

6 behalf of AdjustaCam, but you have also testified

7 earlier that -- that you are -- you and these other

8 gentlemen are -- are employees of Acacia Research

9 Group, correct?

10    A.   Acacia Research Group LLC is the entity.

11    Q.   What's the answer to the question?

12         MR. EDMONDS:  Objection, scope.

13    A.   Well, I was just clarifying that -- that I

14 testified that we were employees of Acacia Research

15 Group LLC.

16    Q.   (BY MR. SUTTON)  My question was, did any of

17 you participate in gathering evidence regarding the

18 accused products included in this complaint?

19         MR. EDMONDS:  Objection, scope.

20    A.   I'm sorry, the phrase "any of you," I --

21    Q.   (BY MR. SUTTON)  Do you want me to repeat the

22 names for you?  I can do it.

23    A.   Or just clarify who you're referring to.

24    Q.   Okay.  Did you or Mr. Ryan or Mr. Harris or

25 Mr. Lee participate in gathering evidence on the

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 117

1     just mentioned earlier?

2                 MR. EDMONDS:  Objection, scope.  Can you

3     read back his last answer, please.

4                 (Record read back.)

5        Q.   (BY MR. SUTTON)  Okay.  But my question was,

6     do you have any knowledge as a result of your dealings

7     with AdjustaCam and Acacia as to what -- what -- what

8     products were investigated and looked at prior to the

9     filing of the lawsuit?

10                MR. EDMONDS:  Objection, scope.

11       A.   Yeah, the extent of AdjustaCam's knowledge is

12    that, as I testified earlier, that pre-suit

13    investigation was handled by outside counsel.  And then

14    I testified to the products that I was prepared to

15    speak to today at today's deposition.

16       Q.   (BY MR. SUTTON)  Okay.  But my question is --

17    had to do with your knowledge separate and apart from

18    your specific preparation for today's deposition.

19                Do you have any knowledge from the last

20    three years of your involvement with -- well, let me go

21    back.

22                How long have you been involved with

23    AdjustaCam and Acacia?

24       A.   I'm sorry, could you clarify what you mean by

25    "Acacia."

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 118

1      Q.    Acacia Research Group LLC.

2      A.    I believe I've been involved since the

3  inception of both entities.

4      Q.    What date are we talking about?

5      A.    Without the books and records, I -- I can't

6  sit here today -- sitting here today, I can't tell you

7  the dates that they were formed.

8      Q.    I'm not asking you the date they were formed.

9  I'm asking you the date that you were involved with

10  them -- yeah, what date were you involved with them?

11            MR. EDMONDS:  Objection, form.

12      A.    Well, I believe that I've been involved with

13  those two entities since -- since they were formed.

14      Q.    (BY MR. SUTTON)  That's what you said before,

15  so now I asked you for:  When did you become involved

16  with those two entities?

17      A.    I guess beginning on the date that they were

18  formed.

19      Q.    Okay.  So what is your knowledge that you

20  became involved with them?

21            MR. EDMONDS:  You're just asking for his

22  personal knowledge, not as part of the notice?

23            MR. SUTTON:  Of course.  I mean he has

24  personal knowledge sitting here.  Yes.  The answer is

25  yes, of course I'm asking about his personal knowledge.

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 119

1          MR. EDMONDS:  Well, he was not noticed in

2    his individual capacity, Mr. Sutton.  You need to

3    confine your questions to what's included in the 30(b)6

4    notice.

5          Q.   (BY MR. SUTTON)  I'm asking, Mr. Haynes, when

6    did you become involved with Acacia Research Group LLC

7    and with AdjustaCam LLC?

8          A.   Are you looking for a date?

9          Q.   Yes.

10         A.   Okay.  And I believe I testified earlier that

11   without the books and records, I can't tell you a date

12   when those entities were formed.

13         Q.   I didn't ask you when they were formed.  I

14   asked you when you became involved with them?

15         A.   And I believe my testimony earlier was that

16   I've been involved with them since they were formed.

17         Q.   I understand.

18         A.   However --

19         Q.   But now I'm asking you been when did you

20   become involved with them -- your own personal

21   knowledge as to when you started working for them or

22   becoming involved with them?

23         A.   I do not know the date, sitting here today.

24         Q.   Do you have an approximate date?

25         A.   It's not one of the things I prepared to

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 120

1    testify about today, and so sitting here today, I do

2    not know the date.

3        Q.    Do you have an approximate year?

4        A.    I don't want to speculate without looking at

5    the books and records.

6        Q.    I'm not asking you to speculate.  I'm asking

7    you if you have any personal knowledge of when you

8    became involved with the Acacia Research Group and

9    AdjustaCam?

10                   MR. EDMONDS:  Objection, form.

11       A.    Yeah, without the books and records I do not

12   recall the dates that those two entities were formed.

13       Q.    (BY MR. SUTTON)  I didn't ask you for the

14   dates that they were formed.  I asked you when you

15   started becoming involved with them and working for

16   them?

17       A.    Without the books and records, I -- I do not

18   know when I first began to be involved with those two

19   entities except to say that I've been involved since

20   the inception of both of those entities.

21       Q.    Were you involved with Acacia and AdjustaCam

22   since -- since prior to the filing of this lawsuit in

23   July 2010?

24       A.    Yes, I've been involved since inception of

25   those two entities.

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 121

```
 1      Q.   Why do you change my question?  That's not
 2   what I asked you.
 3      A.   That's --
 4           MR. EDMONDS:  That's not a question.
 5      Q.   (BY MR. SUTTON)  I asked you a very specific
 6   question.  Were you involved with those entities at the
 7   time of the filing of this lawsuit in July 2010?
 8      A.   Yes.  Yes.
 9      Q.   And with regard to Acacia, how -- about how
10   long prior to that were you involved with Acacia?
11           MR. EDMONDS:  Objection, form.
12      A.   How long -- how long prior to what, sir?
13      Q.   (BY MR. SUTTON)  July 2010.
14      A.   And what entity are you referring to when you
15   say "Acacia"?
16      Q.   Acacia Research Group LLC.
17      A.   I believe my previous testimony was that I do
18   not recall the date that it was formed.  And so since I
19   don't know that date, I can't tell you how long.
20           In an effort to be helpful, I've been
21   involved with Acacia Research Group since inception,
22   but I do not know that date.
23      Q.   Was it in 2010 or 2009?
24      A.   I do not know the date.
25      Q.   You have no idea what year it was that you
```

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 122

1   became involved with Acacia Group Research (sic) LLC?

2       A.   I don't want to speculate without the books

3   and records.  And that's not one thing I prepared to be

4   able to testify about today.

5       Q.   Well, on the topics today, topic number 22 is

6   all facts and circumstances relating to any financial

7   arrangements that AdjustaCam has with Acacia.  Are

8   you -- did you prepare for that answer?

9       A.   I believe so, yes.

10      Q.   Okay.  So when were the first financial

11  arrangements that you're aware of between AdjustaCam

12  and Acacia Research Group LLC?

13      A.   Well, AdjustaCam LLC is a wholly owned

14  subsidiary of Acacia Research Group LLC.

15      Q.   Is that the answer to the question?

16      A.   I do not recall the date that AdjustaCam was

17  formed, sitting here today.

18      Q.   Okay.  Topic number 22 says -- I'll read it

19  again.  All facts and circumstances relating to any

20  financial arrangements that AdjustaCam has with Acacia.

21  Did you review any records to answer that question?

22      A.   Yes, I believe I did.

23      Q.   What did you review?

24      A.   Well, I'm sorry, let me clarify.  I -- I

25  believe that I considered the topic, and based on the

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 123

```
 1    topic, I believe that I came prepared to discuss that

 2    topic today.

 3        Q.   I asked you what did you review?

 4        A.   Well, I -- I wanted to clarify that I didn't

 5    necessarily review a specific document.

 6        Q.   Did you review any documents in preparation of

 7    that answer?

 8        A.   I don't believe I did.

 9        Q.   So you failed to prepare or review any

10    documents in response to topic number 22?

11              MR. EDMONDS:  Objection, form.

12        A.   I believe I prepared to come and testify with

13    respect to topic number 22.

14        Q.   (BY MR. SUTTON)  You cut out there.  I'm

15    sorry?

16        A.   I believe I prepared myself to be able to

17    testify on AdjustaCam's behalf with respect to item 22.

18        Q.   Well, what did you review?

19        A.   I believe that my testimony earlier was that I

20    didn't review any specific documents.

21        Q.   Well, if you didn't review any specific

22    documents, how can you answer the topic number 22?

23        A.   Well, I'm -- again, I am not an attorney and

24    I'm not well versed in these matters, but based upon

25    the topic as identified in the deposition notice, I
```

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 124

1    considered the topic and I believe that I came prepared

2    today to discuss that topic.

3        Q.    Okay.  So the topic is, State all facts and

4    circumstances relating to any financial arrangements 

5    that AdjustaCam has with Acacia.  Are you prepared to

6    do that?

7        A.    Yes, I believe so.

8        Q.    What do you have to say in response to that?

9            MR. EDMONDS:  Objection, form.

10       A.    AdjustaCam LLC is a wholly owned subsidiary of

11   Acacia Research Group LLC.

12       Q.    (BY MR. SUTTON)  Well, the question has to do

13   with financial arrangements between the two, correct?

14       A.    Correct.

15       Q.    So do you have any information on that?

16           MR. EDMONDS:  Objection form.

17       A.    I believe the extent of the -- let me get the

18   term right.  Oh, here it is.  The extent of the

19   financial arrangement between AdjustaCam and Acacia 

20   Research Group LLC is to state that Acacia -- that

21   AdjustaCam LLC is a wholly owned subsidiary of Acacia

22   Research Group LLC.

23       Q.    That's your answer to that topic?

24       A.    Correct.

25       Q.    Pardon me?

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 125

1      A.    Correct.

2      Q.    You have no further information in response to

3   that topic?

4      A.    I believe that that response is responsive to

5   that topic.  Is there -- I don't know if you have

6   additional questions about it, but --

7      Q.    Well, it says all facts and circumstances, so

8   I'll ask you some specific questions.

9             What was the initial date of those

10  financial arrangements?

11            MR. EDMONDS:   Objection, form.

12     A.    Sitting here to today, I don't recall the date

13  that AdjustaCam was formed.

14     Q.    (BY MR. SUTTON)  Well, my question again was

15  not when it was formed.  My question was, what was the

16  initial date of the financial arrangements between

17  AdjustaCam and Acacia?

18     A.    Well, it's my understanding that the financial

19  arrangement between the two entities is simply that

20  AdjustaCam LLC is a wholly owned subsidiary of Acacia

21  Research Group LLC.  And so with respect that belief, I

22  guess my thought is that the date would be a component

23  of that.  And sitting here today, I just don't recall

24  the date that AdjustaCam LLC was formed.

25     Q.    But I'm not asking you when it was formed.

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 126

1    I'm asking you when was the date -- when was the

2    initial date of the financial arrangements between

3    those two companies?

4        A.   I'm sorry, I -- I don't know how else to

5    explain it.

6        Q.   Who was involved in the financial arrangements

7    between those two companies?

8        A.   Well, you've got AdjustaCam LLC and Acacia

9    Research Group LLC.  We spoke previously about certain

10   officers of AdjustaCam LLC.

11       Q.   You identified yourself as the CFO of Acacia

12   Research Group LLC, correct?

13       A.   I don't recall if that topic came up.

14       Q.   I'm sorry, I misspoke.  I think you identified

15   yourself earlier as the CFO of AdjustaCam LLC, correct?

16       A.   Correct.

17       Q.   And when did that start?

18       A.   Upon formation of AdjustaCam LLC.

19       Q.   When did that start?

20       A.   Upon formation of AdjustaCam LLC.

21       Q.   The question was, you've identified yourself

22   as the CFO of AdjustaCam LLC, correct?

23       A.   Correct.

24       Q.   When did you begin to hold that position?

25       A.   Are you looking for a date?

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 127

1      Q.   Yes.

2      A.   Sitting here today, I just don't recall the

3   date AdjustaCam LLC was formed.  But whenever that date

4   was, I was -- I became the CFO upon inception of

5   AdjustaCam LLC.

6      Q.   So based on your own personal knowledge, you

7   are an officer of AdjustaCam LLC, correct?

8      A.   That's also AdjustaCam's testimony as well.

9      Q.   Yes.  So you are an officer of AdjustaCam LLC,

10  correct?

11     A.   Correct.

12     Q.   And what date did that position that you have

13  with AdjustaCam LLC start?

14     A.   Sitting here today, I do not recall a date

15  that AdjustaCam was formed.

16     Q.   And you don't know when you -- when you

17  assumed that position?  You don't know the date of when

18  you assumed that position?

19     A.   I --

20     Q.   Of CFO of AdjustaCam LLC?

21     A.   Correct.  Sitting here today, I just don't

22  recall that date.

23     Q.   What about approximation?

24     A.   Without looking at the books and records, I --

25  I just don't know the date that AdjustaCam was formed.

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 128

```
 1      Q.    Was it in -- do you know whether it was in

 2   2009, 2010, or 2011?

 3      A.    Well, I believe that it -- again, in an effort

 4   to be helpful, I believe that it would have been

 5   sometime in the 2010 time frame.

 6      Q.    All right.  And the 2010 time frame, the

 7   lawsuit I'll represent to you was started in July 2010.

 8            Were you in that position prior to July

 9   2010 when the lawsuit started?

10      A.    To the extent that AdjustaCam, you know,

11   obviously was in existence prior to the lawsuit being

12   filed, yes.

13      Q.    I'm sorry?

14      A.    Yes.

15      Q.    And, as you just said, that's obvious that

16   AdjustaCam LLC was in existence when the -- well, let

17   me rephrase that question.

18            Do you know whether or not AdjustaCam LLC

19   was in existence at the time the complaint was filed in

20   July 2010?

21      A.    I believe it was.

22      Q.    And do you know how long prior to that it was

23   formed?

24      A.    Sitting here today without looking at the

25   books and records, I do not know the date that
```

Clayton Haynes
Designated Highly Confidential Attorneys Eyes Only

Page 129

```
 1    AdjustaCam was formed.  But I believe that it was
 2    before the suit was filed.  And, again, in an effort to
 3    be helpful, I believe it was sometime in the 2010 time
 4    frame.  But to be sure, I would need to look at the
 5    books and records to confirm.
 6         Q.    Do you know when outside counsel performed
 7    their pre-filing investigation for this lawsuit?
 8         A.    Yes.
 9         Q.    When?
10         A.    It's my understanding that that analysis was
11    conducted in the May and June 2010 time frame.
12         Q.    And what's the basis for your understanding?
13         A.    Basis for my understanding comes from my
14    preparation for today's deposition.
15         Q.    Well, did you look at a document or did you
16    speak to someone to get that information?
17         A.    I spoke with outside counsel.
18         Q.    I'm sorry?
19         A.    I spoke with outside counsel in connection
20    with my preparation for today's deposition.
21         Q.    Was that the first time that you found out
22    that the pre-filing investigation was conducted in
23    those months prior to the lawsuit?
24         A.    Again, I want to make sure I'm answering the
25    appropriate question.  When you say "that," what are
```